IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

TERRI LEWIS STEVENS AND JENNIFER          CIVIL ACTION
AND CRAIG RIVERA

Plaintiffs,                                NO.

vs.                                        JUDGE:

THE ST. TAMMANY PARISH GOVERNMENT          MAGISTRATE:
AND THE STATE OF LOUISIANA THROUGH
ITS LOUISIANA DEPARTMENT OF
ENVIRONMENTAL QUALITY

Defendants.                                **COMPLAINT AND REQUEST
                                           FOR PRELIMINARY
                                           INJUNCTIVE RELIEF**

## INTRODUCTION

1.      By this complaint, plaintiffs, Terri Lewis Stevens ["Stevens"] and Jennifer and Craig

Rivera ["Riveras"], appearing through undersigned counsel, allege, *inter alia*, past and ongoing

violations of the Clean Water Act ['CWA"], 33 U.S.C. § 1251 *et seq.,* and of the Louisiana Pollution

Discharge Elimination System ["LPDES"] Permit No. LAR04000, by defendant, the St. Tammany

Parish Government ["STPG"]. Plaintiffs also allege a failure of enforcement of that permit, of the

CWA, and of the applicable laws of Louisiana by the Louisiana Department of Environmental

Quality ["LDEQ"].

2.      Through "acts of man," unauthorized drainage work in 1993 affecting 725 Dove Park

Road ["DPR"], Covington, LA 70433 (now the Stevens property); through additional "acts of man,

in 2000, 2003, 2011 and 2015, by granting additional Dove Park Subdivision ["DPS"] house and

septic sewer permits; and by failures to honor its LPDES obligations, the STPG continued and

increased the storm water and sewage burden on the plaintiffs' properties even though it was

obligated under its LPDES permit to take affirmative action to decrease this burden. Due to the

DPR/DPS topographical configuration and malfunctioning individual sewer systems, DPS sanitary sewer overflows ("SSOs") and other pollutants are conveyed by STPG drainage ditches to a catch basin at former Location "A," flow therefrom onto the Stevens property, and from the Stevens property to that of the Riveras, then into Little Creek, and then into the Ponchitolawa Creek, a tributary of the Little Tchefuncte River, which in turn flows into Lake Pontchartrain. Ponchitolawa Creek contributes to the water quality of a state-designated Scenic River and Outstanding Natural Resource Water ("ONRW") as determined by the LDEQ.[1]

3.      This Court's order of injunctive relief, in accordance with the motion for preliminary injunctive relief filed herewith, requiring the STPG to cease its unauthorized discharge of pollutants, all of which is onto plaintiffs' property, then into Little Creek, Ponchitolawa Creek and various "waters of the United States" ["WOTUS"] is appropriate and would prevent further irreparable injury to Plaintiffs.

4.      As is set forth hereinafter, plaintiffs assert other claims and causes of action arising under the laws of Louisiana and of the United States and reserve the right to amend to allege other such claims and causes of action.

## JURISDICTION

5.      The original jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343(2). Jurisdiction is established under 28 U.S.C.§ 1331, as the action is a civil one arising under the CWA, a law of the United States. The relief sought is authorized by 33 U.S.C. § 1319.

6.      Plaintiffs bring this action under 33 U.S.C. § 1365(a)(1), authorizing private citizens to bring suit to enforce the CWA where state governmental authorities failed to do so. Under 33 U.S.C. § 1319, the Administrator of the EPA has a duty to force the appropriate state agency, here

---

[1] Exhibit 1 - Lake Pontchartrain Basin Foundation, "Community Engagement Louisiana: Home Wastewater-centric Interdisciplinary Project to Improve Water Quality", p 2.

the LDEQ, to comply with the CWA. Despite notice, the LDEQ has not met its obligations and has not prevented the STPG from discharging sewage, stormwater, and other pollutants into the waters of the United States through plaintiffs' private properties. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1369.

**THE NOTICE REQUIREMENTS HAVE BEEN SATISFIED**

7.      On November 18, 2019, plaintiffs, complying with 33 U.S.C.§ 1365(b)(1)(A) and 40 C.F.R. § 135.2, provided notice of the violations by certified mail, return receipt requested[2] to: the Hon. Patricia Brister (then STPG President), Dr. Chuck Carr Brown (Secretary of the LDEQ), Andrew Wheeler (Administrator of the Environmental Protection Agency), Ken McQueen (EPA Region 6 Administrator) and Dr. Rebekah Gee (Louisiana Health Secretary).

8.      In accordance with 33 U.S.C. § 1365(b)(1)(A), the CWA requires a citizen to give valid notice sixty days before filing suit. More than sixty days have elapsed since such appropriate notice was given.

9.      The violations of which plaintiffs complain continue. Neither the EPA nor the LDEQ nor any other state agency has commenced or is diligently prosecuting an action as provided for in 33 U.S.C. § 1365(b)(1)(B) to require compliance with the standards set forth in the CWA and the discharge [LPDES] permit issued to the STPG by the LDEQ.

**VENUE**

10.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Eastern District of Louisiana in that a substantial part of the events, acts, and omissions giving rise to plaintiffs' claims occurred in, and the property that is the subject of the action is located in this district.

---

[2] Exhibit 2 – Notice of intent.

11.     Venue is also proper in this district under 33 U.S.C.§ 1365(c)(1) in that the discharge source of pollution is located in this district.

12.     Venue also complies with LSA-R.S. 30:2026(B) in that the action has been brought in this Court, which is located in the judicial district of the parish in which the violations or alleged violations have occurred and the parish of the domicile of the alleged violator. Preferential hearing should be accorded by this Court.

## PARTIES

13.     Plaintiffs are natural persons of the age of majority and are citizens and residents of St. Tammany Parish, Louisiana. Plaintiffs are owners of immovable property within the STPG's MS4 covered by the LPDES permit, described hereinafter, issued by the LDEQ to the STPG.

14.     The STPG is a governmental entity acting under color of law that owns and/or claims ownership of immovable property and real rights that include drainage ditches and other conveyances of storm water, sewage, and other pollutants.

15.     The LDEQ is an agency of defendant, State of Louisiana. The State of Louisiana, through the LDEQ, has accepted responsibility from the EPA for enforcing the CWA and so has issued and is in charge of enforcing the provisions of the LPDES permit issued to the STPG.

16.     Under 33 U.S.C.§ 1362(5) and LSA-R.S. 30:2004(11), plaintiffs are "persons." Stevens and the Riveras are domiciled at 725 and 801 DPR in the Parish of St. Tammany.

17.     Plaintiffs are "citizens" within the meaning of 33 U.S.C. § 1365(g), as they are persons having an interest which is adversely affected. In accordance with LSA-R.S. 30:2026 (B), any person having an interest, which is or may be adversely affected, may commence a civil action on his own behalf against any person whom he alleges to be in violation of the regulations.

18.     Any citizen is entitled to bring a citizen suit under 33 U.S.C. § 1365(a) for the STPG's violation of applicable "effluent limitations." "Effluent limitations" is defined as "any restriction

established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance."[3]

19.     Plaintiffs also reside in, explore, and recreate in areas impacted by the incessant discharge of pollutants into Little Creek, the Pontchitolawa Creek and various "WOTUS." They are suffering and will suffer recreational, aesthetic or other environmental injuries due to the STPG's ongoing and continuous violations of the CWA and the LDEQ's failure and refusal to enforce the LPDES and the CWA despite actual notice of violations thereof by the STPG.

20.     The STPG is a "person" defined under 33 U.S.C. § 1362(5) and a "municipality" within the meaning of 33 USC § 1362(4).[4]

21.     The EPA is the agency of the United States with primary responsibility for implementing the CWA. The EPA delegated its permitting authority to the LDEQ in August of 1996.[5] The LDEQ, as the delegated Administrator, has a duty to enforce the provisions of the CWA. In case of violations, the LDEQ has a duty to notify the "person" in alleged violation and, beyond the thirtieth day after such notification, the Administrator shall issue an order requiring such person to comply or shall bring a civil action in accordance with the CWA.[6]

22.     The LDEQ has jurisdiction over matters affecting the regulation of the environment within this state, including but not limited to the regulation of water pollution control, the regulation of solid waste disposal, the protection and preservation of the scenic rivers and streams of the state,

---

[3] 33 U.S.C.§ 1362(11) La Admin Code § 33:IX.2511 p.53.

[4] The term "municipality" is defined as "a city, town, borough, county, parish, district, association, or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes […]".

[5]https://www.deq.louisiana.gov/page/lpdes.

[6]33 U.S.C.§ 1319(a).

the regulation and control of radiation, the management of hazardous waste, and the regulation of those programs which encourage, assist, and result in reduction of waste generated within Louisiana.[7]

23.     The STPG discharges untreated sewage, pollutants and storm water from a "point source" and an "outfall," Location "A," into the properties of the plaintiffs and "WOTUS," thus contributing to the failure to attain health-related water quality for Little Creek, Pontchitolawa Creek, and various other WOTUS. These discharges pose significant and unacceptable health risks to plaintiffs and to the other numerous people who come into contact with the prohibited pollution. Unless the STPG is promptly required to abate its discharges, these health risks are likely to increase considerably in the future. Plaintiffs and the LDEQ are entitled to an injunction prohibiting these unlawful discharges and to statutory penalties. Under applicable Louisiana law, plaintiffs are also entitled to damages and attorney's fees.

## LEGAL BACKGROUND

### A. Definitions and Definitional Allegations

24.     The term "navigable waters" or "waters of the United States" under 33 U.S.C.§ 1362(7) includes the territorial seas. The CWA does not limit the interpretation of that term within a traditional definition, namely interstate waters that are navigable in fact or readily susceptible to being rendered navigable.[8] For the purpose of the LPDES, "waters of the state" means all surface waters within the state of Louisiana and on the coastline of Louisiana and the Gulf of Mexico, all surface waters extending therefrom three miles into the Gulf of Mexico.[9] "Waters of the state" also includes all surface waters which are subject to the ebb and flow of the tide, lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet

---

[7] Environmental Quality, Subtitle II of Title 30 of the Louisiana Revised Statutes, § 2011(A)(1)

[8] 33 C.F.R. § 328.3

[9] LSA-RS 30:2073(7).

meadows, playa lakes, natural ponds, impoundments of waters within the State of Louisiana otherwise defined as "waters of the United States" in 40 CFR 122.2, and tributaries of all such waters.[10] " Finally, "WOTUS" is broadly defined in LSA-RS 30:2073(7) to include rivers, streams, lakes and groundwater, including wetlands. Ditches, here the STPG's drainage ditches. conveying storm water, sewage and debris to the Stevens land and which flow through to the Riveras' land, and thereafter to WOTUS, are included within the scope of this definition.[11]

25.     For purposes of the LPDES issued to the STPG and pursuant to LSA-R.S 30:2073, "water pollution" includes but is not limited to any addition of any pollutant or combination of pollutants to waters of this state from any source, or any addition of any pollutant or combination of pollutants to the waters of the contiguous zone or to the Gulf of Mexico from any source other than a vessel or other floating craft which is being used as a means of transportation. "Water pollution" further includes but is not limited to additions of pollutants into waters of the state from surface runoff which is collected or channeled by man, discharges through pipes, sewers, or other conveyances owned by the state, a municipality, or other person, which do not lead to a treatment work, and discharge through pipes, sewers, or other conveyances leading into privately owned treatment works or property.

26.     Under 33 U.S.C. § 1362(12),(16) and 40 C.F.R. § 122.2, a "discharge" includes "any addition of any pollutant to navigable waters from any point source."[12]

---

[10] LSA-RS 30:2073(7).

[11] *Matter of McGowan*, 533 So. 2d 999 (La. Ct. App. 1st Cir. 1988).

[12] See also LSA-R.S. 30:2004 (7) Discharge" means the placing, releasing, spilling, percolating, draining, pumping, leaking, seeping, emitting, or other escaping of pollutants into the air, waters, subsurface water, or ground as the result of a prior act or omission; or the placing of pollutants into pits, drums, barrels, or similar containers under conditions and circumstances that leaking, seeping, draining, or escaping of the pollutants can be reasonably anticipated.

27.     The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.[13] The materials discharged by the STPG from its drainage ditches onto the plaintiffs' properties constitute "pollutants" within the scope of this definition.

28.     A "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." The STPG's drainage ditches and the material received from private septic sewer systems and thereafter conveyed into the plaintiffs' properties are a "point source."

29.     "Storm water" means storm water runoff, snow melt runoff, and surface runoff and drainage.[14] Storm water runoff is surface water generated by precipitation events, such as rainstorms, which flows over streets, parking, lots, commercial sites, and other developed parcels of land.[15] When storm water flows over urban environs, it collects "suspended metals, sediments, algae-promoting nutrients (nitrogen and phosphorus), floatable trash, used motor oil, raw sewage, pesticides, and other toxic contaminants."[16] This runoff is a major contributor to water pollution. Materials discharged by the STPG from its drainage ditches onto plaintiffs' properties include "storm water"[17] as defined.

---

[13] 33 U.S.C.§ 1362(6).30.

[14] 40 C.F.R. § 122.26 (b)(13).

[15] *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013).

[16] *Nat. Res. Def. Council*, 725 F.3d at 1198.

[17] *Nat. Res. Def. Council, Inc.* 725 F.3d at 1198.

30.    In accordance with 40 C.F.R. § 122.26 (b)(8), a "municipal separate storm sewer" ["MS4"] means a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains):**(i)** Owned or operated by a State, city, town, borough, county, parish, district, association, or other public body (created by or pursuant to State law) having jurisdiction over disposal of sewage, industrial wastes, storm water, or other wastes, including special districts under State law such as a sewer district, flood control district or drainage district, or similar entity **(ii)** Designed or used for collecting or conveying storm water.[18] The STPG ditches from DPS and elsewhere that discharge solely and only onto plaintiffs' properties constitute a "municipal separate storm sewer [system]." The term "individual sewerage system" is defined as *"*any system of piping (excluding the building drain), and/or collection and/or transport system which serves one or more connections, and/or pumping facility, and treatment facility, all located on the property where the sanitary sewage originates; and which utilizes the individual sewerage system technology which is set forth in Chapter 7 Subchapter B of this Part, or a commercial treatment facility which is specifically authorized for use by the state health officer." La. Admin. Code § 51:XIII.101.

31.    An "outfall" means a point source as defined by 40 CFR § 122.2 at the point where a municipal separate storm sewer discharges to "WOTUS."[19] Former Location "A" and the catch basin on DPR from which the STPG causes discharges to be made onto plaintiffs' lands constitute an "outfall" as so defined.

B. Overview of the Obligations to Protect the "Water of the United States" under the CWA

32.    The State of Louisiana has a constitutional duty to protect natural resources. In accordance with LSA-RS 30:2072, the waters of the state of Louisiana are among the state's most

---

[18] See also LAC 33:IX.2511.B.16 in https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf, p4.

[19] 40 C.F.R. § 122.26 (b)(9).

important natural resources and their continued protection and safeguard is of vital concern to the citizens of this state. To ensure the proper protection and maintenance of the state's waters, it was and is necessary to adopt a system to control and regulate the discharge of waste materials, pollutants, and other substances into the waters of the state. Therefore, the legislature was mandated to and did enact laws to protect, conserve and replenish the natural resources of the state consistent with the health, safety, and welfare of the people of Louisiana.[20]

33.    The goal of such regulations and orders, to the extent economically and technologically reasonable, is to eliminate those releases, including those onto plaintiffs' properties, that may reasonably pose a threat to human health or the environment and to remediate contaminated media, taking into consideration current and expected uses.[21]

34.    Under 33 U.S.C.§ 1251(a), the purpose of the CWA, even as violated by the STPG and inadequately enforced by the LDEQ, is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." To achieve its objectives, 33 U.S.C.§ 1311(a) prohibits the "discharge of any pollutant by any person" from a point source into waters of the United States without a National Pollution Discharge Elimination System ["NPDES"] permit. In other words, an entity wishing to add pollutants to navigable waters must comply with the NPDES which requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters.[22]

---

[20] LSA-Const. Art IX §1.

[21] LSA RS 30: 2077.

[22] 33 U.S.C.§ 1342(a).

35.     The NPDES permitting program, established by 33 U.S.C. § 1342(a), is the centerpiece of the CWA and the primary method for enforcing the effluent and water-quality standards established by the EPA and state governments.[23]

36.     An NPDES permit may be issued either by the EPA or by an authorized state to which the EPA has delegated its permitting power pursuant to 33 U.S.C.§ 1342(a)(5). The EPA has delegated its permitting power to the LDEQ which issued an LPDES to the STPG. The LPDES is the equivalent of the NPDES under the CWA and specifically includes but is not limited to authority to issue all permits and to administer the storm water discharge program, the pre-treatment program, and the sewage sludge program.[24] An NPDES permit requires its holder to follow the requirements of numerous CWA provisions, which include effluent limitations, water quality standards, water monitoring obligations, public reporting mechanisms, and certain discharge requirements.[25]

37.     33 U.S.C.§ 1342(a) provides that the permitting authority may issue an NPDES that authorizes the discharge of any pollutant directly into "waters of the United States" upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

38.     The STPG's liability for failing to maintain its sewage and storm drain systems pollution free is not affected by whether homeowners were the ultimate creators of the pollutants through septic sewer systems. The CWA is indifferent to the originator of the water pollution, namely it does not distinguish between those who add, and those who convey what is added by others. In other words, the CWA "bans the discharge of any pollutant by any person regardless of whether that

---

[23] *California Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F.Supp.3d 1040 (N.D. Cal. 2017).

[24] LSA-R.S. 30:2073.

[25] 33 U.S.C.§ 1311, 1312, 1314, 1316, 1317, 1318, 1343.

person was the root cause or merely the current superintendent of the discharge."[26] It is no defense, as asserted by the STPG in the pending state court litigation, that the STPG may not have added new pollutants but has only accepted such pollutants into its drainage ditches and "conveyed" them to, into, and through the Stevens/Rivera properties.

39.     CWA and LPDES Program regulations require anyone who holds an LPDES permit to monitor its discharges and report its average monthly discharges and maximum daily discharges to the LDEQ in "Discharge Monitoring Reports.[27] The STPG has not fully complied with these regulations as to the discharges onto plaintiffs' properties and should be ordered to do so.

40.     The LPDES Program requires anyone who holds an LPDES permit to report within 24 hours "any noncompliance that may endanger health or the environment" and to provide a written report of such noncompliance within five days.[28] This regulation requires a permittee to report within 24 hours any violation of a maximum daily discharge limitation for a toxic or hazardous pollutant. The STPG has not done so as to pollutants discharged onto plaintiffs' properties and should be ordered to do so.

C. Overview of Municipal Storm water Discharges

41.     Under 33 U.S.C.§ 1342(p)(3)(B)(ii), permits for discharges from municipal storm sewer systems ["MS4"] shall include a requirement to effectively prohibit non-storm water discharges into the storm sewers. In addition, permits for discharges from municipal storm sewers shall require controls to reduce the discharge of pollutants to the maximum extent feasible, including management practices, control techniques and system, design and engineering methods, and such

---

[26] *Thibodeaux v. Port of Oakland,* 2018 WL 4853299 (N.D. Cal. 2018*).*

[27] 33 U.S.C.§ 1318(a)(A); La. Admin. Code tit. 33, pt. IX, § 2701.J-L.

[28] La. Admin. Code tit. 33, pt. IX, § 2701.L.6.

other provisions as the Administrator or the State determines appropriate for the control of such pollutants.[29] The STPG's MS4 that includes DPS falls within the definition of "point sources."[30]

42.     La Admin Code § 33:IX.2511 establishes the general permit program, regulated pursuant to the LPDES permit, for storm water discharges. This program covers discharges from various-sized MS4s. This is because storm water passing over land that has pollutants will carry the pollutants through ditches, streets and drains, eventually discharging into waters of Louisiana.

43.     At all times relevant, the EPA authorized the State of Louisiana to administer an LPDES program under Master General Permit LAR040000, a general permit for discharges from small municipal separate storm sewer systems.[31]

44.     Permit LAR04000 authorizes discharges of storm water from a regulated small MS4 as defined in LAC 33:IX.2511.B.16.[32] The discharges must not cause or have the reasonable potential to cause or contribute to a violation of a water quality standard. Should there be such violation of an applicable state or federal water quality standard, the state administrative authority is mandated to notify the permittee, here the STPG, who shall take all necessary actions to ensure that future discharges do not cause or contribute to violation of a water quality standard and must document these actions in the Storm Water Management Program ["SWMP"].[33]

---

[29] 33 U.S.C.§ 1342(p)(3)(B)(iii).

[30] *Nat. Res. Def. Council, Inc. v. Cty. of Los Angeles*, 725 F.3d 1194 (9th Cir. 2013).

[31] https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf

[32] https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf (B)(1) p 4.

[33] https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf p 15.

45.     The discharge of hazardous substances in the storm water discharge(s) from a regulated small MS4 shall be prevented or minimized in accordance with the applicable SWMP. No permit relieves a permittee of the reporting requirements of LAC 33:I.3915 and LAC 33:I.3917.[34]

46.     If the MS4 discharges into a receiving water which has been listed in the LDEQ Section 303(d) List of Impaired Waters for which a total maximum daily load ("TMDL") has not yet been approved, and the suspected source(s) of the impairment includes discharges from MS4s, the permittee must determine, within 1 year of the effective date of the permit, whether the MS4 is a source of the pollutant(s). [35] Here, a TMDL, violated by the STPG, has been approved for Ponchitolawa Creek so that "**5.** Storm water discharges into any water body for which a TMDL has been approved if the storm water discharges do not comply with Part III.B of this permit." The STPG's discharges onto 725 and 801 DPR do not comply with that TMDL and should be enjoined.

47.     A permittee, here the STPG, must comply with the state's antidegradation policy and plan (LAC 33:IX.1109.A; LAC 33:IX.1119). Permittees must ensure that storm water discharges to water bodies designated as Outstanding Natural Resource Waters (ONRWs) will not degrade water quality to the maximum extent practicable ("MEP"). Additional best management practices ("BMPs") and regulatory mechanisms (for example, ordinances or codes) may be required in order to prevent erosion, sedimentation, or illicit discharges to ONRWs. If it is demonstrated that a discharge from a particular MS4 regulated by the STPG's permit would result in the violation of instream water quality criteria or adversely impact the designated uses of a receiving stream, the state administrative authority must consider how the implementation of the minimum control measures outlined in Part IV.D will affect the quality of storm water discharges from the MS4. If it is determined that the minimum control measures outlined in Part IV.D are inadequate to control the

---

[34] https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf p 16.

[35] https://deq.louisiana.gov/assets/docs/Permits/LAR040000.pdf, P 22.

discharge of pollutants from the MS4 effectively enough to meet the instream water quality criteria or protect the designated uses of the receiving stream, LAR040000 PART III A P 1, the LDEQ must take enforcement action. As this provision, applicable to the STPG, has not been enforced, this Court should order enforcement.

48.     If, as here, storm water runoff from a regulated MS4 flows into a basin listed on the most recent EPA-approved 303(d) list, then the permittee's storm water management plan ("SWMP") must address any impairments where the suspected source has been identified as urban runoff/storm sewers, municipal (urbanized high density area), discharges from municipal separate storm sewer systems, SSOs, forced drainage pumping, residential districts, or unspecified urban stormwater. If a TMDL has not yet been approved for a 303(d)-listed basin subsegment number that receives storm water runoff from the regulated MS4s, and the source of pollutants causing the impairment(s) has been attributed to MS4s, then permittees must describe how the BMPs and other control(s) selected for the SWMP will minimize, to the MEP, the discharge of those pollutants which have been identified as causing the impairment. LAR040000 PART III B p 2. STPG has not done this. This provision has not been enforced by the LDEQ. As this provision, applicable to the STPG , has not been enforced by the LDEQ, this Court should order that the STPG comply with its obligations and that the LDEQ initiate enforcement action as appropriate.

49.     In addition to MS4-specific requirements of the TMDL, a permittee, here the STPG, must also: (1) implement clear, specific, and measurable BMPs that specifically target the pollutant(s) of concern; (2) identify clear, specific, and measurable goal(s) to minimize the discharge of the pollutant(s) of concern; and (3) implement a monitoring program to assess whether or not the storm water controls are adequate to meet the wasteload allocation ["WLA"]. LAR040000 PART III B p 2. The STPG has not complied with this requirement but should be ordered to do so.

50.     Evidence in plaintiffs' possession either referenced in footnotes and exhibits or to be presented at the preliminary injunction hearing supports non-compliance by the STPG, *inter alia*, with the following.

2.     Duty to Comply The permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Clean Water Act (CWA) and the Louisiana Environmental Quality Act and is grounds for enforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application Part VI LAR040000 / AI 94338 Page 1 of 26

3.     Penalties for Violation of Permit Conditions a. La. R.S. 30:2025 provides for civil penalties for violations of these regulations and the Louisiana Environmental Quality Act. La. R.S. 30:2076.2 provides for criminal penalties for violation of any provisions of the LPDES or any order or any permit condition or limitation issued under or implementing any provisions of the LPDES program. (See Section E. Penalties for Violation of Permit Conditions for additional details.)

Plaintiffs are entitled to injunctive relief ordering compliance by the STPG and enforcement by the LDEQ.

### D. Overview of Sewage Disposal Regulations

51.     La Admin Code § 51:XIII.305 prohibits the discharge, directly or indirectly, of the contents or effluent from any plumbing fixtures or septic tank into any road, street, gutter, ditch, water course, body of water, or onto the surface of the ground.

52.     La. Admin. Code § 51:XIII.701 establishes that a person shall not install or operate an individual sewerage system without first obtaining a permit from the state health officer, which STPG has not obtained.

53.     La. Admin. Code § 51:XIII.707 states that an individual sewerage system shall be kept in service and in a serviceable condition sufficient to ensure compliance with this code and in order to avoid creating or contributing to a nuisance or a public health hazard.

E. The LDEQ's Duty to Enforce the Environmental Quality Act

54.    LSA-RS 37:0:2076(A) prohibits the discharge, as is here ongoing by the STPG, onto plaintiffs' properties, of any substance, trash, garbage, sewage or sewage sludge in contravention with the terms, conditions or limit imposed by a permit, rules or regulations.

55.    LSA-R.S. 30:2025 provides guidance for governmental enforcement in cases of water pollution. The LDEQ has not enforced LSA-R.S. 30:2025 as to the STPG's pollution of plaintiffs' lands and the waters of the United States, polluted by SSOs and other discharges running over and through plaintiffs' properties.

56.    To a significant degree, environmental enforcement relies on self-reporting by those, such as the STPG, who violate environmental regulations. Pursuant to LSA-R.S. 30:2076(D), any person [here the STPG] who discharges, emits, or disposes of any substance into the waters of the state in contravention of any provision of a permit or license issued thereunder, shall upon learning of the discharge, emission, or disposal, immediately, or in accordance with regulations adopted under this Act, notify the department [LDEQ] as to the nature and amount of the discharge and the circumstances surrounding the discharge. Any failure to make this notification or any attempt to conceal or the actual concealment of the discharge, emission, or disposal, shall be a violation of this Chapter. Each day of failure to give the notification required herein shall constitute a separate violation and shall be in addition to any other violations of this Subtitle.[36] The STPG has not only failed to self-report but has denied to courts and otherwise that it is in violation or has any such obligation. This Court should order that the STPG candidly and truthfully report to the LDEQ and to the Court or to a court-appointed monitor.

---

[36] LSA-RS 30:2077.

57.     The Louisiana Water Control Law grants broad investigatory powers to the LDEQ[37] that have not been exercised as to the STPG. Plaintiff Stevens has made over ten complaints to the STPG and its watershed coordinator, Sandra Schenk. Schenk did not properly investigate the complaints, did not test, and did not report the complaints to the LDEQ. Plaintiff Stevens has also made numerous complaints to appropriate state employees with a similar lack of result. Consequently, the Secretary should be ordered to conduct investigations, which it could have carried out on its own or upon complaint from any person (Stevens), so that it could have and can and should now issue appropriate orders to control, regulate, or restrain the discharge of any waste material or polluting substance discharged or sought to be discharged into any waters of the state in accordance with the provisions of R.S. 30:2025.[38] This Court should enter appropriate orders.

## FACTS

### A. Topography of the DPS

58.     DPS is on the south side of DPR. Plaintiffs' properties, 725 and 801 DPR, are on the north side.

59.     DPS is flat and has been so recognized by the STPG by statements in official reports mandated by the CWA and Louisiana law that, "The subdivision is very flat and is prone to flooding."[39]

60.     The drainage path from Location A and the 2016 catch basin, as installed illegally by the STPG, is also flat from the street side culvert to the Stevens driveway culverts, some 500 feet north of DPR. This is confirmed by STPG-commissioned surveys.

61.     The outfall in Location "A" and the catch basin is a "point source."

---

[37] LSA-R.S. 30 :2011(D)(13).

[38] LSA-R.S. 30:2074(A)(2).

[39] STPG Capital Project Request Form 7/19/2016.

## B. Pollution of the "WOTUS"

62.     In her deposition, STPG watershed coordinator Schenk[40] admitted that the drainage flow onto 725 DPR was likely polluted by the discharge of the 50%-malfunctioning DPS septic sewer systems. She admitted that 27,000 gallons of sewage conveyed via the STPG drainage ditch(es) are daily discharged through the DPR catch basin at Location "A," an "outfall" solely and only to the Stevens 725 DPR property and to no other DPR property. These are conclusive admissions that the STPG is violating the CWA and its LPDES permit, justifying the issuance of an order commanding that such violations come to an immediate halt.

63.     From the outfall (Location "A" and the catch basin) and through 725 DPR, the sewage, storm water and other prohibited pollution flows to the Riveras' land and then to Little Creek and Ponchitolawa Creek (for which there is a TMDL). The Ponchitolawa is listed as contaminated by "septic systems"[41] and as a pollution source to the Tchefuncte and Lake Pontchartrain.[42]

64.     The presence  of E. coli, fecal bacteria, and other contaminants in the material conveyed onto plaintiffs' properties constitutes a violation of the STPG's  LPDES permit that exposes plaintiffs to health hazards, is causing them irreparable injury, and should be enjoined.

## C. STPG's Responsibility in the Creation of Unauthorized Pollution in the "WOTUS"

65.     Beginning in 1956, STPG allowed a combined sewer/storm water drainage system for DPS with additional septic units being permitted for each new home that was "permitted" to be built and was ultimately built in DPS.

---

[40] Exhibit 3, Schenk, 6/27/18, 69/5-72/11.

[41] LA040802_00, Ponchitolawa Creek-From headwaters to US Highway 190 (Scenic), "ON-SITE TREATMENT SYSTEMS (SEPTIC SYSTEMS AND SIMILAR DECENTRALIZED SYSTEMS) https://deq.louisiana.gov/page/water-quality-integrated-report-305b303d.

[42] https://deq.louisiana.gov/assets/docs/Water/TMDL/TMDL-LowerTchefuncteRiver.pdf.

66.     Beginning in 1990, the STPG attempted to convince Steven's predecessors in title, Carrie Block and then Robert Hughes, to donate a voluntary servitude to convey storm water and the other contents of its drainage ditches onto and through 725 DPR. Block refused. Hughes, after refusing any deal, offered limited provisional permission for a narrow and written scope of work, a temporary construction servitude for ditch maintenance. This written agreement was attempted to be modified two weeks later by a following document that was never approved or signed off on by Hughes. Hughes never agreed to allow septic effluent or contaminated storm water in any way on his property. The STPG likely deceived Hughes as to the actual scope of work. The southerly flow (toward DPR) of the fourth culvert substantiates this. There was absolutely no agreement for drainage or passage of sewage over or through this privately-owned property in a northerly direction. The STPG acquired no permanent servitude, easement or right-of-way on the Hughes/Stevens property in spite of twice attempting to obtain a legal servitude. Instead, the STPG mislead or tricked Hughes into believing that the drainage path was to flow southward toward the DPR roadside ditch **to drain his land into the STPG drainage ditches** along DPR.

67.     The outfall at Location "A" was a consequence of undocumented and unaccepted work only recently claimed to have been done in 1993 by the STPG. The STPG now claims to have surreptitiously relocated the existing internal drainage path by moving it from a meandering course going, *inter alia*, onto adjoining property, to being solely on 725 DPR, yet no records support this claim of this being a public work or being undertaken at all. Until then, the 27,000 gallons daily of sewage now flowing, certainly not a two-foot liquid wall, could not have travelled uphill to overcome the naturally blocked drainage path on the Hughes land. Only after STPG's 2018 motion for summary judgment claimed secret removal of the hump that inhibited all flow north or south could effluent and sewage and roadside debris flow onto 725 DPR on a regular or daily basis. Storm water in a major flooding event could only come across Dove Park Road onto 725 DPR by sheeting over areas

other than the drainage path surreptitiously and illegally constructed in 1993 and then exacerbated by the rerouting of DPS ditches after the paving of the streets and ditch scouring in 2001, 2003, 2011, and work performed in 2015.

68.     In 2001, the STPG began and accepted the DPS road paving project. Without notice, DPS drainage was unnecessarily altered so that the remaining 75% of DPS drainage flowing into STPG ditches was redirected to DPR and then to and through "Location A."

69.     The amount of sewage was increased in 2003 by another non-public work: changes in the capacity, elevation and direction of the DPS ditches. This 2003 parish ditch maintenance work in DPS was never formally accepted yet was fully documented and it served to burden 725/801 through the efforts to modify the DPS drainage ditches overflowing by newly paved street run-off. This too was an undisclosed and unnecessary purpose of the 2011 Heatherstone road paving project.

70.     These totally illegal actions — none being necessary consequences of possession or of vicinage — trespasses and violations of its LPDES permits, Louisiana law, and the CWA — caused damage to plaintiffs: erosion, debris, odors, contamination, emotional damage, loss of access and diminution of property values.

### D. STPG's Bad Faith in Denial of Responsibility

71.     The existence of untreated sewage at and from Location "A" was falsely denied by STPG on January 23, 2015.

72.     At the summary judgment hearing in state court on July 13, 2018, the STPG claimed it had no responsibility for the pollutants in the drainage ditches channeled to 725 DPR.[43] Its attorneys further claimed that, since the actual source of the sewage was the malfunctioning septic sewer systems of individual DPS homeowners, the STPG did not itself add new pollutants, and that there

---

[43] Exhibit 4, TR. 7/13/128 at 43/1-44/23.

was no STPG liability for "conveying" storm water, sewage, and other pollutants in the drainage ditches within its MS4.

73.     On February 20, 2020, the STPG, having received plaintiffs' original brief on appeal in 2019-CA-1555 in the Louisiana First Circuit Court of Appeal,[44] repeated and even amplified this utterly false contention.

74.     The STPG has also falsely urged that the 1993 "drainage path" secretly constructed on 725 DPR and currently used to illegally channel prohibited substances onto plaintiffs' properties and then to WOTUS is a natural feature that permits storm water, sewerage, and pollutants to be continuously deliverable from STPG drainage ditches onto the Stevens property.

75.     No document concerning drainage laterals exists in STPG records. No maintained drainage lateral in the area around/near 725 DPR pertains to the Stevens property. The claimed drainage path on 725 DPR is absent from every official USGS map or other official or STPG record.

## DAMAGES

76.     Under applicable Louisiana law, plaintiffs are entitled to damages to their persons and properties caused by the violations by the St. Tammany Parish Government of the CWA, its LPDES permit, and Louisiana law as well as to reasonable attorney's fees and legal interest from date of judicial demand in state court until paid.

## PRELIMINARY AND PERMANENT PROHIBITORY
## AND MANDATORY INJUNCTIVE RELIEF

77.     As recited hereinabove and in the motion for preliminary prohibitory injunction filed herewith, plaintiffs are entitled to immediate entry of prohibitory injunctive relief ordering that the St. Tammany Parish Government and its officials, agents, and employees and those working in concert with the STPG cease the flow of any substance from its drainage ditches onto and/or through

---

[44] A copy of that brief is attached as Exhibit 5.

plaintiffs' properties into the Waters of the United States and allowing plaintiffs to erect barriers, if needed, to stop such flow. Alternative public drainage paths, including the use of the roadside ditches, now exist and should be employed to retain the re-routed effluent within the sewage and storm water conveyance/drainage paths already possessed and maintained by STPG.

78.     Plaintiffs are further entitled, after due proceedings, to orders and judgments of permanent prohibitory and/or mandatory injunctive relief as requested hereinabove.

### DEMAND

79.     Plaintiffs, Terri Lewis Stevens and Jennifer and Craig Rivera, demand judgment against the St. Tammany Parish Government as set forth above, in the motion for preliminary injunction filed herewith, and as follows:

a.     Ordering that the St. Tammany Parish Government cease the flow of any substance from its drainage ditches into and/or through plaintiffs' properties into the Waters of the United States and allowing plaintiffs to erect barriers to such flow;

b.     Ordering that the STPG be commanded to comply with its obligations, as described above, under the CWA, its LPDES permit, and Louisiana law;

c.     For damages to their persons and properties, plus applicable legal interest and reasonable attorney's fees;

d.     For all just and equitable relief to which plaintiffs may be entitled.

80.     Plaintiffs, Terri Lewis Stevens and Jennifer and Craig Rivera, demand judgment against the State of Louisiana, through its Department of Environmental Quality, as set forth above, as follows:

a.     Requiring the LDEQ to comply with its obligations to the United States through the EPA, under the CWA, pursuant to the authority delegated to the LDEQ in August of 1996[45] and its consequent duty, as the delegated Administrator, to enforce the provisions of the CWA;

b.     Requiring the LDEQ, on account of the STPG's violations, to notify the person [here the STPG] in alleged violation and, beyond the thirtieth day after such notification, to issue, as it shall, an order requiring such person to comply or it shall bring a civil

---

[45]https://www.deq.louisiana.gov/page/lpdes.

action;

c.     For all just and equitable relief to which plaintiffs may be entitled.

Respectfully submitted,

KOERNER LAW FIRM
/s/ Louis R. Koerner, Jr.
Louis R. Koerner, Jr.
Louisiana Bar 7817
1204 Jackson Avenue
New Orleans, Louisiana 70130
New Orleans: 504-581-9569
Telecopier: 504-324-1798
(Cellular) 504-405-1411
e-mail: koerner@koerner-law.com
URL: http:/www.koerner-law.com
Attorneys for Terri Lewis Stevens and Jennifer
and Craig Rivera

PLEASE SERVE
The St. Tammany Parish Government,
Through its president, Michael Cooper,
St. Tammany Parish President
Main Office
21490 Koop Drive
Mandeville, Louisiana 70471
Phone: (985) 898-2700
Fax: (985) 898-5237
president@stpgov.org

The State of Louisiana, through the Louisiana Department of Environmental Quality,
Through the Hon. Jeff Landry, Attorney General
1885 North Third Street
Baton Rouge, LA 70802
225-326-6079