# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERRI LEWIS STEVENS and | * | CIVIL ACTION NO: 20-00928 |
| JENNIFER AND CRAIG RIVERA | * | |
| | * | |
| VERSUS | * | SECTION L(1) |
| | * | |
| THE ST. TAMMANY PARISH | * | JUDGE FALLON |
| GOVERNMENT and THE STATE OF | * | |
| LOUISIANA THROUGH ITS | * | MAG. JUDGE VAN MEERVELD |
| LOUISIANA DEPARTMENT OF | * | |
| ENVIRONMENTAL QUALITY | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Defendant State of Louisiana through its Louisiana Department of Environmental Quality ("DEQ"), through its undersigned counsel, submits this memorandum in support of its motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. This Court should dismiss DEQ from this lawsuit because (1) this Court lacks subject matter jurisdiction over the plaintiffs' claims against DEQ[1] and, (2) even if subject matter jurisdiction was present, the plaintiffs fail to state claims against DEQ upon which relief can be granted.[2]

As established below, DEQ is entitled to Eleventh Amendment immunity from the plaintiffs' claims in this Court. Even absent that immunity, the plaintiffs cite no statute, regulation, or law that provides a claim or cause of action for them to sue DEQ to enforce

---

[1]    *See* Fed. R. Civ. P. 12(b)(1).

[2]    *See* Fed. R. Civ. P. 12(b)(6).

regulations or compel agency actions in this forum, or to seek damages as a result, especially in the context of the facts that the plaintiffs have pleaded.    Accordingly, this Court should grant DEQ's motion and dismiss it from this lawsuit.

## BACKGROUND

More than five years ago, the plaintiffs commenced what grew into contentious and protracted state court litigation against DEQ's codefendant, the St. Tammany Parish Government ("St. Tammany").[3]  The gravamen of the plaintiffs' state court claims was that St. Tammany illegally was discharging polluted water onto the plaintiffs' property in violation of state and federal law, entitling the plaintiffs to injunctive relief and damages.  The state court litigation culminated in a final judgment in favor of St. Tammany dismissing the plaintiffs' claim in their entirety.  That judgment presently is on appeal to the Louisiana First Circuit Court of Appeal. DEQ is not a party to the state court litigation.

Apparently not cowed by their state court defeat, the plaintiffs commenced this action on March 17, 2020.  The plaintiffs have rebranded their core claims as a "citizen suit" under the Clean Water Act (the "CWA") and have added DEQ as a defendant.  In their original complaint, the plaintiffs sought injunctive relief against DEQ (rec. doc. 1, ¶ 80).  In their first amended complaint (rec. doc. 32-2), the plaintiffs maintained their injunctive relief claims against DEQ and added claims against DEQ for violations of Louisiana law (¶ 75A); claims "actionable" under 42 U.S.C. § 1983 (¶¶ 75B – 75F); and claims for damages and attorney fees (¶ 76A).

Perhaps anticipating that their rebranded lawsuit – filed after years of unsuccessful state court litigation on the same subject matter – was infirm, the plaintiffs filed an unsolicited *memorandum in support of subject matter jurisdiction in this Court over this Clean Water Act*

---

[3]    Stevens, *et al.* v. St. Tammany Parish Gov't, No. 2015-10649, 22nd Judicial District Court, St. Tammany Parish, Louisiana.

*citizen suit* (rec. doc. 11) before St. Tammany or DEQ even appeared in this action.  That

memorandum does not help the plaintiffs' cause *vis-à-vis* DEQ.  The memorandum discusses

abstention, not immunity, and should float by unnoticed like a leaf on a stream.  As the following

shows, DEQ is entitled to Eleventh Amendment immunity from the plaintiffs' claims in this

Court.  Moreover, even if DEQ did not enjoy Eleventh Amendment immunity, the plaintiffs have

failed to state a claim upon which relief can be granted.

## ARGUMENT

### I.  Standard of Review

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute,

they lack the power to adjudicate claims.  In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,

668 F.3d 281, 286 (5th Cir. 2012) (citations omitted).  Under Rule 12(b)(1) of the Federal Rules

of Civil Procedure, a claim properly is "dismissed for lack of subject-matter jurisdiction when

the court lacks the statutory or constitutional power to adjudicate" the claim.  Id. (*quoting* Home

Builders Ass'n, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998)).   Eleventh

Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to

adjudicate suits against a state.  Cozzo v. Tangipahoa Parish Council – President Gov't, 279 F.3d

273, 280 (5th Cir. 2002).

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion

to dismiss under Rule 12(b)(6).  Benton v. U.S., 960 F.2d 19, 21 (5th Cir. 1992).  A complaint is

subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  In reviewing a Rule 12(b)(6) motion, a court must accept all

well-pleaded facts in the complaint in the light most favorable to the plaintiff.  City of Clinton v.

Pilgrim's Pride Corp., 632 F. 3d 148, 152-53 (5th Cir. 2010).[4]  A court must do the same when reviewing a Rule 12(b)(1) motion.

In ruling on a Rule 12(b)(1) motion, a court may "look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."  Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111, 130 S. Ct. 1054, 175 L. Ed. 2d 833 (2010).  However, if a defendant "merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true.  If those jurisdictional allegations are sufficient the complaint stands."  Patterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).  Conversely, if the jurisdictional allegations are not sufficient (as in this case), the complaint fails.

The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. Accordingly, a plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted), *cert. denied,* 536 U.S. 960, 122 S. Ct. 2665, 153 L. Ed. 2d 839 (2002).  In federal question cases, the party asserting jurisdiction must demonstrate a non-frivolous claim based on federal law.  Gibbs v. Buck, 307 U.S. 66, 72, 59 S. Ct. 725, 83 L. Ed. 1111 (1939).

## II.  Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[4]     To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  A district court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009).  A district court is not, however, bound to accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.

The Eleventh Amendment "grants a State immunity from suit in federal court by citizens of other States and by its own citizens as well." Lapides v. Board of Regents, 533 U.S. 613, 616, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002).  The plaintiffs are citizens of Louisiana (rec. doc. 1, ¶ 13).

The Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal court.  Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 318 (5th Cir. 2001).  In general, therefore, a federal court suit in which the state or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought.  Lewis v. University of Tex. Med. Branch at Galveston, 665 F.3d 625, 630 (5th Cir. 2011) (plaintiff's claim for prospective relief against state agency barred by Eleventh Amendment immunity).

DEQ is an agency of the state of Louisiana; DEQ is "the primary **agency** in Louisiana concerned with environmental protection and regulation."  La. R.S. 30:2011A(1) (emphasis added); *see also* Firestone Polymers, L.L.C. v. Louisiana Dept. of Environ. Quality, 291 So. 3d 228, 233 (La. App. 1 Cir. 2019) (same).  In their complaint, the plaintiffs acknowledged that DEQ is an agency of the state of Louisiana (rec. doc. 1, ¶ 15 ("The LDEQ is an agency of defendant, State of Louisiana.")).  As such, absent some exception, DEQ is entitled to Eleventh Amendment immunity and this Court lacks jurisdiction to consider the plaintiffs' claims against DEQ.

The immunity of a state or one of its agencies from suit in federal court under the Eleventh Amendment is not absolute.  The Supreme Court has recognized a handful of situations in which an individual may sue a state in federal court.  Union Pac. R.R. Co. v. Louisiana Pub. Serv. Comm'n, 662 F.3d 336, 340 (5th Cir. 2011).  First, an individual may sue a state if the Congress validly abrogates sovereign immunity.  College Sav. Bank v. Florida Prepaid

Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999). Second, a state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction; that is, if the state consents to suit in federal court. Id. at 670. Finally, an individual may sue a state in federal court under the doctrine set forth by the Supreme Court in Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).[5] None of those situations are applicable in this case.

First, Congress has not abrogated state and agency sovereign immunity[6] for claims arising under 42 U.S.C. § 1983, pursuant to which the plaintiffs assert some of their claims against DEQ are actionable (rec. doc. 32-2, ¶¶ 75B – 75F). Inyo County, Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538 U.S. 701, 709, 123 S. Ct. 1887, 155 L. Ed. 2d 933 (2003). Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. When it enacted 42 U.S.C. § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states. Cozzo, 279 F. 3d at 281 (citations and quotations omitted).

Congress also has not abrogated state and agency sovereign immunity for claims arising under the CWA such as this purported CWA "citizens suit." The citizen suit provision of the CWA states in part:

---

[5] The *Ex parte Young* exception provides that the Eleventh Amendment does not bar suit against a state official acting in violation of federal law. It is premised on the notion that a state cannot authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state and, therefore, is not shielded from suit by the state's sovereign immunity. As a result, a plaintiff may bring suit in federal court against a state officer accused of violating federal law. Natural Res. Defense Council v. California Dept. of Transp., 96 F.3d 420, 422 (9th Cir. 1996) (citations omitted).

[6] The terms "state sovereign immunity" and "Eleventh Amendment immunity" are often used interchangeably to mean the same thing. Union Pac. R.R. Co., 662 F. 3d at 340 n.4.

6

> [A]ny citizen may commence a civil action on his own behalf — (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency **to the extent permitted by the eleventh amendment to the Constitution**) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a) (emphasis added).[7]  When Congress enacted this provision, it specified that it was legislating to the extent permitted by the Eleventh Amendment.  Congress intended to encourage and assist the public to participate in enforcing the standards promulgated to reduce water pollution.[8]  Natural Res. Defense Council v. California Dept. of Transp., 96 F.3d 420, 424 (9th Cir. 1996).

To further that goal, Congress enacted the citizen suit provision so that "a citizen enforcement action might be brought against an individual or a government agency." S. Rep. No. 414, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3746.  Thus, it is plausible that Congress implicitly intended to authorize citizens to bring *Ex parte Young* suits **against state officials** with the responsibility to comply with clean water standards and permits. Natural Res. Defense Council, 96 F.3d at 424 (holding that Eleventh Amendment barred all of claims brought by environmental groups and citizen against California Department of Transportation for alleged violations of the CWA and their claims against Department's director for civil penalties and declaratory relief pertaining to past alleged violations of CWA, but did not preclude claims against director pertaining solely to prospective injunctive relief).

In this case, the plaintiffs did not sue DEQ's director; they only sued DEQ.  Thus, they missed the mark recognized by the Ninth Circuit in Natural Res. Defense Council, *supra,* that *Ex parte Young* suits against state officials with the responsibility to comply with clean water

---

[7]     The "Administrator" in the statute is the Administrator of the Environmental Protection Agency.  33 U.S.C. § 1251(d).

[8]     *See* 33 U.S.C. § 1251(e).

standards and permits might implicitly be authorized.  Even if the plaintiffs did sue DEQ's

director (or if they amended to do so), their suit likely nevertheless would fall to Eleventh

Amendment immunity because DEQ is (properly) not sued as a polluter in this case, it only is

sued as an enforcement agency.  *See* West Va. Highlands Conservancy, Inc. v. Huffman*,* 651 F.

Supp. 2d 512 (S.D. W. Va. 2009) (Eleventh Amendment immunity did not bar environmental

organizations' citizen suit claim under the CWA against the Secretary of the West Virginia

Department of Environmental Protection seeking declaration that the Department was in

violation of the CWA and an order requiring that it apply for a National Pollutant Discharge

Elimination System permit for discharge of pollutants, **because suit was brought against**

**Secretary for Department's alleged activities as a polluter in violation of federal law, not as**

**the entity issuing permits under state law**).

Second, the State of Louisiana has not waived immunity from suit in federal court for

itself or its agencies. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 314 (5th Cir.

1999) (*citing* Quern v. Jordan, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)).  *See*

*also* La. Rev. Stat. § 13:5106A (no suit against the state or a state agency or political subdivision

shall be instituted in any court other than a Louisiana state court).  This exception also offers the

plaintiffs no relief.

Finally, in Ex parte Young the Supreme Court permitted suits against state officials in

their official capacities to enjoin enforcement of an unconstitutional state statute or to force

compliance with the Constitution and federal law.  *E.g.,* Okpalobi v. Foster, 244 F.3d 405, 411

(5th Cir. 2001); Fairley v. Stalder, 294 Fed. Appx. 805, 811 (5th Cir. 2008).  This case does not

present an Ex parte Young scenario – the plaintiffs are not suing state officials in their official

capacities to enjoin enforcement of an unconstitutional state statute or to force compliance with

the Constitution and federal law.  Because no valid exception exists, DEQ is entitled to Eleventh Amendment immunity and this Court lacks jurisdiction to consider the plaintiffs' claims against DEQ.

### III.   THE PLAINTIFFS HAVE NO CLAIM AGAINST DEQ TO ENFORCE REGULATIONS, COMPEL AGENCY ACTIONS, OR FOR DAMAGES.

Even if subject matter jurisdiction over DEQ exists, the plaintiffs have not stated a claim upon which relief can be granted. The plaintiffs cite a multitude of different statutes and regulations.  But they cite no statute, regulation, or law that provides a claim or cause of action for a plaintiff to sue DEQ to enforce regulations or compel agency actions in this forum, or to seek damages as a result, especially in the context of the facts that the plaintiffs have pleaded.

#### A.   ADMINISTRATIVE FRAMEWORK UNDER LOUISIANA LAW.

The Louisiana Environmental Quality Act (the "Act") provides individuals and entities with administrative remedies to challenge DEQ actions or inactions.  Importantly, however, the Act affords no cause of action for any alleged failure to enforce regulations, much less an award of monetary damages against DEQ.

As a threshold matter, a plaintiff must make a showing that the defendant owed the plaintiff a duty.[9]  Whether a duty is owed to a plaintiff is a question of law that turns on "whether the plaintiff has any law—statutory, jurisprudential, or arising from general fault principles—that support his claim."[10]  If there is no duty owed, "there can be no liability."[11]

Under Louisiana law, DEQ's duties are not imposed to benefit specific individuals or entities or to vindicate private claims, as the plaintiffs seek here.  Rather, the laws governing DEQ establish that its obligations are defined in terms of protecting the environment generally.

---

[9]   *Laguerre v. Mendez,* 08-784 (La. App. 5 Cir. 2/25/09), 9 So.3d 896, 898.
[10]   *N. Clark, LLC v. Chisesi,* 2016-0599 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1119 (citations omitted).
[11]   *Id*.

For example, Article IX, Section 1, of the Louisiana Constitution of 1974 sets forth the "public trust doctrine"; provides that "[t]he natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people"; and specifically grants the Legislature with plenary authority to "enact laws to implement this policy."

As the constitutionally designated public trustee of the State's natural resources, the Louisiana Legislature created DEQ and other regulatory agencies to protect these resources consistent with the health, safety, and welfare of the people.[12]  And to protect the public interest in the environment and natural resources, the Legislature gave DEQ jurisdiction to regulate matters concerning environmental protection and remediation, and adopt appropriate environmental regulations.  For example, Louisiana Revised Statute 30:2011 designates DEQ as the "primary agency in the state concerned with environmental protection and regulation," including "the regulation of solid waste disposal." Meanwhile, Louisiana Revised Statute 30:2012 empowers DEQ with the right and authority, in its discretion, to inspect property for potential environmental problems within its jurisdiction.

Regarding solid waste, as another example, the Louisiana Solid Waste Management and Resource Recovery Law is found in Louisiana Revised Statutes 30:2151 *et seq.*  In enacting this law, the Legislature found and declared "that the disposal and utilization of solid waste is a matter of vital concern to all citizens of this state."[13]  In short, the authority delegated by the Legislature over the environment and natural resources of the State to DEQ is "pervasive" and

---

[12]      *See* La. R.S. 30:2003, 30:2011, 30:2051 *et seq.*, 36:231, and 36:234.
[13]      La. R.S. 30:2152.

evidences a clear intent "to pre-empt such field in its entirety."[14]

Indeed, the Louisiana Supreme Court has previously held that decisions concerning the permitting and enforcement of air quality, waste disposal, water discharge, and protection of the environment did not exist as traditional judicial civil matters when the Louisiana Constitution of 1974 was passed and were never delegated to the judicial branch.[15]  For permitting, the Court noted that it was "unquestioned that the issuance of environmental permits is a power which vests, not in the judiciary, but in the executive branch."[16]  Thus, "private citizens have no independent right to bring suit in the district court in environmental permitting matters."[17] While some have argued that the State should be considered a defendant in such matters over which a state district court has exclusive original jurisdiction, the Supreme Court of Louisiana has explained that the "simple answer to that argument is that the state is not a defendant" in such situations, "as the state is acting as a regulatory authority in accord with its constitutional imperative to protect the environment under *La. Const. art. IX, § 1*."[18]

Instead, decisions regarding the policy of protecting, conserving, and replenishing the natural resources and environment of the State were specifically delegated to the Legislature under the public trust doctrine of Article IX, Section 1, of the Louisiana Constitution.[19] As a result, "DEQ determinations are regulatory matters, not civil matters, and are therefore 'not within the scope of the district court's constitutional grant of original jurisdiction.'"[20]

---

[14]     *See Desmormeaux Enter., Inc.  v. Village of Mermentau*, 568 So.2d 213, 215 (La. App. 3 Cir. 1990).

[15]     *See Matter of American Waste & Pollution Control Co.,* 588 So.2d 367 (La. 1991).

[16]     *Id*. at 369.

[17]     *Id*. at 372.

[18]     *Id*. at 373.

[19]     *Id.*

[20]     *Butler v. Denka Performance Elastomer LLC,* 18-6685, 2019 U.S. Dist. LEXIS 40266, *16 (Mar. 13, 2019) (quoting *Matter of American Waste & Pollution Control Co.,* 588 So.2d 367, 373 (La. 1991)

In sum, the public trust doctrine embodied in the Louisiana Constitution grants authority for protection of the State's environment and resources to the Legislature, which delegated that authority to DEQ within the executive branch. Because the issues over which DEQ exercises its delegated authority, such as issuing and enforcing permits, did not exist as traditional civil matters enforced by district courts when the Louisiana Constitution was adopted, the Plaintiffs cannot establish any tort duty owed by DEQ upon which to assert claims in this forum.

In this case, plaintiffs allege that plaintiff Terri Stevens made numerous complaints to state employees with no result. Plaintiffs then make the unfounded and unsupported conclusion in the next sentence that the Secretary of DEQ should, therefore, be ordered to "conduct investigations" and issue "appropriate orders to control, regulate, or restrain" discharges of waste material or pollutants. They then make an even further allegation—again, with no citation or support—that this Court "should enter appropriate orders," seemingly implying that if the Secretary of DEQ did not that this Court now can and should:

> Plaintiff Stevens has also made numerous complaints to appropriate state employees with a similar lack of result. Consequently, the Secretary should be ordered to conduct investigations, which it could have carried out on its own or upon complaint from any person (Stevens), so that it could have and can and should now issue appropriate orders to control, regulate, or restrain the discharge of any waste material or polluting substance discharged or sought to be discharged into any waters of the state in accordance with the provisions of R.S. 30:2025.38. This Court should enter appropriate orders.[21]

Yet, plaintiffs do not allege what "appropriate orders" can be entered as a matter law. More importantly, plaintiffs fail to state any basis under applicable law for this Court to even enter any such orders in the context of what is alleged here.

**B.      NO BASIS TO COMPEL AGENCY ACTIONS OR SEEK DAMAGES AGAINST DEQ.**

Under the Act, the Legislature provided a framework to review agency actions regarding

---

[21]      *See* Complaint (Rec. Doc. 1), ¶ 57.

regulatory matters that includes a mechanism to hold adjudicatory hearings and allow interested parties to intervene.[22]   Accordingly, "[a] party seeking to challenge DEQ action or inaction must follow the procedures set out in La. R.S. 30:2050.11."[23]   Importantly, though, "the extent to which a citizen may challenge agency action is quite limited."[24]

Specifically, the statutory scheme allows for judicial review of certain DEQ enforcement or regulatory actions.[25]   And any review of such actions must be conducted in accordance with the Louisiana Administrative Procedure Act under La. R.S. 49:964(F) and (G).[26]

Along with this system of administrative proceedings and limited judicial review, the statutory scheme provides another method for private citizens to challenge actions of DEQ through citizen suits.[27]   A citizen suit under La. R.S. 30:2026, however, cannot be brought (1) without notification to DEQ; (2) if DEQ has already commenced an action to require compliance with any environmental standard, limitation, or order; (3) if the alleged violator is operating under a variance and is in compliance therewith; and/or (4) if the alleged violator is already under a compliance order and subject to pending action for penalties.[28]

Accordingly, if plaintiffs were dissatisfied with a decision of DEQ, the statutory framework provided them with several remedies.  Under the proper circumstances, for example, plaintiffs could have intervened in an adjudicatory hearing, requested a declaratory ruling, or sought an appeal as provided by law.[29]   And if DEQ took no action with respect to a particular issue or location, the Plaintiffs could have, within the limitations set by law, filed a citizen suit

---

[22]     *See* La. R.S. 30:2050.1 *et seq.*
[23]     *Butler v. Denka Performance Elastomer LLC,* 18-6685, 2019 U.S. Dist. LEXIS 40266, *16 (Mar. 13, 2019).
[24]     *Id.*
[25]     *See* La. R.S. 30:2014.3 and 30:2050.21.
[26]     *See* La. R.S. 30:2050.21(F).
[27]     *See* La. R.S. 30:2026.
[28]     *See* La. R.S. 30:2026(B).
[29]     *See* La. RS. 30:2050.4, 30:2050.10, 30:2050.11, and 30:2050.21.

against the alleged polluter in Louisiana state court.[30]  As noted, they already did so, losing on all counts and now waging an appeal.

That is the comprehensive legal framework under which the Legislature has preempted the field in its entirety, a framework that does not permit a plaintiff to demand money or damages from DEQ on account of pollution, or DEQ regulations or actions.  In *Sierra Club v. Givens,* an environmental organization filed a citizen suit against DEQ for its alleged failure to enforce its regulations.[31]  In granting DEQ's exception of no right of action, the Louisiana First Circuit Court of Appeal held that the citizen suit provision "does not provide for suits against DEQ in its capacity as a regulator under the [Act]."[32]  In reaching this conclusion, the First Circuit observed that the citizen suit "provides a valuable tool whereby concerned citizens act as 'private attorneys general' for the enforcement of environmental safeguards against violators when DEQ fails in its duty of enforcement.  However, the action is not designed for use against DEQ."[33]  Instead, when a state agency allegedly fails to do its job, the solution is generally a political one, as the Court explained.[34]

More recently, another Section of this Court in the reached a similar conclusion in the context of a plaintiff seeking damages against DEQ when it granted a motion to dismiss a plaintiff's suit for failure to state a claim.[35]  In *Butler v. Denka Performance Elastomer LLC,* the plaintiff sought to hold DEQ liable for its alleged failure to warn the community of risks associated with chloroprene exposure.[36]  Specifically, the plaintiff alleged that DEQ failed to

---

[30]     *See* La. R.S. 30:2026.
[31]     *Sierra Club v. Givens,* 97-0959 (La. App. 1 Cir. 9/26/97), 710 So.2d 249.
[32]     *Id*. at 251.
[33]     *Id*. at 250.
[34]     *Id*.
[35]     *Butler v. Denka Performance Elastomer LLC,* 18-6685, 2019 U.S. Dist. LEXIS 40266 (Mar. 13, 2019) (Feldman, J.).
[36]     *Id*. at *15.

provide notice concerning the high levels of chloroprene emissions and sought damages for the

Department's alleged negligence.[37] After recounting the regulatory framework, the Court

observed that the plaintiff had several options if she took issue with DEQ action or inaction that

included intervening in an adjudicatory hearing, requesting a declaratory ruling, or seeking

appellate review after a final regulatory decision was made.[38] While the plaintiff did not pursue

any of those remedies, the Court noted that the plaintiff's attempt to "seek damages from the

State for exposure to emissions from a private defendant's manufacturing facility ventures into

absurdity."[39]

The same reasoning applies here. At best, plaintiffs' allegations concern alleged agency

actions or inactions. But plaintiffs' fail to state a claim under any applicable law for this Court to

become involved in their long-running dispute or to allow them to pursue a claim for monetary

damages against DEQ, which would fundamentally undermine Louisiana's statutory and

administrative framework. Likewise, plaintiffs state no plausible claim for the "deprivation of

any rights, privileges, or immunities secured by the Constitution and laws" under 42 U.S.C. §

1983 or attorney's fees under 42 U.S.C. § 1988, much less punitive damages. To the contrary,

plaintiffs apparently asserted these claims as an afterthought in their first amended complaint

with no foundation, or factual or legal basis, to assert in the context of this case.

If there are insufficient factual allegations to raise a right to relief above the speculative

level,[40] or if it is apparent from the face of the complaint that there is an insuperable bar to relief,

the claims must be dismissed.[41] Here, not only are there insufficient factual allegations for the

claims asserted against DEQ, there is no basis as a matter of law for the claims to be asserted to

---

[37]     *Id.*
[38]     *Id.* at *16.
[39]     *Id.* at *17.
[40]     *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2009).
[41]     *Jones v. Bock*, 549 U.S. 199, 215 (2007).

begin with on the face of what is pleaded in the Complaints.  The plaintiffs' claims, therefore, should be dismissed for these reasons as well.

<h3 style="text-align:center"><b><u>CONCLUSION</u></b></h3>

As the foregoing demonstrates, this Court should dismiss DEQ from this lawsuit because (1) DEQ enjoys Eleventh Amendment immunity from the plaintiffs' claim in this Court and this Court therefore lacks subject matter jurisdiction over the plaintiffs' claims against DEQ and, (2) even if subject matter jurisdiction was present, the plaintiffs fail to state claims against DEQ upon which relief can be granted; the plaintiffs cite no statute, regulation, or law that provides a claim or cause of action for them to sue DEQ to enforce regulations or compel agency actions in this forum, or to seek damages as a result, especially in the context of the facts that the plaintiffs have pleaded.   Accordingly, this Court should grant DEQ's motion and dismiss it from this lawsuit.

Respectfully submitted,

*/s/ Richard L. Traina*
**RICHARD L. TRAINA, La. Bar No. 22170, T.A.**
**RYAN M. SEIDEMANN, La. Bar No. 28991**
**Assistant Attorneys General**
**Louisiana Department of Justice**
**P. O. Box 94005**
**Baton Rouge, Louisiana 70804-9005**
**Telephone:  (225) 326-6030**
**Telecopier: (225) 326-6099**
**trainar@ag.louisiana.gov**
**seidemannr@ag.louisiana.gov**

--and--

TIMOTHY W. HASSINGER (#25085)
PATRICK J. SCHEPENS (#32240)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
3 Sanctuary Blvd., 3rd Floor
Mandeville, Louisiana  70471

Telephone:  (985) 674-6680
Facsimile:   (985) 674-6681
Special Assistant Attorneys General
*Counsel for DEQ*