STATE OF LOUISIANA

COURT OF APPEAL, FIRST CIRCUIT

No. 2019-CA-1555

---

TERRI LEWIS STEVENS AND JENNIFER FRUCHNICHT
WIFE OF/AND CRAIG RIVERA
Plaintiffs-Appellants

VS.

ST. TAMMANY PARISH GOVERNMENT
Defendant-Appellee

---

ON APPEAL FROM 22ND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY CASE NO. 2015-10649, DIV. H
HON. ALAN A. ZAUNBRECHER, DISTRICT JUDGE

---

DEFENDANT-APPELLEE ST. TAMMANY PARISH GOVERNMENT'S
RESPONSE BRIEF

---

A CIVIL PROCEEDING

---

Respectfully submitted,

JAMES L. BRADFORD, III (#23662) (A.C.)
KIRK N. AURANDT (#25336)
D. STEPHEN BROUILLETTE, JR. (#29105)
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, Louisiana  70434-5350
Telephone:  (985) 871-0800
Facsimile:  (985) 871-0899
E-mail:      jbradford@daiglefisse.com
             kaurandt@daiglefisse.com
             sbrouillette@daiglefisse.com

Counsel for Defendant-Appellee,
St. Tammany Parish Government

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................i

TABLE OF AUTHORITIES ............................................................ iii

I.     JURISDICTIONAL STATEMENT ..............................................1

II.    STATEMENT OF FACTS..........................................................1

     A.    The Original Petition, Preliminary Injunction Hearing, First Amended Petition, and Second Amended Petition ..............................2

     B.    Cross-Motions for Summary Judgment and the Third Amended Petition..................................................................3

     C.    St. Tammany's Renewed Motion for Summary Judgment and Exception of Prescription .....................................................5

     D.    The Exception of Prescription Trial and Summary Judgment Hearing ........................................................................8

     E.    Post-Judgment Proceedings....................................................9

III.   SUMMARY OF ARGUMENT....................................................12

IV.   ARGUMENT........................................................................14

     A.    The District Court Correctly Found That Some of the Plaintiffs Claims for Damages and Injunctive Relief Allegedly Caused by Public Works Projects Are Time-Barred ............................14

          1.    The Evidence Adduced During the Trial on St. Tammany's Exception of Prescription Supports the District Court's Ruling..............................................16

          2.    The 1993 Drainage Work Was Completed and Accepted as Required by La. R.S. 9:5624 ...............................18

     B.    The District Court Correctly Entered a Summary Judgment in Favor of St. Tammany for Claims Relating to the Widening Project................................................................20

          1.    The District Court Correctly Refused to Consider Some Documents Offered by the plaintiffs in Opposition to St. Tammany's Summary Judgment Motion .................20

          2.    The District Court Entered a Summary Judgment Because the plaintiffs Could Not Meet Their Burden of Proof Based on the Summary Judgment Evidence..................23

a.   The Summary Judgment Evidence Submitted by St. Tammany and the Plaintiffs..................................23

b.   The Summary Judgment Record Required Dismissal of the Plaintiffs' Third Amended Petition Because They Could Not Prove the Essential Elements of Their Claims.................................................25

C.   The District Court Correctly Granted St. Tammany's Exception of No Cause of Action on Plaintiffs' Unfair Trade Practices Act Claim .................................................................28

D.   The Plaintiffs Motion to Disqualify St. Tammany's Counsel was Correctly Denied .........................................30

1.   The Factual Basis for Plaintiffs' Motion to Disqualify ............31

2.   The District Court's Decision Not to Disqualify St. Tammany's Counsel Was Not Manifestly Erroneous or an Abuse of Discretion..............................................32

E.   The District Court Properly Denied the Plaintiffs' Meritless Motions for New Trial........................................36

1.   The Plaintiffs' First Motion for New Trial ..............................36

2.   The Plaintiffs' Untimely Second Motion for New Trial .........38

F.   This Court Should Not Consider on Appeal Claims the Plaintiffs' Waived below by Failing to Prosecute ............................39

G.   Denying the Plaintiffs' Motion for Summary Judgment Was Not Erroneous................................................41

H.   The Plaintiffs Incorrectly Claim St. Tammany Is the Source of Alleged Storm Water Pollutants Traversing Their Properties ............43

I.   The Plaintiffs Are Not Entitled to Injunctive Relief Because Their Claims Were Dismissed Through Exception or Summary Judgment ...........................................44

V.   CONCLUSION.........................................................46

CERTIFICATE OF SERVICE .............................................47

# TABLE OF AUTHORITIES

## Cases

*Albitar v. Albitar,*
  16-167 (La. App. 5th Cir. 6/30/16), 197 So.3d 332 .......................................39

*Albright v. Oliver,*
  510 U.S. 266 (1994).....................................................................................27

*Avenal v. State,*
  2003-3521 (La. 10/19/04), 886 So.2d 1085 ........................................... 15-16

*Baldo v. Thibodeaux,*
  295 So.2d 866 (La. App. 4th Cir. 1974) .........................................................39

*Bergeron v. Illinois Cent. Gulf R. Co.,*
  402 So.2d 184 (La. App. 1st Cir. 1981) ..........................................................36

*Brandner v. Molonguet* (unpublished),
  2014-0712 (La. App. 1st Cir. 12/23/14), 2014 WL 7332206.........................45

*Burford v. Cargill,*
  2009 WL 2381328 (W.D. La. 2009) ....................................................... 33-34

*Camden v. State of Maryland,*
  910 F.Supp. 1115 (D. Md. 1996)............................................................ 34-35

*Campbell v. Tork, Inc.,*
  2003-1341 (La. 2/20/04), 870 So.2d 968 .......................................................36

*Cardinale v. Stanga,*
  2001-1443 (La. App. 1st Cir. 3/27/02), 835 So.2d 576.................................28

*Cheramie Servs. Inc. v. Shell Deepwater Prod., Inc.,*
  2009-1633 (La. 4/23/10), 35 So.3d 1053 .......................................................29

*Council of City of New Orleans v. Washington,*
  2009-1067 (La. 5/29/09), 9 So.3d 854 ..........................................................40

*Daniels v. Williams,*
  474 U.S. 327 (1986)....................................................................................27

*Dhaliwal v. Dhaliwal,*
  49,973 (La. App. 2nd Cir. 11/25/15), 184 So.3d 773 ....................................31

*Estate of Patout v. City of New Iberia,*
  68-0961 (La. 7/7/99), 738 So.2d 544 ..........................................................15

*Evans v. Lungrin,*
  97-0541 (La. 2/6/98), 708 So.2d 731) ..........................................................34

*First United Fin. Corp. v. U.S. Fid. & Guar. Co.*,
　　96 F.3d 135 (5th Cir. 1996) ...........................................................22

*Guillot v. LECC-Baton Rouge Inc.*,
　　2005-2537 (La. App. 1st Cir. 12/28/06), 952 So.2d 42 ...................14

*Higgins v. Williams Energy Partner, L.P.*,
　　2017-1662 (La. App. 1st Cir. 4/10/19), 280 So.3d 195 ...................23

*Hoover v. Hoover*,
　　2010-1245 (La. App. 1st Cir. 3/17/11), 62 So.3d 765 ............... 39-40

*Inorganic Coatings, Inc. v. Falberg*,
　　926 F.Supp. 517 (E.D. Penn. 1995) ......................................... 34-35

*In re Frank*,
　　06-04 (W.D. La. 4/25/06) 2006 WL 1133871 ........................... 34-35

*In re News Am. Pub., Inc.*,
　　974 S.W.2d 97 (Tex. App. 1998) .............................................. 34-35

*Jenkins v. Wal-Mart Stores, Inc.*,
　　956 F.Supp. 695 (W.D. La. 1997) ..................................................32

*Johnson v. Montoya*,
　　2013-1951 (La. App. 1st Cir. 5/2/14), 145 So.3d 418 ............... 39-40

*Keith v. Keith*,
　　48,919 (La. App. 2nd Cir. 5/15/14), 140 So.3d 1202 .....................33

*LaShip, LLC v. Hayward Baker, Inc.*,
　　296 F.R.D. 475 (E.D. La. 2013) ....................................................22

*Lavigne v. Allied Shipyard, Inc.*,
　　2018-0066 (La. App. 4th Cir. 1/15/20), --- So.3d --- ......................35

*Louisiana Crisis Center v. Marzano-Lesnevich*,
　　878 F.Supp.2d 662 (E.D. La. 2012) ..............................................45

*McCann v. ABC Ins. Co.*,
　　93-1789 (La. App. 4th Cir. 7/14/94), 640 So.2d 865 .....................31

*Northshore Ins. Agency, Inc. v. Farris*,
　　634 So.2d 867 (La. App. 1st Cir. 1993) .........................................38

*Paul v. Judicial Watch, Inc.*,
　　571 F.Supp.2d 17 (D.D.C. 2008) ..................................................33

*Pellegrin v. City of Thibodeaux*,
　　2001-2750 (La. App. 1st Cir. 12/31/2002) .....................................28

*Pizzolato v. Grier*,
　　2018-0912 (La. App. 1st Cir. 275 So.3d 273 .................................15

*Polycast Technology Corp. v. Uniroyal, Inc.*,
   129 F.R.D. 621 (S.D.N.Y. 1990)....................................................32

*Pottinger v. Price*,
   2019-0183 (La. App. 1st Cir. 10/23/19), --- So.3d ---.....................21

*Raborn v. Albea*,
   2016-1468 (La. App. 1st Cir. 5/11/17), 221 So.3d 104.............22, 37

*Ramey v. DeClaire*,
   2003-1299 (La. 3/19/04), 869 So.2d 114 ................................. 28-29

*Ramus v. KCJS Trucking, LLC*,
   2019-0039 (La. App. 1st Cir. 9/27/19), 287 So.3d 728..................37

*Reyer v. Milton Homes, LLC*,
   2018-0580 (La. App. 1st Cir. 2/25/19), 272 So.3d 604..................29

*Ritchey v. State Farm Mut. Automotive Ins. Co.*,
   2017-2033 (La. App. 1st Cir. 9/15/17), 228 So.3d 272............. 24-25

*Robles v. ExxonMobile*,
   02-0854 (La. App. 1st Cir. 3/28/03), 844 So2d 339.......................25

*Ross v. Oceans Behavioral Hosp. of Greater New Orleans*,
   14-368 (La. App. 5th Cir. 11/25/14), 165 So.3d 176 .....................22

*Safeco Ins. Co. of Am. v. Chrysler Corp*,
   2001-1641 (La. App. 3rd Cir. 7/31/02), 834 So.2d 1026 ...............39

*Schmit v. Tjitandi*,
   2016-1431 (La. App. 1st Cir. 6/2/17), 223 So.3d 153....................42

*Shelton v. Hess*,
   599 F.Supp. 905 (S.D. Tex. 1984)..................................................34

*Shorts v. Gambino*,
   570 So.2d 209 (La. App. 5th Cir. 1990) .........................................39

*Southern Ins. Co. v. Metal Depot*,
   2010-1899 (La. App. 1st Cir. 6/10/11), 70 So.3d 922....................15

*Smith v. Our Lady of the Lake Hosp., Inc.*,
   93-2512 (La. 7/5/94), 639 So.2d 730 .............................................23

*State v. Craddock*,
   2010-1473 (La. App. 1st Cir. 3/25/11), 62 So.3d 791....................32

*Stevens v. St. Tammany Parish Gov't*,
   2016-0197 (La. App. 1st Cir. 1/18/17), 212 So.3d 562................1, 2

*Stevens v. St. Tammany Parish Gov't*,
  2016-0534 (La. App. 1st Cir. 1/18/17), 212 So.3d 568 .................................... 1

*Stevens v. St. Tammany Parish Gov't*,
  2017-CW-1012 (La. App. 1st Cir. 8/14/17) ............................. 1, 12, 30-32, 35

*Stevens v. St. Tammany Parish Gov't*,
  2017-CC-1558 (La. 11/17/17) ................................................................ 1, 32

*Stevens v. St. Tammany Parish Gov't*,
  2018-CW-0005 (La. App. 1st Cir. 4/30/18) ................................................. 1, 5

*Trahan v. Liberty Mutual Ins. Co.*,
  314 So.2d 350 (La. 1975) ............................................................................ 45

*Vartech Systems, Inc. v. Hayden*,
  2005-2499 (La. App. 1st Cir. 12/20/06), 951 So.2d 247 ............................... 45

*Walker v. State, Dept. of Transp. & Dev.*,
  2001-2078 (La. 5/14/02), 817 So.2d 57 ....................................................... 32

*Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cty., OK, Bd. of Educ.*,
  230 F.3d 1201 (10th Cir. 2000) .............................................................. 34-35

*Westerman v. State Farm Mut. Auto Ins. Co.*,
  2001-2159 (La. App. 1st Cir. 9/27/02), 834 So.2d 445 ................................. 40

*Williams v. Marinemax of Cent. Florida*,
  773 F.Supp.2d 1265 (N.D. Fla. 2011) ......................................................... 22

*Zachair, Ltd. v. Driggs*,
  965 F.Supp. 741 (D. Md. 1997) .............................................................. 34-35

## **Statutes**

33 U.S.C. § 1251 ............................................................................................ 40

LA. CONST. ART. I, §4 ..................................................................................... 15

La. R.S. 9:5624 ..................................................................... 9, 12, 14-16, 19

La. R.S. 51:1402 ...................................................................................... 28-30

La. R.S. 51:1405 ...................................................................................... 29-30

La. R.S. 51:1409 ............................................................................................ 30

## **Rules**

La. Code Civ. Proc. art. 425 ........................................................................... 40

La. Code Civ. Proc. art. 854 ........................................................................... 28

La. Code Civ. Proc. art. 966.............................................................6, 7, 12, 20-23, 25

La. Code Civ. Proc. art. 967..................................................................12, 22-23, 37

La. Code Civ. Proc. art. 1425....................................................................................6, 7

La. Code Civ. Proc. art. 1672....................................................................................2

La. Code Civ. Proc. art. 1972....................................................................................36

La. Code Civ. Proc. art. 1973....................................................................................36

La. Code Civ. Proc. art. 1974..........................................................................10, 36, 39

La. Code Civ. Proc. art. 1975....................................................................................36

La. Code Civ. Proc. art. 3658....................................................................................9

La. R. Prof. Cond. 1.7 ..............................................................................................33

La. R. Prof. Cond. 1.9 ..............................................................................................33

La. R. Prof. Cond. 1.12 ............................................................................................33

La. R. Prof. Cond. 4.2 ........................................................................................31-33

Uniform Rules – Courts of Appeal 1-3......................................................................39

Uniform Rules – Courts of Appeal 2-12.4.........................................................14, 41

## Other

1 LA. CIV. L. TREATISE, CIVIL PROCEDURE § 6:8 (2d ed.) ........................................22

## I.   JURISDICTIONAL STATEMENT

This Court has jurisdiction over the appeal by Plaintiffs-Appellants Terri Lewis Stevens, Jennifer Fruchtnicht Rivera, and Craig Rivera of the District Court's judgments dated 17 August 2018[1] and 30 October 2018[2] under Article V § 10 of the Louisiana Constitution.

## II.   STATEMENT OF FACTS

This appeal is the fifth time this Court will review some aspect of this lawsuit, either on direct appeal or in an application for supervisory writs.[3]  This current appeal arises from the dismissal of all claims asserted by the Plaintiffs in their Third Amended Petition through either exception or summary judgment and the subsequent denial of the Plaintiffs' Motion for New Trial.  The Plaintiffs own adjoining properties in Covington, St. Tammany Parish, Louisiana.[4]  Plaintiff Stevens purchased her property, 725 Dove Park Road, in October 2011 at a foreclosure sale.[5]  Plaintiffs Craig and Jennifer Fruchtnicht Rivera purchased their property, 801 Dove Park Road, in 2007 and began living there in the fall of 2008.[6]  In its Reasons for Judgment, the District Court specifically found the Plaintiffs' properties have a natural drainage feature traversing them, through which surface water from upstream generally flows from "south to north, through longstanding culverts under Dove Park Road, and across the Plaintiffs' properties to Little

---

[1]     R. 5291-92.
[2]     R. 6360-62.
[3]     *See Stevens v. St. Tammany Parish Gov't*, 2016-0197 (La. App. 1st Cir. 1/18/17), 212 So.3d 562 (Denial of request for preliminary injunction appealed by Plaintiffs); *Stevens v. St. Tammany Parish Gov't*, 2016-0534 (La. App. 1st Cir. 1/18/17), 212 So.3d 568 (Plaintiffs' appeal of contempt and sanctions order); *Stevens v. St. Tammany Parish Gov't*, 2017-1012 (La. App. 1st Cir. 8/14/17) (Plaintiffs' writ application denied seeking review of order denying motion to disqualify St. Tammany's Counsel); and, *Stevens v. St. Tammany Parish Gov't*, 2018-CW-0005 (La. App. 1st Cir. 4/30/18) (Plaintiffs' writ application denied seeking review of order deferring request for second preliminary injunction hearing to trial on the merits).  The Plaintiffs also sought review of the disqualification motion with the Louisiana Supreme Court, which did not consider the Plaintiffs writ application.  *See Stevens v. St. Tammany Parish Gov't*, 2017-CC-1558 (La. App. 1st Cir. 11/17/17) (writ not considered, not timely filed}.
[4]     R. 409, ¶ 2.
[5]     R. 3046-47.
[6]     R. 3047.

Creek."[7]  Therefore, a natural servitude of drain in favor of St. Tammany and others burdens the Plaintiffs' properties.[8]

### A.  The Original Petition, Preliminary Injunction Hearing, First Amended Petition, and Second Amended Petition.

The Plaintiffs filed originally this action seeking damages, as well as preliminary and permanent injunctive relief arising from this natural drainage servitude traversing their properties on 18 February 2015.[9]  On 27 March 2015, the Plaintiffs presented their case for a preliminary injunction to keep the Dove Park Road Widening Project ("the Widening Project") from starting.[10]  Following St. Tammany's motion for involuntary dismissal,[11] on 1 April 2015 the District Court, the Honorable Allison Penzato presiding, granted an involuntary dismissal finding the Plaintiffs had failed to meet their burden of proof that the Widening Project would result in any increase in the amount of water already traversing their properties, and denied the requested preliminary injunction.[12]  The Plaintiffs appealed the decision to this Court, which ultimately dismissed the appeal as moot.[13]

Plaintiffs filed their First Amended Petition on 13 March 2015, asserting essentially the same claims as were in the original Petition.[14]  A Second Amended Petition followed on 6 April 2015.[15]  The Second Amended Petition rephrased some of their original allegations, added a possessory action the Plaintiffs failed to plead initially, and again requested, on an expedited basis, that a preliminary injunction issue; however, a second preliminary injunction hearing did not take place.[16]

---

[7]      R. 5286.

[8]      *See, generally*, R. 5283-90 (discussing the natural drainage servitude).

[9]      Prior Appeal No. 2 (2016-CA-0534), R. 23-165.

[10]     Prior Appeal No. 1 (2016-CA-0197), R. 438-639.

[11]     *See* La. Code Civ. Proc. art. 1672(B) (permitting motion for involuntary dismissal by defendant).

[12]     *Id.* at R. 330, 640-55.

[13]     *Stevens v. St. Tammany Parish Gov't*, 2016-0197, p. 9 (La. App. 1st Cir. 1/18/17), 212 So.3d 562, 568.

[14]     Prior Appeal No. 2 (2016-CA-0534), R. 126-65.

[15]     *Id.* at R. 176-90.

[16]     *Id.*

**B.** **Cross-Motions for Summary Judgment and the Third Amended Petition.**

The lawsuit proceeded with discovery and other matters until 18 April 2017. On that date, the Plaintiffs filed their motion for summary judgment claiming there were no genuine issues of material fact and they were entitled to a judgment as a matter of law.[17]   St. Tammany responded by filing its own summary judgment motion on 5 May 2017 seeking dismissal of all claims asserted in the Plaintiffs' Second Amended Petition.[18]  Both summary judgment motions were set for hearing on 8 June 2017.

However, before the summary judgment hearing occurred, on 18 May 2017, the District Court, the Honorable Donald Fendlason presiding,[19] granted the Plaintiffs leave to file a Third Amended Petition.[20]   As a result, St. Tammany withdrew its motion for summary judgment, because it addressed only allegations and claims in the Second Amended Petition.[21]   Plaintiffs' motion for summary judgment went forward for hearing on 19 October 2017 and was denied in its entirety.[22]  Plaintiffs stated six (6) separate counts in the Third Amended Petition:

1. Count 1:  Violation of Plaintiffs' Natural Servitude of Drainage;
2. Count 2:  Inverse Condemnation (i.e., St. Tammany's public projects have damaged Plaintiffs' properties without the payment of just compensation);
3. Count 3:  "Intentional Damage" (in reality, a restatement of Count 2's inverse condemnation claims, but with the added twist that St. Tammany is alleged to have held an intent to damage Plaintiffs' properties);
4. Count 4:  Possessory Action (the same foregoing actions of St. Tammany constitute a violation of

---

[17]   R. 259-381.
[18]   R. 425-1320.
[19]   Judge Penzato was elected to the First Circuit Court of Appeal and took the bench there on 1 March 2017.  Judge Fendlason served as an *ad hoc* judge until after the October 2017 election to fill Judge Penzato's open seat.  Judge Alan A. Zaunbrecher was elected in October 2017.
[20]   R. 23 (minute entry of leave granted to file Third Amended Petition).
[21]   R. 2484-86.
[22]   R. 2690-92 (Judgment); R. 6758-63 (Transcript of Argument and District Court's ruling).

       Plaintiffs' right of peaceful possession of their
       respective properties);

   5. <u>Count 5:</u> Violation of Louisiana's Unfair Trade
       Practice Act; and,

   6. <u>Count 6:</u>  Civil RICO violation for St. Tammany's
       and certain St. Tammany employees' alleged
       conspiracy to violate aspects of the Louisiana
       Public Records Law.[23]

The Third Amended Petition also added as new defendants three lawyers employed by St. Tammany in its Legal Department ("St. Tammany Employee Defendants") and an independent consulting engineer engaged by St. Tammany to design the Widening Project.[24]  The Third Amended Petition substituted "in all respects … the original and all amended supplemented petitions."[25]

   The Plaintiffs allege in the Third Amended Petition that certain public works projects altered the drainage patterns near their properties resulting in "excessive and unlawful drainage of contaminated surface and other waters to enter and to remain on petitioners' properties."[26]  In addition to the Widening Project, the Plaintiffs identified a 2012 project in Heatherstone subdivision, "drainage alterations" to Dove Park subdivision (taking place in 2001), and all other drainage modifications.[27]  The specific public works projects forming the basis of the Plaintiffs' claims, as revealed through discovery, are:

   1. The 1993 cleaning of the drainage path on 725 Dove
       Park Road (now owned by Plaintiff Stevens);

   2. 2001 District 5 Capital Improvement Project, which
       included paving streets in Dove Park Subdivision;

   3. 2011 District 5 Capital Improvement Project, which
       included microsurfacing of streets and
       repair/replacement in Heatherstone subdivision;
       and,

   4. The Widening Project.[28]

---

[23] *See, generally*, Third Amended Petition, R. 408-24.
[24] *Id.*
[25] R. 408.
[26] R. 421, ¶ 46.
[27] *Id.*
[28] R. 5280 (Reasons for Judgment).

In response to the Third Amended Petition, St. Tammany and the St. Tammany Employee Defendants filed exceptions of no cause of action,[29] res judicata,[30] and prescription.[31]  By judgment dated 6 September 2017, the District Court granted St. Tammany's and the St. Tammany Employee Defendants' exceptions of no cause of action and res judicata, dismissing with prejudice in their entirety Count 5 (Unfair Trade Practices) and Count 6 (Civil RICO) and dismissing the St. Tammany Employee Defendants from the case with prejudice as to all remaining claims.[32]  The Court did not rule on the exception of prescription, deferring consideration of that exception to a later date.[33]

A second preliminary injunction hearing on the Plaintiffs' Third Amended Petition was originally set for 18 August 2017, but the District Court deferred the injunction hearing until the trial on the merits.[34]  Despite this deferment, the Plaintiffs filed a motion on 11 October 2017 seeking to set an expedited injunction hearing.[35]  The District Court denied the Plaintiffs' motion attempting to set a second preliminary injunction hearing before trial.[36]  The Plaintiffs sought supervisory review of the District Court's ruling, but this Court denied the Plaintiffs' writ application.[37]

### C.   St. Tammany's Renewed Motion for Summary Judgment and Exception of Prescription.

On 23 March 2018, the District Court entered a scheduling order setting a trial date of 17 August 2018 and establishing various deadlines for discovery, motions,

---

[29]   R. 2068-82.
[30]   R. 2083-2176.
[31]   R. 2250-96.
[32]   R. 2479-82; *see also* R. 6652-6749 (Transcript of 18 August 2017 hearing).
[33]   R. 6673-74 (deferring exception of prescription).
[34]   R. 38 (District Court's minute entry); R. 6657-61 (District Court's oral reasons for deferring preliminary injunction hearing to trial on the merits).
[35]   R. 2511-20.
[36]   R. 2690-92.
[37]   R. 2923; *Stevens v. St. Tammany Parish Gov't.*, 2018-CW-0005 (La. App. 1st Cir. 4/30/18).

and disclosure of expert witnesses.[38]  By separate order, the District Court required all experts to prepare written reports pursuant to La. Code. Civ. Proc. art. 1425(B).[39]

St. Tammany re-filed its motion for summary judgment on 16 May 2018, seeking dismissal of the claims remaining in the Plaintiffs' Third Amended Petition.[40]  This motion was set for hearing on 18 June 2018.[41]  The Plaintiffs filed their opposition to St. Tammany's summary judgment motion on 4 June 2018,[42] along with a response to St. Tammany's statement of uncontested material facts.[43] Plaintiffs separately filed affidavits from Peter Lee,[44] Anthony Cavell,[45] Steve Burnham,[46] and Plaintiff Stevens[47] in support of their opposition.  St. Tammany filed its reply in support of the summary judgment motion on 11 June 2018.[48]  Included in this reply memorandum were detailed objections to the affidavits, sworn testimony, and exhibits filed with the Plaintiffs opposition, as required by La. Code Civ. Proc. art. 966(D)(2).[49]  St. Tammany's reply memorandum closed the summary judgment record.[50]

Notwithstanding the procedural mandates of La. Code Civ. Proc. art. 966, on 14 June 2018 the Plaintiffs filed a "supplemental memorandum" opposing St. Tammany's summary judgment motion, attempting to raise additional arguments on *contra non valentem*, the *St. Julien* Doctrine, and the Plaintiffs' constitutional claims.[51]  Also on 14 June 2018, the Plaintiffs filed their "Sur-Reply Memorandum

---

[38]      R. 2884-86.
[39]      R. 2887.
[40]      R. 3030-4112.
[41]      R. 3032.
[42]      R. 4232-4779.
[43]      R. 4189-4221.
[44]      R. 4488-93.
[45]      R. 4501-4779.
[46]      R. 4275-4356.
[47]      R. 4357-4487
[48]      R. 4783-4823.
[49]      R. 4783-4806.
[50]      *See* La. Code Civ. Proc. art. 966(D)(2) ("The court may consider only those documents filed in support of or in opposition to the motion for summary judgment …."); *see also* R. 6961 (District Court confirming the summary judgment record is closed).
[51]      R. 4824-40.

to the Reply Memorandum Filed by [St. Tammany]" in opposition to the summary judgment motion.[52] The Plaintiffs filed these documents without the District Court's permission or St. Tammany's consent. As a result, St. Tammany filed its motion to strike those filings on 15 June 2018.[53]

At the beginning of the 18 June 2018 hearing, the District Court struck the Plaintiffs' supplemental memorandum and sur-reply "as untimely and not specifically allowed by Article 966."[54] The District Court further noted the Code of Civil Procedure "does not call for sur-replies and does not call for supplemental memos. It does not allow any replies filed less than five days prior to the hearing. And the sur-reply and the supplemental memorandum violate both of those provisions …."[55]

Pursuant to La. Code Civ. Proc. art. 966(D)(2), the District Court next addressed St. Tammany's objections to the Plaintiffs' summary judgment evidence.[56] The District Court reminded the parties of its Article 1425(B) order requiring the exchange of written expert reports by the Court-imposed deadlines.[57] Because of this order, the District Court excluded from consideration the affidavits and accompanying exhibits of Peter Lee (no written report filed) and Steve Burnham, to the extent Mr. Burnham's affidavit testimony exceeds the scope of his written report.[58] In addition, the District Court excluded Plaintiff Stevens' affidavit and accompanying exhibits from consideration because the "affidavit is essentially all expert opinion testimony" and she was neither identified as an expert nor did she file a written report.[59] The District Court also noted the Stevens affidavit "is not of

---

[52]   R. 4841-57.
[53]   *See* R. 4858-60.
[54]   R. 6949.
[55]   R. 6949-50.
[56]   R. 6950.
[57]   R. 2887, 6950.
[58]   R. 6951.
[59]   *Id.*

facts known to her but simply opinions … it's just not an appropriate affidavit and it's not appropriate summary judgment testimony."[60]  St. Tammany's remaining objections to the Plaintiffs' summary judgment evidence were overruled.[61]

The District Court next noted that although St. Tammany had filed an exception of prescription, the exception had never been heard and prescription is traditionally addressed through exception – not summary judgment – because an evidentiary hearing is permitted.[62]  Consequently, the District Court set the exception of prescription for hearing on 13 July 2018 and continued the summary judgment hearing to the same date.[63]

### D.   The Exception of Prescription Trial and Summary Judgment Hearing.

On 13 July 2018, the District Court first heard argument on St. Tammany's summary judgment motion, taking the matter under advisement until the conclusion of the hearing.[64]  The District Court then heard testimony in connection with St. Tammany's Exception of Prescription from Michael Noto,[65] David Zechenelly,[66] Jean Thibodeaux,[67] Jacob Groby,[68] Steve Burnham,[69]  Plaintiff Craig Rivera,[70] Plaintiff Jennifer Fruchtnicht Rivera,[71] Plaintiff Terri Lewis Stevens,[72] and Sabrina Schenk.[73]  Following the presentation of evidence, the District Court heard the argument of counsel relating to the exception of prescription.[74]

---

[60]   *Id.*
[61]   R. 5042-45 (Judgment for 18 June 2018 hearing); 6951-52.
[62]   R. 6952-53.
[63]   R. 59.
[64]   R. 7000-46.
[65]   R. 6989-7000.
[66]   R. 7047-71.
[67]   R. 7071-96.
[68]   R. 7097-7107.
[69]   R. 7107-23.
[70]   R. 7134-43.
[71]   R. 7144-47.
[72]   R. 7147-73.
[73]   R. 7174-79.
[74]   R. 7179-93.

After a brief recess, the District Court ruled from the bench granting St. Tammany's exception of prescription for public works projects completed in 1993, 2001, and 2012 because the two-year prescriptive period of La. R.S. 9:5624 barred the Plaintiffs' claims.[75]   In addition, the District Court found that the Plaintiffs' possessory action was time-barred by La. Code Civ. Proc. art. 3658(4) and dismissed that claim.[76]   The District Court went on to address each claim remaining from the Third Amended Petition and granted St. Tammany's Motion for Summary Judgment, dismissing with prejudice all the remaining claims.[77]   The District Court entered its written reasons for judgment and the final judgment on 17 August 2018 ("the Final Judgment").[78]

### E.   Post-Judgment Proceedings.

Plaintiffs filed a motion for new trial on 27 August 2018.[79]   In that motion, the Plaintiff allege that a new trial was warranted because the Final Judgment was "contrary to the law and the evidence."[80]   The District Court scheduled the hearing on this motion for new trial on 16 October 2018.[81]   However, on 28 September 2018, the Plaintiffs filed a second motion for new trial claiming to be a motion to supplement the original motion for new trial alleging (for the first time) that newly discovered evidence required granting a new trial.[82]   This motion to supplement included some 34 separate exhibits, numbering over 700 pages.[83]   In further support of the motion to supplement, the Plaintiffs separately filed an affidavit from Plaintiff Stevens,[84] a motion for leave to file an affidavit from Steve Burnham,[85] and a motion

---

[75]   R. 7195-97.
[76]   R. 7197-98.
[77]   R. 7198-7207.
[78]   R. 5278-93.
[79]   R. 5294-5379.
[80]   *See, generally*, R. 5307-37.
[81]   R. 5300.
[82]   R. 5409-58.
[83]   R. 5459-5986.
[84]   R. 5987-6212.
[85]   R. 6236-38 (Motion to File Affidavit), 6247-6307 (Proposed Affidavit).

for leave to refile their 14 June 2018 sur-reply to support the motion for new trial

and its "supplement."[86]  St. Tammany opposed the Plaintiffs' original motion for

new trial[87] and moved to strike the Plaintiffs' second motion for new trial styled as

a motion to supplement, affidavits, and motion to refile the sur-reply.[88]

At the 16 October 2018 hearing, the District Court noted the Plaintiffs filed a

motion for new trial and then, 33 days later, filed a motion to supplement with what,

in the District Court's view, was "an entirely different motion."[89]  The District Court

found no authority "that would allow the filing of what this Court believes to be an

entirely new motion."[90]  The District Court denied the Plaintiffs' motion as untimely

under La. Code Civ. Proc. art. 1974 because there is "no legal authority for any such

motion in either the Louisiana Code of Civil Procedure or Westlaw."[91]  The District

Court specifically found that "the title of the pleading does not accurately reflect

either its content nor [*sic*] its intent.  It is fundamentally different from the plaintiffs'

timely filed Motion for New Trial."[92]  For the same reasons, the District Court denied

the Plaintiffs' request to file supplemental affidavit of Steve Burnham.[93]  The District

Court also denied the Plaintiffs' request to refile the sur-rebuttal, for the same

reasons it was originally denied.[94]

In addressing the Plaintiffs' motion for new trial, the District Court ruled as

follows:

> The plaintiff vigorously argues and complains about
> having to respond to the Parish's Motion for Summary
> Judgment in just over a month and further complains about
> a 49-page memorandum in support and 709 pages of
> exhibits filed by the Parish.  However, the cutoff dates for
> filing and hearing Motions for Summary Judgment were

---

[86]    R. 6216-18 (Motion to File Sur-Reply), 6236-46 (Proposed Sur-Reply).  The District Court
struck this sur-reply at the 18 June 2018 hearing.  *See* R. 6949-50 and n. 43-44, *supra*.
[87]    R. 6308-15.
[88]    R. 6337-56.
[89]    R. 7253.
[90]    *Id.*
[91]    R. 7257.
[92]    R. 7258.
[93]    R. 7258-59.
[94]    R. 7258.

set at a scheduling conference with all counsel and the Court. The dates were approved by all counsel in advance of their being set. Importantly, the plaintiff did not seek any continuance or extensions either by filing or in the Court transcript.

The Court further notes that the Parish's Motion for Summary Judgment is virtually identical in scope and content to the Motion for Summary Judgment it filed a year earlier, then voluntarily withdrew on the hearing date. Similarly, the 709 pages of exhibits do not appear to contain a single page not in plaintiffs' possession for months or even years before. Indeed, the exhibits consist of pleadings filed by the plaintiff, deposition excerpts, hearing transcripts, and expert reports previously exchanged.

Plaintiff complains about the unfairness – plaintiffs' complaints about the unfairness of the timing are unfounded.

\* \* \*

The Court has carefully considered both the peremptory and discretionary grounds for granting a Motion for New Trial. The Court specifically finds that: One, the granting of the Parish's exception of prescription and Motion For Summary Judgment were not clearly contrary to the law and the evidence. Two, the plaintiff has not shown any new evidence that could not have been obtained by due diligence prior to or during trial, nor that any purported new evidence would tend to change the result of the case. The plaintiff has shown -- three, the plaintiff has shown no good grounds for the Court to exert its discretion and grant a new trial, and, therefore, the Plaintiffs' Motion for New Trial is denied.[95]

The District Court entered a written judgment denying the motion for new trial on 30 October 2018.[96]

The Plaintiffs filed their Motion for Devolutive Appeal on 6 December 2018.[97] The District Court entered an order granting the devolutive appeal on 13 December 2018.[98] The St. Tammany Parish Clerk of Court entered the Notice of Appeal on 7 January 2019.[99] This appeal ensued.

---

[95]   R. 7268-71.
[96]   R. 6360-62.
[97]   R. 6363-64.
[98]   R. 6364.
[99]   R. 6393.

## III.   SUMMARY OF THE ARGUMENT

The District Court specifically determined that the two-year prescriptive period set forth in La. R.S. 9:5624 applied to the Plaintiffs' allegations about public works projects completed and accepted by St. Tammany before 2013. The District Court's factual findings should be affirmed because they are not manifestly erroneous or clearly wrong. Moreover, the District Court's conclusion that the 1993 drainage maintenance fell within the purview of La. R.S. 9:5624 was not manifest error, as there was sufficient evidence to find St. Tammany accepted the project.

The Plaintiffs failed to prove the essential elements of their non-prescribed claims, obligating the District Court to enter a summary judgment dismissing their claims. In addition, the Plaintiffs' evidence submitted in opposition of St. Tammany's summary judgment motion did not meet the requirements of La. Code Civ. Proc. arts. 966-67 and were properly excluded by the District Court.

The District Court correctly granted St. Tammany's exception of no cause of action on Plaintiffs' Unfair Trade Practices Act claim. More specifically, the District Court found the Third Amended Petition failed to allege any facts supporting the proposition that St. Tammany was engaged in trade or commerce, as statutorily defined. Applying the relevant law, the District Court concluded the Third Amended Petition does not state a cause of action under the Act and dismissed this claim.

In support of their motion to disqualify St. Tammany's counsel, the Plaintiffs failed to establish that they disclosed any privileged information to St. Tammany's counsel or that any prejudice resulted from Plaintiff Stevens' conversation with St. Tammany's counsel. Consequently, disqualifying St. Tammany's counsel was not an appropriate sanction.[100]   This decision by the District Court is not manifestly erroneous.

---

[100]    R. 6588-89. This Court denied writs on the Motion to Disqualify. *See Stevens v. St. Tammany Parish Gov't*, 2017-CW-1012 (La. App. 1st Cir. 8/14/17), *writ not considered*, 2017-CC-1558 (La. 11/17/17).

The Plaintiffs' motion for new trial did not identify any newly discovered evidence requiring a new trial, nor was the Final Judgment contrary to law and evidence.  Therefore, the District Court's denial of this motion is not an abuse of discretion.  In addition, the District Court's decision to deny Plaintiffs' request to "supplement" their motion for new trial with an entirely new motion for new trial asserting entirely new grounds was correct.  The Plaintiffs' proposed supplement was, in fact, a separate and untimely motion for new trial. Denying the Plaintiffs' request to supplement was not an abuse of discretion.

This Court should disregard new claims and arguments asserted by the Plaintiffs for the first time on appeal.  Appellate courts in Louisiana generally refrain from addressing issues not pleaded or decided by the trial court.  The claims and arguments made in Section V(A)-(D) in the Plaintiffs' original brief were not argued nor relied upon by the Plaintiffs in opposing St. Tammany's summary judgment motion and are improperly raised here.

The Plaintiffs admitted during argument on their summary judgment motion that genuine issues of material fact existed.  As such, the District Court's denial of the Plaintiffs' summary judgment was required.

The Plaintiffs' allegation that St. Tammany is the source of contaminated water traversing their properties is incorrect.  The District Court found that substantial competent evidence established that St. Tammany is not the source of any contaminated water.  The District Court's factual finding is not manifestly erroneous.

Injunctive relief is a remedy that requires the Plaintiffs first to prove their claims.  The Plaintiffs are not entitled to injunctive relief because the District Court dismissed disposed of their claims through exception or summary judgment.  The District Court's decision to defer a second preliminary injunction hearing until trial was not an abuse of discretion.

## IV.    ARGUMENT

At the outset, St. Tammany notes that throughout their original brief, the Plaintiffs continually make statements purporting to be fact, but which are actually directly contradicted by the record evidence in this proceeding.  For example, at the beginning of their argument the Plaintiffs allege St. Tammany increased the volume of storm water across their properties through 2003 [*sic*] and 2011 paving projects.[101] The Plaintiffs do not cite to any record evidence in support of this bald statement – because the record belies such statements.  St. Tammany respectfully requests that this Honorable Court disregard the Plaintiffs unsupported contentions for violating the Uniform Rules – Courts of Appeal.[102]

### A.    The District Court Correctly Found That Some of the Plaintiffs' Claims for Damages and Injunctive Relief Allegedly Caused by Public Works Projects Are Time-Barred.

The Plaintiffs' overriding complaint in this litigation is that the flow of surface water through the natural drainage feature on their properties has damaged their properties and amounts to an appropriation of their property for which St. Tammany has not compensated them.  The Plaintiffs focus on four (4) public works projects they claim caused or exacerbated the damage to their properties.[103]  St. Tammany completed all but one of these projects before 2013.  Therefore, as the District Court correctly ruled, the Plaintiffs' damage claims for these pre-2013 public works projects are time-barred by La. R.S. 9:5424.

Unless prescription is evident from the face of the pleadings, the party raising the objection of prescription bears the burden of proof.[104]  If evidence is introduced at the hearing on the peremptory exception raising the objection of prescription, the

---

[101]    Plaintiffs' Brief, p. 18.
[102]    *See* Uniform Rules – Courts of Appeal 2-12.4(A)(9)(a) ("the argument … shall contain appellant's contentions, *with reference to the specific page numbers of the record* and citations to the authorities on which the appellant relies.") (emphasis added).
[103]    R. 5280 and n. 27, *supra*.
[104]    *Guillot v. LECC-Baton Rouge Inc.*, 2005-2537, p. 5 (La. App. 1st Cir. 12/28/06), 952 So.2d 42, 44.

trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review.[105]   Here, it was evident from the face of the Plaintiffs' Third Amended Petition that a number of their claims had prescribed.   Moreover, the District Court's factual findings about the 1993, 2001, and 2011-12 projects were not manifestly erroneous or clearly wrong.

The Louisiana Constitution states "[p]roperty shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation."[106]   The term "public purposes" includes "drainage."[107]   However, Louisiana law also provides that "[w]hen private property is damaged for public purposes, any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works."[108]

According to the Louisiana Supreme Court, "[t]he purpose of La. R.S. 9:5624 is to limit the exposure of the State and its political subdivisions to liability in connection with a public work to a reasonable period of time."[109]   In furtherance of this purpose, Louisiana courts have held that the continuing tort doctrine "is not available when claims are governed by the two-year prescriptive period of La. R.S. 9:5624 for actions arising from damage to private property for public purposes."[110]   Finally, in determining whether the two-year prescriptive period found in La. R.S. 9:5624 applies to a particular case, the Louisiana Supreme Court provides the following guidance:

---

[105]   *Pizzolato v. Grier*, 2018-0912, p. 5 (La. App. 1st Cir. 3/14/19), 275 So.3d 273, 276, *reh'g denied* (4/10/19), *writ denied*, 2019-00698 (La. 9/24/19), 279 So.3d 932 (citing *Southern Ins. Co. v. Metal Depot*, 2010-1899 (La. App. 1st Cir. 6/10/11), 70 So.3d 922, 925, *writ denied*, 2011-1763 (La. 10/14/11), 74 So.3d 215).
[106]   LA. CONST. ART. I, §4(B)(2)(b)(iii).
[107]   *Id.*
[108]   La. R.S. 9:5624.
[109]   *Avenal v. State*, 2003-3521, p. 33 (La. 10/19/04), 886 So.2d 1085, 1108, *cert. denied*, 544 U.S. 1049 (2005).
[110]   *Estate of Patout v. City of New Iberia*, 98-0961, p. 7 n. 5 (La. 7/7/99), 738 So.2d 544, 549 n. 5.

> In order to fall under the statute [La. R.S. 9:5624], damage must be incurred "for public purposes."  Damage is incurred "for public purposes" when the damaging is intentional or occurs as a necessary consequence of the public undertaking.  Even unintentional damage can be inflicted "for public purposes" if it is a "necessary consequence" of the public project.[111]

The District Court specifically found that La. R.S. 9:5624 applies to the Plaintiffs' claims, stating that "the plaintiffs' claims for damages arise out of and are in connection with public works [St. Tammany] completed beyond the two-year prescriptive period that started from the date the public works were completed and accepted."[112]  Moreover, the District Court specifically found "that Plaintiffs' claims for damages arise out of and in connection with public works of the Parish completed beyond the two year prescriptive period that commenced from the date the public works were completed and accepted … [and] that the alleged harm is 'for a public purpose.'"[113]  As a result, the District Court dismissed as prescribed the Plaintiffs' claims arising from the 1993, 2001, and 2011-12 public works projects.[114]

### 1. The Evidence Adduced During the Trial on St. Tammany's Exception of Prescription Supports the District Court's Ruling.

At the trial of the Exception of Prescription, St. Tammany introduced uncontested evidence from David Zechenelly,[115] Jean Thibodeaux,[116] and Michael Noto[117] about the 1993, 2001, and 2011-12 public works projects, respectively.  For example, Mr. Noto testified the 2011-12 District 5 Capital Improvement Project's scope was to mill and overlay five public roads in District 5 (where Plaintiffs' properties are located), as well as to repair and replace any culverts or side drains.[118]

---

[111]    *Avenal*, 2003-3521 at p. 34, 886 So.2d at 1108-09 (some quotation marks and citations omitted).
[112]    R. 7195-96.
[113]    R. 5282 (citing to *Avenal*, 2003-3521 at p. 34, 886 So.2d at 1108-09).
[114]    R. 5291-92.
[115]    R. 7047-71
[116]    R. 7071-96.
[117]    R. 6991-7000.
[118]    R. 6993.

Mr. Noto identified the public contract and notice of acceptance filed by St. Tammany, and both were introduced into evidence.[119]

Similarly, Mr. Thibodeaux testified about the scope of the 2001 District 5 Capital Improvement Project, for which he was the Parish Engineer and Director of Engineering.[120]  The primary purpose of this project was the overlay and paving of street, along with some ditch maintenance consisting of cleaning and shaping of ditches.[121]  Mr. Thibodeaux identified the public contract and notice of acceptance, both of which were introduced into evidence.[122]  Importantly, Mr. Thibodeaux unequivocally testified that the 2001 project did not change the overall drainage pattern for Dove Park Subdivision.[123]

Finally, Mr. Zechenelly testified about work St. Tammany performed on 725 Dove Park Road in 1993.[124]  According to Mr. Zechenelly, heavy vegetation and sediment was inhibiting surface water flow through the drainage feature on what is now Plaintiff Stevens' property.[125]  After surveying the property and developing a plan to open the restricted drainage path, St. Tammany drainage crews cleaned out the path as planned.[126]  St. Tammany performed the work with the permission of the then-property owner, Robert Hughes.[127]  St. Tammany completed the work by 30 May 1993.[128]

The Plaintiffs did not offer any evidence suggesting these projects were anything other than public works, nor did they offer any evidence that St. Tammany did not complete and accept the projects.  To the extent any of these projects

---

[119]   R. 6994-96.
[120]   R. 7072.
[121]   R. 7073.
[122]   R. 7074-76.
[123]   R. 7083.
[124]   This project differed from the 2001 and 2011-12 projects because St. Tammany performed the work, rather than a private company operating under a public contract.  *See* R. 7059-60.
[125]   R. 7053-54 (heavy vegetation impeding flow); R. 7061-63 (sediment deposits in channel).
[126]   R. 7066-67.
[127]   R. 7059.
[128]   R. 7059-60.

damaged the Plaintiffs' properties (which is denied), the District Court properly ruled the Plaintiffs' claims had prescribed and that the doctrine of *contra non valentem* was not applicable to this case.  The Plaintiffs have not cited to any record evidence or authority indicating the District Court's decision was incorrect.

### 2.     The 1993 Drainage Work Was Completed and Accepted as Required by La. R.S. 9:5624.

The Plaintiffs claim in their original brief that the 1993 drainage work performed by St. Tammany at 725 Dove Park Road was "secret and unauthorized,"[129] and was somehow not a "public work" because there is no recorded contract or acceptance.[130]  The Plaintiffs' contention is not supported by any evidence or authority and is thoroughly contradicted by the record evidence.

Mr. Zechenelly testified that in his role as a survey crew chief and engineering field crew supervisor for St. Tammany in 1990, he took a drainage profile on 725 Dove Park Road.[131]  He observed an existing ditch on the property that he believes was at least 10 years old.[132]  St. Tammany used the information gathered for the drainage profile to draft a proposed maintenance right of way along the ditch line.[133]  Eventually, St. Tammany received permission to perform ditch maintenance, although the property owner declined to grant a permanent right of way.[134]  Mr. Zechenelly was present when St. Tammany performed and completed the ditch maintenance work before 30 May 1993.[135]  The stated purpose of the drainage project was to improve drainage and solve water retention issues on 725 Dove Park Road, as well as neighboring property.[136]

---

[129]    Plaintiffs' Brief, p. 18.
[130]    *Id.* at pp. 20-21.
[131]    R. 7048-49.
[132]    R. 7057.
[133]    R. 7058.
[134]    R. 7059, 588-89 (Exhibit 7 to Exception trial), and 590 (Exhibit 9 to Exception trial).
[135]    R. 7059-60.
[136]    R. 589 (Exhibit 7 to Exception trial).

There is no requirement in La. R.S. 9:5624 that a public works project have a recorded contract or acceptance, as argued by the Plaintiffs.[137]   However, St. Tammany was always going to perform the 1993 drainage work itself – which means there is no contract to record.[138]   Although Plaintiffs argue "[n]o documentation or any record exists of work actually having been done,"[139] St. Tammany performed the ditch maintenance pursuant to a temporary construction servitude granted by the landowner[140] and Mr. Zechenelly testified he personally saw the work done and the project completed.[141]

Mr. Zechenelly's testimony, combined with the Plaintiffs' claims that St. Tammany had never performed any other work on their properties, was more than sufficient for the District Court to conclude St. Tammany had "accepted" the 1993 ditch maintenance well more than 2 years prior to the filing of this lawsuit as envisioned by La. R.S. 9:5624.   This is precisely why the District Court, when addressing the 1993, 2001, and 2011-12 projects, found "that Plaintiffs' claims for damages arise out of and in connection with public works of the Parish completed beyond the two year prescriptive period that commenced from the date the public works were completed and accepted."[142]

The District Court's factual finding about the 1993 ditch maintenance project was not manifestly erroneous or clearly wrong – as shown by the testimony and evidence in the record.

---

[137]    Plaintiffs' Brief, pp. 20-21.
[138]    R. 589 ("In order for Parish forces to begin work ….").
[139]    Plaintiffs' Brief, p. 19.  Of course, this begs the question of how St. Tammany could be liable for damages resulting from work never actually performed.
[140]    R. 7068.
[141]    The Plaintiffs' argument in this respect is confusing because their claim since the beginning of this litigation is that this 1993 project damaged their properties.
[142]    R. 5282.

**B.** **The District Court Correctly Entered a Summary Judgment in Favor of St. Tammany for Claims Relating to the Widening Project.**

The Plaintiffs challenge the District Court's entry of a summary judgment on primarily two (2) fronts. First, the Plaintiffs claim the District Court abused its discretion in excluding some of the Plaintiffs' summary judgment evidence that, had it been considered, would have defeated St. Tammany's motion.[143] Second, the Plaintiffs argue the District Court improperly made factual determinations in granting the summary judgment.[144] For the reasons more fully set forth below, the Plaintiffs' arguments should be rejected and the summary judgment entered by the District Court affirmed.

**1.** **The District Court Correctly Refused to Consider Some Documents Offered by the Plaintiffs in Opposition to St. Tammany's Summary Judgment Motion.**

In a summary judgment proceeding, a court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any document to which no objection is made.[145] The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions.[146] Objections to a document must be raised in a timely filed opposition or reply memorandum and the court shall consider all objections prior to rendering judgment.[147] The court shall specifically state on the record or in writing which documents, if any, it has held to be inadmissible or declined to consider.[148] An appellate court reviews a trial court's ruling on objections to documents filed in support of or in opposition to a motion for

---

[143]   *Id.* at 41.
[144]   Plaintiffs' Brief, pp. 36-38.
[145]   La. Code Civ. Proc. art. 966(D)(2).
[146]   La. Code Civ. Proc. art. 966(A)(4).
[147]   La. Code Civ. Proc. art. 966(D)(2).
[148]   *Id.*

summary judgment raised in a timely filed opposition or reply memorandum for abuse of discretion.[149]

St. Tammany timely filed its reply memorandum in support of its Motion for Summary Judgment on 11 June 2018.[150]  This reply memorandum included objections to a large number of documents attached by the Plaintiffs to their opposition memorandum.[151]  More particularly, St. Tammany objected to affidavits from experts who failed to prepare written reports as required by the District Court, affidavits from experts that far exceeded the scope of their written report, affidavits offering expert testimony from witnesses not disclosed as experts, affidavits not made on personal knowledge as required by La. Code Civ. Proc. art. 967(A), and affidavits by experts employing flawed methodologies.[152]  In addition, St. Tammany objected to a number of other documents attached to the Plaintiffs' opposition.[153]

Complying with the mandate of Article 966(D)(2), the District Court specifically stated in writing those documents it held inadmissible and declined to consider.[154]  The District Court orally provided additional reasons as to why it excluded these documents from consideration, as well as why it overruled St. Tammany's objections to other documents.[155]

The District Court refused to consider affidavits from Peter Lee, Steve Burnham, and Plaintiff Stevens for violating its Article 1425(B) Order requiring experts to prepare written reports containing a complete statement of all opinions to be expressed and the basis and reasons therefore.[156]  Affidavits of expert witnesses "may set forth such experts' opinions on the facts as would be admissible in evidence

---

[149]    *Pottinger v. Price*, 2019-0183, p. 3 (La. App. 1st Cir. 10/23/19) --- So.3d ---.
[150]    R. 4783-4823.
[151]    *See* R. 4783-4806 (St. Tammany's objections to Plaintiffs' summary judgment evidence).
[152]    R. 4786-4800.
[153]    R. 4801-05 (chart detailing objections to various documents).
[154]    *See* R. 5285-86.
[155]    *See* R. 6950-52.
[156]    R. 5285.

under [La. Code Evid. art. 702], and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[157]   Mr. Burnham had prepared a written report, so his affidavit testimony was correctly limited to the contents of that report.[158]  The District Court properly excluded the affidavits of Mr. Lee and Plaintiff Stevens because they did not prepare written expert reports and were not able to offer expert testimony at trial.[159]  The District Court also identified 12 documents it declined to consider because of St. Tammany's objections.[160]  These documents are not among those listed as proper summary judgment evidence in La. Code Civ. Proc. art. 966(A)(4) or are not authenticated by an affidavit.[161]

The Plaintiffs do not explain how or why the District Court's rulings on summary judgment evidence was an abuse of discretion.  When considering the affidavits offered by the Plaintiffs, the District Court must consider whether the affidavit testimony would meet the evidentiary requirements applicable if the affiant was present in court and testifying live.[162]  The District Court did not abuse its discretion in excluding affidavit testimony from Peter Lee, Steve Burnham, and Plaintiff Stevens that would have been excluded at trial.  Similarly, the District Court

---

[157]     La. Code Civ. Proc. art. 967(A).

[158]     R. 5285-86.  *See* La. Code Civ. Proc. art. 967(A) (Documents referred to in affidavits shall be attached to and served with the affidavit).

[159]     *See, e.g., Williams v. Marinemax of Cent. Florida,* 773 F.Supp.2d 1265, 1266-67 (N.D. Fla. 2011) (excluding the affidavit of expert witness on summary judgment who failed to publish a timely written expert report); *see also LaShip, LLC v. Hayward Baker, Inc.,* 296 F.R.D. 475, 495 (E.D. La. 2013) (excluding testimony of expert witness at trial because of failure to file written report); *First United Fin. Corp. v. U.S. Fid. & Guar. Co,* 96 F.3d 135, 136-37 (5th Cir. 1996) ("The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment.").

[160]     R. 5285.

[161]     *See Raborn v. Albea,* 2016-1468, p. 10 (La. App. 1st Cir. 5/11/17), 221 So.3d 104, 111 (citing La. Code Civ. Proc. art. 966, cmt. (c) (2015)) (Article 966 does not allow the filing of documents that are not included in the exclusive list, such as photographs, pictures, video images, or contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached); *see also Ross v. Oceans Behavioral Hosp. of Greater New Orleans,* 14-368, p. 7 (La. App. 5th Cir. 11/25/14), 165 So.3d 176, 181, *writ not considered sub nom. Ross v. Oceans Behavioral Hosp. of Greater New Orleans,* 2015-0005 (La. 3/27/15), 161 So.3d 648 (court properly excluded exhibits that contained inadmissible hearsay because they were not sufficient to sustain the plaintiff's burden of proof at trial).

[162]     1 LA. CIV. L. TREATISE, CIVIL PROCEDURE § 6:8 (2d ed.) ("Because the affidavit is a substitute for the affiant's testimony at trial, it must meet the evidentiary requirements that would be applicable if the affiant were present in court and testifying.").

excluded certain documents because they were not admissible under the strict standards of La. Code Civ. Proc. arts. 966-67. The District Court's decision to exclude these affidavits was not an abuse of discretion and should be affirmed.

>    **2.    The District Court Entered a Summary Judgment Because the Plaintiffs Could Not Meet Their Burden of Proof Based on the Summary Judgment Evidence.**

The Plaintiffs next complain that the District Court's entry of a summary judgment was incorrect because it made erroneous factual findings.[163] However, in support of this argument, the Plaintiffs cite to evidence that was not part of the summary judgment record or was specifically excluded by the District Court. Obviously, just as the District Court was limited to considering evidence properly submitted into the summary judgment record,[164] this Court's *de novo* review is limited to the summary judgment record considered by the District Court.[165] As shown below, the summary judgment evidence overwhelming proves the Plaintiffs cannot prove the essential elements of their claims and the entry of a summary judgment was correct.

>    **a.    The Summary Judgment Evidence Submitted by St. Tammany and the Plaintiffs.**

In support of its Motion for Summary Judgment, St. Tammany submitted numerous affidavits authenticating voluminous documents.[166] The expert affidavit from Jean Thibodeaux, P.E. (with supporting maps and documents) explained the topography of the area surrounding the Plaintiffs' properties, the existing and historical drainage patterns, the scope of various public works projects, and how the

---

[163]    Plaintiffs' Brief, pp. 36-38.
[164]    La. Code Civ. Proc. art. 966(D)(2).
[165]    *See Higgins v. Williams Energy Partner, L.P.*, 2017-1662, p. 13 (La. App. 1st Cir. 4/10/19), 280 So.3d 195, 203, *reh'g denied* (6/10/19), *writ denied*, 2019-00722 (La. 9/6/19), 278 So.3d 371 ("In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate.") (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 750).
[166]    *See, e.g.*, R. 472-1314, 3088-4112 (exhibits supporting St. Tammany's Motion for Summary Judgment).

23

Widening Project is drainage neutral.[167]  Affidavits from surveying experts Francis

Fortier[168] and John Brandon McCain[169] explained their topographic survey of the

Plaintiffs' properties and cross-sections of the drainage feature on 725 Dove Park

Road.   Carnie Block, the original owner of 725 Dove Park, offered affidavit

testimony about the direction water flowed across the property some 20 years before

Plaintiff Stevens even purchased the property at issue.[170]

Mr. Zechenelly's affidavit testimony explained his 1990 field survey of an

existing drainage feature on 725 Dove Park Road.[171]  Expert witness Holly Thomas,

P.E., provided affidavit testimony about a 2018 drainage study of Dove Park

Subdivision explaining the current drainage patterns in the neighborhood (and

confirming Mr. Thibodeaux's conclusions in his drainage study).[172] Sabrina Schenk,

St. Tammany's Watershed Coordinator, offered expert affidavit testimony about her

interactions with the Plaintiffs, their complaints to the Louisiana Department of

Environmental Quality, the permitting process for residential sewage treatment

systems, and her critiques of water sample testing results commissioned by the

Plaintiffs.[173]  St. Tammany also submitted deposition testimony from the Plaintiffs'

expert witnesses and Plaintiff Stevens, as well as other documents properly

authenticated by affidavit.

In response to the voluminous evidence submitted by St. Tammany, the

Plaintiffs submitted … not much at all.  Most of the Plaintiffs' "evidence" was

nothing more than conclusory statements unsupported by any empirical evidence or

data, which is insufficient to defeat summary judgment.[174]  The Plaintiffs' surveyor

---

[167]    R. 472-513.
[168]    R. 570-72.
[169]    R. 573-77.
[170]    R. 578-79.
[171]    R. 693-700.
[172]    R. 3088-93.
[173]    R. 3094-3182.
[174]    *See Ritchey v. State Farm Mut. Automotive Ins. Co.,* 2017-2033, p. 11  (La. App. 1st Cir. 9/15/17) 228 So.3d 272, 279 ("When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by

expert, Anthony Cavell, provided affidavit testimony to support the Plaintiffs' primary claim that St. Tammany was violating the Plaintiffs' natural drainage servitude, but his testimony merely disputes the sufficiency of data used by St. Tammany's experts and never actually comments on the claimed natural servitude.[175]   Nor did Mr. Cavell opine about the effects of the Widening Project on the Plaintiffs' properties.[176]   Indeed, for every claim asserted in the Third Amended Petition, the Plaintiffs failed to produce any evidence creating an issue of fact.[177]

When St. Tammany produced substantial evidence showing the Plaintiffs did not have any factual support for the elements of their claims, the Plaintiffs had the burden of producing "factual support sufficient to establish the existence of a genuine issue of material fact or that [St. Tammany] is not entitled to a judgment as a matter of law."[178]   As the District Court held, the Plaintiffs did not meet their burden and correctly entered a summary judgment.[179]

> **b.**   **The Summary Judgment Record Required Dismissal of the Plaintiffs' Third Amended Petition Because They Could Not Prove the Essential Elements of Their Claims.**

The District Court used the evidence submitted by St. Tammany in support of its summary judgment motion only to address the Plaintiffs' claims arising from the Widening Project because claims arising from the other identified projects were dismissed by exception of prescription.[180]   The District Court carefully and thoroughly detailed the evidence submitted in support of or opposition to each claim asserted in the Third Amended Petition.  For each claim, the District Court detailed

---

affidavits or as otherwise provided in La. C.C.P. art. 967 must set forth specific facts showing that there is a genuine issue for trial.  La. C.C.P. art. 967(B).  Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact.").

[175]   R. 5286.
[176]   R. 5286-87.
[177]   *See, generally*, R. 5286-90.
[178]   La. Code Civ. Proc. Art. 966(D)(1); *Robles v. ExxonMobil,* 02-0854, p. 4 (La. App. 1st Cir. 3/28/03), 844 So.2d 339, 341.
[179]   R. 5291-93.
[180]   R. 5283.

how the Plaintiffs failed to create an issue of fact and why summary judgment was appropriate.

For example, in Count 1 the Plaintiffs allege St. Tammany is violating their natural drainage servitude.  St. Tammany submitted affidavits from prior owners, hard data in for the form of USGS maps, and competent expert affidavit testimony establishing the natural drainage servitude flows south to north.[181]  The Plaintiffs produced no competent summary judgment evidence to support their contention the natural drainage servitude flowed the opposite direction.[182]  In fact, the District Court noted the Plaintiffs' efforts to create a fact issue fell "woefully short."[183]

With respect to Count 2 – the Plaintiffs' inverse condemnation and Constitutional claims – the Plaintiffs produced no evidence supporting their claim that the Widening Project was increasing the volume of storm water traversing their properties.[184]   St. Tammany, however, submitted Mr. Thibodeaux's affidavit testimony that the Widening Project was drainage neutral and did not increase the burden on the Plaintiffs' properties.[185]  Thus, the District Court held, the Plaintiffs cannot prove any taking occurred because of the Widening Project.

This complete dearth of evidence is the same reason the District Court granted summary judgment on the Plaintiffs' due process and equal protection claims.  There is no competent summary judgment evidence the Widening Project increased the drainage burden on the Plaintiffs' properties, requiring dismissal of the Plaintiffs' due process claims.[186]  The Plaintiffs did not offer any evidence that St. Tammany treated them differently from other "similarly situated" persons, entitling St. Tammany to a summary judgment on their equal protection claims.[187]  The failure

---

[181]   R. 5286.
[182]   *Id.*
[183]   R. 7199.
[184]   R. 5286-87.
[185]   *Id.*
[186]   R. 5287-88.
[187]   R. 5288.

of these constitutional claims also required dismissal of Plaintiffs' 42 U.S.C. §1983 claim.[188]

Not only did the Plaintiffs fail to offer any evidence supporting Count 3's allegation that St. Tammany's actions intentionally damaged them, they wholly failed to produce any evidence of their damage, whatsoever.[189]  In contrast, St. Tammany submitted uncontested evidence that it does not operate a sewer treatment plant in this area, is not discharging anything in this area, and does not license, permit, or install residential sewage treatment systems.[190]  Once again, because the Plaintiffs failed to provide proof of the essential elements of their claim, entering a summary judgment was appropriate.

Finally, for the possessory action asserted as Count 4, the Plaintiffs failed to produce any competent evidence of a disturbance arising out of the Widening Project.[191]  To the contrary, St. Tammany's evidence established the Widening Project did nothing to alter the existing drainage patterns for this area but rather, maintained the *status quo* of existing drainage.[192]

The District Court's written reasons for judgment (which mirror his oral ruling) evidence its extensive review and analysis of the summary judgment evidence.  This Court's *de novo* review of the same summary judgment record will confirm what the District Court found:  the Plaintiffs fell woefully short of establishing a genuine issue of material fact for any of the claims asserted in the Third Amended Petition.  The only option available to the District Court was entry of a summary judgment.  There is nothing in either the summary judgment record or

---

[188]   R. 5288-89.  *See also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.); *Daniels v. Williams*, 474 U.S. 327, 330 (1986) (In any given § 1983 action, the plaintiff must still prove a violation of the underlying constitutional right.).
[189]   R. 5289.
[190]   *Id.*
[191]   R. 5289.
[192]   R. 5290.

the Plaintiffs' original brief that suggests the District Court's ruling was incorrect. This Court should affirm the summary judgment.

### C. The District Court Correctly Granted St. Tammany's Exception of No Cause Of Action on Plaintiffs' Unfair Trade Practices Act Claim.

On 27 July 2017, St. Tammany filed its Peremptory Exception of No Cause of Action in response to the Plaintiffs' Third Amended Petition.[193] This Exception challenged the Plaintiffs' claims alleging violations of the Louisiana Unfair Trade Practices Act ("LUTPA").[194] Through this Exception, St. Tammany noted the Third Amended Petition failed to allege that St. Tammany was engaged in trade or commerce as defined in LUTPA.[195] St. Tammany also noted the Plaintiffs were not consumers, as defined by the statute.[196] Therefore, the Plaintiffs did not state a cause of action under LUTPA and the District Court properly granted the Exception.

In Louisiana, a peremptory exception of no cause of action tests the legal sufficiency of the petition and is triable on the face of the papers.[197] "A cause of action, when used in the context of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant."[198] When considering an exception of no cause of action, the trial court determines whether the law affords any relief to the claimant if the factual allegations in the petition, as well as annexed documents, are proven at trial.[199] Importantly, "mere conclusions of the plaintiff unsupported by facts does not set

---

[193]   R. 2068-82.

[194]   R. 2069, 2078-79.  The exception also sought dismissal of Counts 2 (inverse condemnation and constitutional claims), 4 (possessory action), and 5 (LUTPA) for the individual St. Tammany Employee Defendants.

[195]   *See* La. R.S. 51:1402(10) (trade or commerce defined as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable and movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state.").

[196]   La. R.S. 51:1402(1) (consumer is defined as "any person who uses, purchases, or leases goods and services.").

[197]   *Pellegrin v. City of Thibodeaux*, 2001-2750, p. 4 (La. App. 1st Cir. 12/31/2002), 837 So.2d 139, 141.

[198]   *Ramey v. DeClaire*, 2003-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118.

[199]   *Cardinale v. Stanga*, 2001-1443, p. 3 (La. App. 1st Cir. 9/27/02), 835 So.2d 576, 578.

forth a cause of action."[200]  This Court reviews peremptory exceptions of no cause

of action *de novo* because they present legal questions.[201]

After considering the briefing submitted by the parties and argument of

counsel, the District Court found that "the plaintiffs' allegations do not state a cause

of action under the Act.  None of the alleged actions of the Parish … constitute trade

or commerce as those terms of statutorily defined in the Act."[202]  The District Court

then granted the exception, dismissing Count 5 in its entirety.

The District Court later provided additional written reasons for its ruling

wherein it noted, "the Supreme Court has also been clear that in order to be

actionable under LUTPA, the unfair or deceptive acts or practices alleged must occur

in the conduct of trade or commerce."[203]  The District Court further noted, "unfair

or deceptive acts or practices are unlawful under Section 1405 only if they occur 'in

the conduct of any trade or commerce.'"[204]  Applying these standards, the District

Court found that the losses claimed by the Plaintiffs are "striking for their lack of

relation to trade or commerce" and "it is not LUTPA that provides Plaintiffs'

remedy."[205]

The Plaintiffs argue on appeal that the District Court erred in dismissing their

LUTPA claim.   More specifically, the Plaintiffs claim that St. Tammany's

participation in permitting programs with other governmental entities somehow

constitutes "trade and commerce" under LUTPA.[206]  The Plaintiffs provide no

---

[200]   *Ramey*, 2003-1299 at p. 7, 869 So.2d at 118; *see also* Official Revision Comment (a) to La. Code Civ. Proc. art. 854 ("This article preserves the Louisiana system of pleading facts as being preferable to the notice pleading of the Federal Rules of Civil Procedure, or to any other modified system of notice pleading.").
[201]   *Reyer v. Milton Homes, LLC*, 2018-0580, p. 4 (La. App. 1st Cir. 2/25/19), 272 So.3d 604, 607.
[202]   R. 6726-27.
[203]   R. 2537 (citing *Cheramie Servs. Inc. v. Shell Deepwater Prod, Inc.*, 2009-1633 (La. 4/23/10); 35 So.3d 1053, 1057 ("LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.")).
[204]   R. 2537 (citing La. R.S. 51:1405).
[205]   R. 2540.
[206]   Plaintiffs' Brief, p. 42.

authority to support this allegation, nor do they explain precisely how these permitting programs fall within the "trade or commerce" definition of La. R.S. 51:1402(10).   The Plaintiffs' already confusing argument then descends into absurdity by asserting that St. Tammany's alleged failure to comply with its permitting obligations (theoretically owed to entities other than the Plaintiffs) is an unfair trade practice.[207]

The Plaintiffs' argument on appeal suffers from the same defects as their allegations in the Third Amended Petition.  Nowhere do the Plaintiffs identify how St. Tammany's actions amount to "trade or commerce" or how they have suffered an "ascertainable loss of money or movable property" because of an "unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405," as required by LUTPA.[208]  The Plaintiffs were required, at a minimum, to plead some basic facts that fall within LUTPA's statutory framework in order to defeat the exception of no cause of action.  The Plaintiffs could not meet this standard in the Third Amended Petition, and they have not done so on appeal.

This Court should affirm District Court's judgment granting St. Tammany's Peremptory Exception of No Cause of Action on Count 5 (LUTPA) to the Plaintiffs' Third Amended Petition.

### D.   The Plaintiffs' Motion to Disqualify St. Tammany's Counsel was Correctly Denied.[209]

The Plaintiffs next argue that the District Court erred in denying their Motion to Disqualify St. Tammany's counsel of record for an alleged violation of Rule 4.2.[210]  The crux of the Plaintiffs' argument is that upon finding a rule violation the District Court was required to impose the only sanction requested by the Plaintiffs –

---

[207]   *Id.* at 42-43.
[208]   *See* La. R.S. 51:1409(A).
[209]   This Court denied the Plaintiffs' request for supervisory writ on the motion to disqualify. *Stevens v. St. Tammany Parish Gov't*, 2017-1012 (La. App. 1st Cir. 8/14/17).
[210]   *See*, *generally*, Plaintiffs' Brief, pp. 38-40.

disqualification.[211] As shown below, the District Court's decision was not manifestly erroneous and should be affirmed.[212]

### 1. The Factual Basis for Plaintiffs' Motion to Disqualify.[213]

The Plaintiffs filed a motion to disqualify St. Tammany's counsel of record on 14 March 2017 because of a conversation between James L. Bradford, III, and Plaintiff Stevens on 6 March 2017 in the offices of Daigle Fisse & Kessenich.[214] Plaintiff Stevens had gone to the offices of Daigle Fisse & Kessenich uninvited, engaged Mr. Bradford in discussion in the office's lobby, and secretly recorded the entire conversation.[215] The Plaintiffs alleged in their Motion that the 6 March 2017 conversation violated Rule of Professional Conduct 4.2(a) and that the *only* remedy was disqualification.[216] The Plaintiffs, after considerable delay, ultimately produced a copy of the recording to St. Tammany, which was made part of the record.[217]

The District Court heard oral argument on the Plaintiffs' motion on 8 June 2017.[218] The District Court heard the argument of counsel, "reviewed all of the parties' briefing, the cited law, and has both listened to the audio recording of the conversation and reviewed the transcript of the conversation."[219] In ruling on the Plaintiffs' motion, the District Court stated,

> In this instance, it is unclear what, if any, actual harm resulted from Mr. Bradford's recorded conversation with [Plaintiff Stevens] that lasted approximately 10 minutes. Given that [Plaintiff Stevens] has cited no Louisiana case wherein an attorney was disqualified for a Rule 4.2(a)

---

[211]    *Id.* at 39 (the District Court's "refusal to provide a remedy after finding Bradford at fault and refusing evidence offered by plaintiff, can be considered to be a denial of justice.").

[212]    *See McCann v. ABC Ins. Co.*, 93-1789, p. 18 (La. App. 4th Cir. 7/14/94), 640 So.2d 865, 874-85 (refusal to disqualify attorney subject to review under manifest error standard); *see also Dhaliwal v. Dhaliwal*, 49,973, p. 14 (La. App. 2nd Cir. 11/25/15), 184 So.3d 773, 782-83, *writ denied*, 2016-0236 (La. 4/4/16), 190 So.3d 1204 (same).

[213]    This Court's record has a more detailed recitation of the facts relevant to this issue. *See Stevens*, 2017-1012 (La. App. 1st Cir. 8/14/17) (denying application for supervisory writ).

[214]    R. 164-79.

[215]    R. 1324-25.

[216]    R. 176-78.

[217]    R. 1324-46 (St. Tammany's Opposition), 1398-1406 (Supplemental Opposition filed after production of the audio recording).

[218]    R. 6561-6600.

[219]    R. 6587.

> violation, the Court concludes that disqualification and monetary sanctions are not warranted.[220]

In addition to denying the Plaintiffs' request for disqualification under Rule 4.2, the District Court held that disqualification was not appropriate under Rule 3.7.[221]

The Plaintiffs applied for supervisory writs with this Court alleging that when the District Court determined a violation of Rule 4.2 occurred it was required to disqualify Mr. Bradford.[222] This Court rejected that argument and denied the request. The Louisiana Supreme Court did not consider the Plaintiffs' application for a supervisory writ because it was untimely.[223]

### 2.   The District Court's Decision Not to Disqualify St. Tammany's Counsel Was Not Manifestly Erroneous or an Abuse of Discretion.

A party seeking to disqualify an attorney has the burden of proving that disqualification is an appropriate remedy in this case.[224] Generally, Rule 4.2 prohibits a lawyer from communicating with a represented person about the subject of the representation without consent or authorization.[225] The dual purposes behind Rule 4.2 are to prevent disclosure of attorney/client communications, and to protect the party from "liability-creating" statements elicited by a skilled opposing attorney.[226] The Plaintiffs' motion focused only on the alleged disclosure of privileged communications. The Plaintiffs, however, never identify with any specificity what privileged information was disclosed or how they have allegedly been prejudiced.

---

[220]   R. 6589-90.
[221]   *Id.* at 6590.
[222]   *See Stevens v. St. Tammany Parish Gov't*, 2017-CW-1012 (La. App. 1st Cir. 8/14/17).
[223]   *See Stevens v. St. Tammany Parish Gov't*, 2017-CC-1558 (La. 11/17/17).
[224]   *See Walker v. State, Dept. of Transp. & Dev.*, 2001-2078, p. 3 (La. 5/14/02), 817 So.2d 57, 60; *State v. Craddock*, 2010-1473, pp. 8-9 (La. App. 1st Cir. 3/25/11), 62 So.3d 791, 797, *writ denied*, 2011-0862 (La. 10/21/11), 73 So.3d 380.
[225]   La. R. Prof. Cond. 4.2(a).
[226]   *Jenkins v. Wal-Mart Stores, Inc.*, 956 F.Supp. 695, 696 (W.D. La. 1997) (citing *Polycast Technology Corp. v. Uniroyal, Inc.* 129 F.R.D. 621, 626 (S.D.N.Y. 1990)).

The Plaintiffs argued to the District Court and to this Court on appeal that disqualification is the only remedy for a Rule 4.2 violation.[227] Although the Plaintiffs baldly claim that disqualification is mandatory for a Rule 4.2 violation,[228] the Rule itself contains no such requirement.  Significantly, the Plaintiffs cite to no Louisiana authority or jurisprudence that supports this conclusory statement.  In this respect, Rule 4.2 differs from some other Rules of Professional Conduct, which do mandate an automatic disqualification.[229]

As one Louisiana court has noted, "there is a paucity of case law involving motions to disqualify counsel" and that "very few Louisiana state court cases [have grappled] with this difficult issue" in any respect.[230]  This "paucity of case law" is especially true in Louisiana courts where Rule 4.2 is the basis for a motion to disqualify, as there is not a single reported decision from a Louisiana state court disqualifying an attorney for a Rule 4.2 violation.

The only jurisprudence found by St. Tammany analyzing a motion to disqualify counsel for an alleged violation of Rule 4.2 of Louisiana's Rules of Professional Conduct was *Burford v. Cargill*,[231] a decision from the United States District Court for the Western District of Louisiana where the trial court refused to disqualify counsel based on the evidence in that case.  The important lesson to be gleaned from what appears to be the only decision from a Louisiana court (albeit a federal district court) analyzing Louisiana's Rule 4.2 is that there *is not* a

---

[227]    Plaintiffs' Brief, pp. 38-40; *see also* R. 164-79, 1407-21; *Stevens*, 2017-1012.
[228]    Writ App., p. 2.
[229]    *See, e.g.*, Rule 1.7 (A "lawyer shall not represent a client if the representation involves a concurrent conflict of interest."); Rule 1.9 ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the former client …."); Rule 1.12 (A "lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral ….").
[230]    *Keith v. Keith*, 48,919, p. 10 (La. App. 2nd Cir. 5/15/14), 140 So.3d 1202, 1209 (addressing motion to disqualify counsel for conflict of interest under Rule 1.9) (citing *Paul v. Judicial Watch, Inc.*, 571 F.Supp.2d 17, 20 (D.D.C. 2008)).
[231]    2009 WL 2381328 (W.D. La. 2009).

presumption that a disclosure of privileged information occurs during the course of

an *ex parte* conversation that allegedly violates Rule 4.2.  Rather, a trial court should

inquire into the specific facts and circumstances of the alleged violation to determine

(1) whether any privileged information was disclosed and (2) whether the

appearance of impropriety would require disqualification.[232]

Because of the audio recording and transcript of the conversation, an

evidentiary hearing into the alleged Rule 4.2 violation was not necessary.  The

District Court "spent a lot of time" reviewing the evidence before ruling that

disqualification was not warranted.[233]   The record on appeal supports both the

District Court's factual findings and decision not to disqualify Mr. Bradford.  For

example, as evidenced by the audio recording and transcripts, nothing disclosed by

Plaintiff Stevens was confidential or privileged.[234]   Moreover, the Plaintiffs never

proved any prejudice resulted from the conversation.[235]  The District Court correctly

concluded the Plaintiffs did not satisfy their burden of proof because they did not

establish the disclosure of any privileged information or actual prejudice.   The

Plaintiffs cannot show these factual findings are manifestly erroneous or clearly

wrong.  Thus, this Court may not set aside the District Court's findings.[236]

The authorities cited by Plaintiff do not support disqualification without a

finding of prejudice or disclosure of privileged information.[237]   The only Louisiana

---

[232]   *Burford*, 2009 WL 2381328 at **15-18.

[233]   R. 6585-89.

[234]   *Compare* R. 1366-84 (Serpas Court Reporting Transcript commissioned by Plaintiffs) to R. 1894-1924 (Amerson-White Court Reporting Transcript commissioned by St. Tammany); *see also* R. 1925-55 (highlighted differences between transcripts)

[235]   R. 6588 ("In this instance, it is unclear what, if any actual hard resulted from Mr. Bradford's recorded conversation with [Plaintiff Stevens] ….").

[236]   *Evans v. Lungrin*, 97-0541, p. 6 (La. 2/6/98), 708 So.2d 731, 735 ("It is well-settled that a court of appeal may not set aside a trial court's … finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'").

[237]   *See Inorganic Coatings, Inc. v. Falberg*, 926 F.Supp. 517, 520-21 (E.D. Penn. 1995) (finding that extensive *ex parte* telephone conversation revealing previously unknown facts relevant to the litigation leading to a revised pleading severely prejudiced the party and required disqualification); *see also Zachair, Ltd. v. Driggs*, 965 F.Supp. 741, 754 (D. Md. 1997), aff'd, 141 F.3d 1162 (4ᵗʰ Cir. 1998) (*ex parte* communication was a blatant disregard of the court's Local Rules and deprived defendants of an opportunity to prevent disclosure of confidential information directly relevant and material to the case); *Camden v. State of Maryland*, 910 F.Supp. 1115, 1124

authority cited by the Plaintiffs in their brief is *In re Frank*,[238] on which they rely in support of their contention that it is not required to prove prejudice in order to disqualify St. Tammany's counsel.[239]   However, the *Frank* decision was a disciplinary proceeding initiated by the federal District Judge for a Rule 4.2 violation – not a motion to disqualify.[240]  Ultimately, the court sanctioned the attorney with a one-year suspension from practicing in the United Stated District Court for the Western District of Louisiana.[241]   Therefore, the *Frank* decision has absolutely no relevance to this case.[242]

The Plaintiffs do state not any fact to support disqualification, nor do they cite any authority requiring disqualification.  The District Court's factual findings about the extent of the conversation was not manifestly erroneous or clearly wrong, and the decision not to disqualify was not an abuse of discretion.  Indeed, this Court has already declined to alter the District Court's decision.[243]   Disqualifying St. Tammany's counsel at this stage serves no purpose other than punishing St. Tammany for its successful defense.[244]  This Court should affirm the District Court's judgment on this issue.

---

(D. Md. 1996) (disqualification appropriate for initiating *ex parte* contact and obtaining disclosure of protected information that prejudiced other party); *Shelton v. Hess*, 599 F. Supp. 905, 911 (S.D. Tex. 1984) (*ex parte* conferences between defendant and plaintiff's counsel unfairly prejudiced defendant); *In re News Am. Pub., Inc.*, 974 S.W.2d 97, 105 (Tex. App. 1998), *subsequent mandamus proceeding sub nom. In re Users Sys. Servs., Inc.*, 22 S.W.3d 331 (Tex. 1999) (disclosure of confidential information to an opposing party requires disqualification); *Weeks v. Indep. Sch. Dist. No. I-89 of Oklahoma Cty., OK., Bd. of Educ.*, 230 F.3d 1201, 1205 (10th Cir. 2000) (*ex parte* communications with present and former supervisory personnel prejudiced defendant).

[238]   06-04 (W.D. La. 4/25/06) 2006 WL 1133871.
[239]   Plaintiffs' Brief, pp. 39-40.
[240]   *Frank*, 2006 WL 1133871 at p. 1.
[241]   *Id.* at p. 3.
[242]   *Frank* is also factually distinguishable because the attorney met with and obtained affidavits from his client's co-defendants in a criminal proceeding where he was aware of the separate legal representation of the co-defendants, but did not seek permission from their counsel in connection with his efforts.  *Frank*, 2006 WL 1133871 at p. 2.  Nothing close to those facts occurred in this case.
[243]   *Stevens*, 2017-CW-1012.
[244]   *See Lavigne v. Allied Shipyard, Inc.*, 2018-0066, p. 11 (La. App. 4th Cir. 1/15/20) --- So.3d --- (Because the matter has already proceeded to trial and verdict has been rendered, disqualifying plaintiff's counsel would serve no other purpose than to punish plaintiff).

### E.    The District Court Properly Denied the Plaintiffs' Meritless Motions for New Trial.

A motion for new trial must be filed within seven days after the clerk mails a notice of judgment.[245]  Granting a new trial is mandatory if the judgment is contrary to the law and evidence or if a party discovers new evidence he could not have obtained before trial with due diligence.[246]  A trial court also has discretion to grant a new trial if there is good grounds therefore.[247]  As shown below, the Plaintiffs failed to satisfy any of the mandatory or discretionary grounds for granting a new trial.  Thus, the District Court did not abuse its discretion by denying the Plaintiffs' motions for new trial.[248]

### 1.    The Plaintiffs' First Motion for New Trial.

The Plaintiffs timely filed their first motion for new trial on 27 August 2018.[249]  The Plaintiffs attached St. Tammany's supplemental discovery responses and supplemental privilege log as the only exhibits to this motion.[250]  The Plaintiffs claimed that "newly discovered evidence" would have resulted in their lawsuit not be dismissed on summary judgment or exception.  Yet, the Plaintiffs did not actually attach any "new evidence" to their motion because the supplemental discovery responses and privilege log were actually served before St. Tammany even filed its summary judgment motion.  Additionally, Plaintiffs did not verify their exhibits by affidavit.[251]  Thus, the motion is facially invalid.

---

[245]    La. Code Civ. Proc. art. 1974

[246]    La. Code Civ. Proc. art. 1972(a)-(b).

[247]    La. Code Civ. Proc. art. 1973.

[248]    *See Campbell v. Tork, Inc.*, 2003-1341, p. 4 (La. 2/20/04), 870 So.2d 968, 971 ("The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion.").

[249]    R. 5294-96.

[250]    R. 5339-71.

[251]    *See* La. Code Civ. Proc. art. 1975 ("When a motion is based on Article 1972(2) and (3), the allegations of fact therein *shall be verified by the affidavit of the applicant*.") (emphasis added); *see also Bergeron v. Illinois Cent. Gulf R. Co.*, 402 So.2d 184, 186 (La. App. 1st Cir. 1981), *writ denied sub nom. Bergeron v. Illinois Cent. Gulf R.R. Co.*, 404 So.2d 1260 (La. 1981) ("On a motion for new trial based on newly discovered evidence, an affidavit verifying the allegations must be filed.").

The Plaintiffs also claim in their motion that the Final Judgment was contrary to the law and evidence – apparently because the District Court did not continue the summary judgment hearing and declined to consider untimely evidence and argument filed just four days before the hearing.   Yet, the Plaintiffs never sought a continuance of the summary judgment hearing as allowed by La. Code Civ. Proc. art. 967(C).[252]  Moreover, evidence and argument filed (or attempted to be filed) just four days before the summary judgment hearing were correctly excluded.[253]   St. Tammany opposed the motion for new trial noting the Plaintiffs did not actually submit any new evidence discovered since the summary judgment hearing which would require a new trial, the Final Judgment was not contrary to law and evidence, and the Plaintiffs never requested a continuance of the summary judgment hearing.[254]

In its oral ruling, the District Court found the Plaintiffs never sought a continuance of the summary judgment hearing or an extension of deadlines in the scheduling order, the 700+ pages submitted (late) in support of the motion for new trial had been in the Plaintiffs' possession for months or years before the hearing, and the Plaintiffs' complaints about the unfairness of the timing of the summary judgment proceedings was unfounded.[255]   The District Court held the Final Judgment is not contrary to the law and evidence, the Plaintiffs failed to prove the "newly discovered evidence" was not discoverable through the exercise of due diligence, and the Plaintiffs showed no good grounds for exerting the District

---

[252]   *See* La. Code Civ. Proc. art. 967(C) ("If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may … order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.").

[253]   *Ramus v. KCJS Trucking, LLC*, 2019-0039, p. 6 (La. App. 1st Cir. 9/27/19), 287 So.3d 728, 734 ("The time limitations established by [La. Code Civ. Proc. art. 966(B)] for the filing and serving of evidence in opposition to a motion for summary judgment are mandatory; evidence not timely filed can be ruled inadmissible and properly excluded by the trial court.") (citing *Raborn*, 16-1468, 221 So.3d at 112).

[254]   R. 6308-15.

[255]   R. 7268-69.

Court's discretion to grant a new trial.[256]  Based on these factual findings and legal reasons, the District Court denied the Plaintiffs' motion for new trial.

### 2.     The Plaintiffs' Untimely Second Motion for New Trial.

The Plaintiffs filed their second motion for new trial on 28 September 2018, well after the deadline for seeking a new trial, disguised as a motion to supplement the original motion for new trial.[257]  The Plaintiffs attached to this untimely motion a 9-page expert affidavit from Plaintiff Stevens supporting over 700 pages of documents and an index of 34 referenced exhibits.[258]  The Plaintiffs then sought to supplement further this untimely motion on 8 October 2018 by seeking to submit an expert affidavit from Steve Burnham offering opinion testimony already excluded by the District Court.[259]  In response, St. Tammany filed a separate motion to strike the untimely motion because it is not a "supplement" to the original motion but, rather, an entirely new motion filed long after the deadline and opposed the request to file Mr. Burnham's affidavit.[260]

The decision as to whether to allow the filing of an amending and supplemental pleading is within the sound discretion of the trial court and will not be disturbed except where an abuse of discretion has occurred, indicating a possibility of resulting injustice.[261]  Exercising this considerable discretion, the District Court denied the Plaintiffs' request to supplement their original motion for new trial because it found "no legal authority for any such motion in either the Louisiana Code of Civil Procedure or Westlaw."[262]  In addition, the District Court

---

[256]   R. 7270-71.
[257]   R. 5409-58.
[258]   R. 5459-6212.
[259]   R. 6236-38 (Motion for Leave to File Burnham Affidavit), 6239-6307 (proposed affidavit). Mr. Burnham's proposed affidavit was virtually identical to his previously stricken affidavit offered in opposition to the summary judgment motion.
[260]   R. 6337-56.
[261]   *See Northshore Ins. Agency, Inc. v. Farris*, 634 So.2d 867, 871 (La. App. 1st Cir. 1993) (denying request to file amending and supplemental motion for new trial was not an abuse of discretion).
[262]   R. 7257.

found that "the title of the pleading does not accurately reflect either its content [or] its intent.  It is fundamentally different from the plaintiffs' timely-filed Motion for New Trial.  It seeks to introduce by attachment newly-minted affidavits from purported experts not referenced in its original Motion for New Trial."[263]

The Plaintiffs do not cite to any fact or authority suggesting the District Court ruled incorrectly.  Indeed, the jurisprudence uniformly concludes the strict time deadlines in La. Code Civ. Proc. art. 1974 cannot be extended by the trial court.[264] This is true for motions filed by litigants, as well as motions by the court.[265]  It is undisputed the Plaintiffs' request to supplement was filed long after the deadline imposed by Article 1974 and the "supplement" contained arguments and evidence not included in the Plaintiffs' timely-filed motion for new trial.  The District Court did not abuse its discretion by denying the Plaintiffs' untimely motion.

### F. This Court Should Not Consider on Appeal Claims the Plaintiffs' Waived below by Failing to Prosecute.

The Uniform Rules of Louisiana Courts of Appeal states the "Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise."[266]  The Courts of Appeal generally apply this principle to prohibit raising new issues on appeal.[267]  Well-settled jurisprudence of the

---

[263]    R. 7258.

[264]    *See Albitar v. Albitar*, 16-167, pp. 7-8 (La. App. 5th Cir. 6/30/16), 197 So.3d 332, 340 (trial court's order granting a party an appeal delay in excess of that set by the controlling statute is ineffectual); *see also Shorts v. Gambino*, 570 So.2d 209, 211 (La. App. 5th Cir. 1990) (the trial judge has no authority to extend the statutory delay for application of a new trial); *Baldo v. Thibodeaux*, 295 So.2d 866, 867 (La. App. 4th Cir. 1974) (trial court is powerless to extend or enlarge the delay within which to apply for a new trial).

[265]    See *Safeco Ins. Co. of Am. v. Chrysler Corp.*, 2001-1641, p. 39 (La. App. 3rd Cir. 7/31/02), 834 So.2d 1026, 1050 ("While the trial court may, on its own motion, grant a new trial on any or all issues under La. Code Civ. P. art. 1971, it must do so under the seven day time restraints imposed under La. Code Civ. P. art. 1974.")

[266]    Uniform Rules – Courts of Appeal 1-3.

[267]    *See Johnson v. Montoya*, 2013-1951, p. 6 (La. App. 1st Cir. 5/2/14), 145 So.3d 418, 422 (appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal); *see also Hoover v. Hoover*, 2010-1245, p. 7 (La. App. 1st Cir. 3/17/11), 62 So.3d 765, 770 (well-settled jurisprudence establishes that as a

Louisiana Supreme Court "establishes that as a general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed."[268]

In their Memorandum Supporting Filing the Third Amended Petition, the Plaintiffs claim they are asserting a claim under the Clean Water Act, 33 U.S.C. § 1251 *et seq.*[269]  The crux of the Plaintiffs' attempted Clean Water Act claim is that St. Tammany is allegedly discharging polluted water across their properties and into the navigable waters of the United States.[270]  The Plaintiffs, however, only reference St. Tammany's storm water permit once in their recitation of facts[271] and only advance a claim relating to that permit in the context of their unfair trade practices act claim.[272]  Louisiana law requires that the Plaintiffs "assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation."[273]  Thus, if Plaintiffs failed to assert any causes of action against St. Tammany or failed to prosecute any claims actually asserted, those claims are waived.[274]

In their Brief, now for the first time, the Plaintiffs attempt to argue and prosecute their claim that St. Tammany is violating permits issued by the Louisiana

---

general matter, appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the trial court has not addressed).

[268]  *Council of City of New Orleans v. Washington*, 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856 (citations omitted).

[269]  R. 1352 at ¶ 9 (Plaintiffs are "plead[ing] for the first time in the third amended petition [that] the storm water, sewage and debris, by being sent to the plaintiffs' properties, enters into the navigable waters of the United States, violates the Clean Water Act, constitutes commerce, and violates the STPG's NPDES [LPDES] permit.").

[270]  *See, e.g.*, R. 409 at ¶ 4, R. 410 at ¶¶ 6-8, R. 413 at ¶ 14, R. 413-14 at ¶¶ 15-19,  R. 415 at ¶¶ 20-21, R. 416 at ¶ 24, R. 417 at ¶¶ 30 & 35, R. 421 at ¶ 46, and R. 422 at ¶ 49 & Prayer for Relief ¶ 2.

[271]  R. 413 at ¶ 14 ("The STPG, in violation of at least its DEQ MS4 permit and ordinances, codes, state law, and obligations … did not properly respond to Stevens' complaints ….").

[272]  R. 418 at ¶ 35(b)-(d).

[273]  La. Code Civ. Proc. art. 425(A); *see* 1990 Comment to La. Code Civ. Proc. art. 425 ("This amendment expands the scope of this Article to reflect the changes made in the defense of res judicata and puts the parties on notice that all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation must be raised.").

[274]  *See Westerman v. State Farm Mut. Auto. Ins. Co.*,2001-2159, p. 6 (La. App. 1ˢᵗ Cir. 9/27/02), 834 So.2d 445, 448 ("[T]he failure to raise a claim that arises from the transaction or occurrence that is the subject matter of the litigation amounts to a waiver of that claim.").

Department of Environmental Quality ("LDEQ").[275]   Importantly, the "evidence" cited by the Plaintiffs in their brief is not in the record on appeal because it was never presented to the District Court for consideration.[276]   Obviously, this Court should disregard any argument based on evidence not in the record.[277]  The Plaintiffs cannot cite to any record evidence supporting this cause of action because they failed to introduce any evidence relevant to the claim in opposition to St. Tammany's Motion for Summary Judgment.[278]   This glaring omission by the Plaintiffs evidences their intent to abandon those claims below.   The Plaintiffs had many opportunities to prosecute and present evidence on this claim to the District Court but failed to do so. The Plaintiffs certainly did not present any evidence that St. Tammany violated any permit issued by LDEQ – either to the District Court or this Court.

The vast majority of Section V of the Plaintiffs' original brief consists of causes of action not advanced or prosecuted below, evidencing the Plaintiffs' intent to abandon and/or waive those claims.   Only on appeal do the Plaintiffs assert arguments not made to the District Court and cite to evidence not in the appeal record.[279]  As such, this Court should decline to consider Section V(A)-(D) of the Plaintiffs' original brief as waived and improperly raised on appeal.

### G. Denying the Plaintiffs' Motion for Summary Judgment Was Not Erroneous.

The Plaintiffs also claim on appeal that the District Court erred in denying their summary judgment motion based on the premise that St. Tammany is discharging pollutants onto Plaintiffs property, which is an impermissible violation of the natural drainage servitude.[280]   As with all summary judgment motions, this

---

[275]     Plaintiffs' Brief, pp. 22-23.
[276]     *See, e.g.*, Plaintiffs' Brief, pp. 23-35 (citing to internet addresses and web-based documents instead of the record on appeal).
[277]     *See* Uniform Rules – Courts of Appeal 2-12.4(A)(9)(a) (contentions should reference specific page numbers of the record) and 2-12.4(B)(3) (court may disregard argument if suitable reference to specific page numbers of the record is not made).
[278]     *See* R. 4232-4679 (Plaintiffs' Opposition to Summary Judgment and supporting evidence).
[279]     *See* Plaintiffs' Brief, §V(A)-(D), pp. 22-30.
[280]     Plaintiffs' Brief, §V(E), pp. 30-36.

Court conducts a *de novo* review to determine whether there is a genuine issue of material fact that entitles the Plaintiffs to a judgment as a matter of law.[281]  As shown below, the District Court correctly denied the Plaintiffs' motion for summary judgment.

The primary problem with the Plaintiffs' argument is that they filed the summary judgment motion on 18 April 2017 and then filed the Third Amended Petition on 28 April 2017.[282]  The preface to the Third Amended Petition clearly states the Plaintiffs' "desire to amend their original petition as previously supplemented …, and their first and second amended petition, to read as follows, *substituting in all respects for the original and all amended/supplemental petitions*."[283]  Thus, the Third Amended Petition completely supplanted the document forming the basis for the Plaintiffs' motion; thereby mooting the motion.[284]

Even assuming, *arguendo*, the Plaintiffs' motion was not mooted, the District Court found that genuine issues of material fact existed that precluded entry of a summary judgment.[285]  The following exchange undoubtedly contributed to the District Court's ruling:

> MR. KOERNER:  So what happened is that – they have a lot of affidavits to contradict what I have, and a lot of it obviously with regard to the question of dominant versus servient, that's something that has to be heard.
>
> THE COURT:  And that is a matter of fact, isn't it, Mr. Koerner?
>
> MR. KOERNER:  There is no question about it.[286]

---

[281]   *Schmit v. Tjitandi*, 2016-1431, p. 4 (La. App. 1st Cir. 6/2/17), 223 So.3d 153, 155-56.
[282]   R. 259-384 (Plaintiffs' Motion for Summary Judgment; R. 408-24 (Third Amended Petition)
[283]   R. 408 (emphasis added).
[284]   R. 6762 ("[A] lot of this Motion for Summary Judgment has been mooted.").
[285]   R. 6762 ("I find that there are material facts that prevent this Court or precludes this Court from issuing a summary judgment ….").
[286]   R. 6759.

The Plaintiffs' concession on this point required the District Court to deny their motion for summary judgment.

### H.   The Plaintiffs Incorrectly Claim St. Tammany Is the Source of Alleged Storm Water Pollutants Traversing Their Properties.

The Plaintiffs also allege in support of their various arguments that St. Tammany is responsible for sewage and other pollutants traversing their properties.[287]  However, most of these allegations are nothing more than conclusory statements lacking citation to the record.  When the Plaintiffs do provide citations for their allegations, they are frequently to documents, websites, or "evidence" not in the record.[288]

When the Plaintiffs actually cite to the record, they incorrectly attribute testimony and, more often, misrepresent the substance of testimony.  For example, the Plaintiffs allege Holly Thomas testified "that sewage is being placed on the Stevens property."[289]  However, the actual testimony was from Jean Thibodeaux about drainage water from Dove Park subdivision: "No, I can't tell you what it was. It was water – residual water in the ditches that was dumped out.  It could've been from residual storm water.  If there was sewer effluent that made its way there, it could have been a mixture of that in there, *but I don't have any information on that*."[290]  Similarly, Plaintiffs allege Sabrina Schenk testified that 27,000 gallons of sewage per day flows onto Plaintiffs properties and that 50% may be untreated.[291] However, neither Mr. Thibodeaux nor Ms. Schenk's testimony is in the summary judgment record – Mr. Thibodeaux's testimony was limited to St. Tammany's exception of prescription and Ms. Schenk's 27 June 2018 deposition was after the

---

[287]  *See*, *e.g.*, Plaintiffs' Brief, p. 18 (St. Tammany "permitted storm water, sewage, and other pollutants" to flow across Plaintiffs' properties); p. 22 (St. Tammany drainage ditches discharging sewage and other contaminants onto Plaintiffs' properties); pp. 24-26 (same).

[288]  *See* Plaintiffs' Brief, pp. 22-23 (citing to various websites and internet documents not in the record and not submitted to the District Court).

[289]  *Id.* (citing to R. 7091-93).

[290]  R. 7093 (emphasis added).

[291]  Plaintiffs' Brief, p. 26 (citing to R. 6016).

43

summary judgment record was closed. Regardless, Ms. Schenk qualified her estimate, saying it "was just a down-and-dirty number" that was not meaningful to her because "when you have two results that are – that vary so greatly, *you really don't have any result that is meaningful*" and she recommended that someone "get a flowmeter out there *to know the actual flow*."[292] The actual testimony is quite different from the Plaintiffs' representation.

What the Plaintiffs' do not cite to in their brief is the District Court's finding of fact that St. Tammany is "not operating any sewer treatment plant that was located in the area that naturally drained across Plaintiffs' properties, nor did the Parish license, permit, or install any individual sewage system, those being under the exclusive purview of the State of Louisiana Department of Health and Hospitals."[293] The Plaintiffs point to no competent evidence that St. Tammany is responsible for contaminated storm water traversing their properties, nor do they point to any competent evidence there is actually sewage in the storm water. Even assuming, *arguendo*, there is sewage effluent in the storm water, Plaintiff Stevens admitted that such effluent come from "private property. *It's not public effluent, it's private property, and it's private effluent*."[294] The record is completely devoid of any competent evidence supporting the Plaintiffs' allegations. The District Court's factual finding was not manifestly erroneous because it was supported by substantial competent evidence.[295]

## I.    The Plaintiffs Are Not Entitled to Injunctive Relief Because Their Claims Were Dismissed Through Exception or Summary Judgment.

The Plaintiffs claim that District Court erred in failing to conduct a second preliminary injunction hearing before ultimately dismissing the Third Amended

---

[292]    R. 6016 (emphasis added).
[293]    R. 5289.
[294]    R. 7172 (Plaintiff Steven's testimony during trial on exception of prescription) (emphasis added).
[295]    *Id.*

Petition through exception or summary judgment.[296]   The crux of the Plaintiffs' argument is the District Court was required to hold a hearing on their request for preliminary injunctive relief once the Third Amended Petition was filed.   By declining to conduct a second preliminary injunction hearing (the first occurring on 27 March 2015) and deferring all issues to the trial on the merits is reversible error, according to the Plaintiffs.[297]

The Plaintiffs' argument, however, conflates a cause of action with a proposed remedy.[298]   This Court has held that "a request for injunctive relief is not a *cause of action*, but rather an equitable *remedy* sought to prevent irreparable injury from the wrongs alleged in the underlying cause of action."[299]   Obviously, the fallacy of the Plaintiffs' argument stems from the fact they were unable to prove any of their claims against St. Tammany.   Because the District Court found that Plaintiffs cannot possibly prevail on the merits of any of their underlying causes of action that, if proven, might support the issuance of a permanent injunction, their request for injunctive relief was also necessarily dismissed.

Furthermore, the Plaintiffs' premise their entire argument on their belief their properties are not burdened with a natural drainage servitude (i.e. they are not the servient estate).[300]   The record of this case belies this unfounded belief, as the District Court found in ruling that St. Tammany "through the introduction of competent

---

[296]   Plaintiffs' Brief, pp. 37-38.
[297]   Plaintiffs' Brief, pp. 37-38.
[298]   *Trahan v. Liberty Mutual Ins. Co.*, 314 So.2d 350, 353 (La. 1975) ("[T]he demand of a suit is not synonymous with the cause of action therein.").
[299]   *Brandner v. Molonguet*, 2014-0712, p. 8 (La. App. 1st Cir. 12/23/14), 2014 WL 7332206, *8 (unpublished) (emphasis in original) (citing *Vartech Systems, Inc. v. Hayden*, 2005-2499 (La. App. 1st Cir. 12/20/06), 951 So.2d 247, 262 (noting that injunctive relief was not a proper remedy where plaintiff had asserted a cause of action for defamation); *see also Louisiana Crisis Assistance Center v. Marzano-Lesnevich*, 878 F.Supp.2d 662, 669 (E.D. La. 2012) ("Generally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims.").
[300]   Plaintiffs' Brief, p. 38 ("As dominant estates, plaintiffs have no duty to receive any surface water.").

summary judgment evidence, has clearly established that the natural servitude of drain does not flow north to south as alleged by Plaintiffs, but instead runs south to north, through longstanding culverts under Dove Park Road, and across the Plaintiffs' properties to Little Creek."[301] The Plaintiffs' argument fails as a matter of law.

## V.    CONCLUSION

For the reasons set forth hereinabove, the District Court's judgments dismissing the Third Amended Petition through exception and summary judgment were both factually and legally correct. In addition, the District Court's decision to deny the Plaintiffs' motion to disqualify St. Tammany's counsel was not erroneous. This Court should affirm the District Court's rulings in all respects.

Respectfully submitted,

JAMES L. BRADFORD, III (#23662) (A.C.)
KIRK N. AURANDT (#25336)
D. STEPHEN BROUILLETTE, JR. (#29105)
DAIGLE FISSE & KESSENICH, PLC
P.O. Box 5350
Covington, Louisiana 70434-5350
Telephone: (985) 871-0800
Facsimile:  (985) 871-0899

Counsel for Defendant-Appellee, St. Tammany
Parish Government

---

[301]    R. 5286.

46

## CERTIFICATE OF SERVICE

I hereby certify that a legible copy of the above and foregoing pleading has

been delivered or mailed to opposing counsel of record via electronic mail, this 16th

day of June 2020, at the following e-mail addresses:

**Plaintiffs-Appellants, Terri Lewis Stevens and**
**Jennifer Fruchnicht wife of/and Craig Rivera**
**Through their counsel of record:**

**KOERNER LAW FIRM**
Louis R. Koerner, Jr., Esq.
1204 Jackson Avenue
New Orleans, Louisiana  70130-5130
E-mail:      koerner@koerner-law.com
                anne@koerner-law.com