UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRI LEWIS STEVENS, AND JENNIFER AND CRAIG RIVERA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-928** |
| **THE ST. TAMMANY PARISH GOVERNMENT** | **SECTION "L" (1)** |

**ORDER & REASONS**

Pending before the Court is Defendant St. Tammany Parish Government's Rule 12(b)(6) Motion to Dismiss, R. Doc. 65. Plaintiffs Terri Lewis Stevens and Jennifer and Craig Rivera did not file a formal response to this motion; instead they filed a document entitled "Opposition To The Motions To Dismiss [Doc. 65 And Doc. 66] as Moot and Based on the Authority Cited in the Memoranda Filed by Plaintiffs in Support of Their Motion to File Second Amended Complaint, for Expedited Hearing, and Objection to the Magistrate's Ruling." R. Doc. 101. On June 19, 2020, Defendant filed a Reply Memorandum in support of its Motion to Dismiss, R. Doc. 106. Having considered the parties' arguments and the applicable law, the Court now rules as follows.

I.   **BACKGROUND**

Plaintiffs Terri Lewis Stevens, Craig Rivera, and Jennifer Rivera (collectively, "Plaintiffs") brought suit against Defendants St. Tammany Parish Government ("STPG") and the Louisiana Department of Environmental Quality ("LDEQ") for past and ongoing violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, and the Louisiana Pollution Discharge Elimination System ("LPDES") Permit No. LAR04000, as well as for a failure to enforce the permit, the CWA, and applicable laws of the state of Louisiana. R. Doc. 1 at 1. Specifically, Plaintiffs allege that the "sanitary sewer overflows . . . and other pollutants are conveyed by STPG drainage ditches to a

catch basin" that flows to the Stevens' property, then the Rivera's property, and then into various "waters of the United States," and that this increases the storm and sewage burden on Plaintiffs' properties. R. Doc. 1 at 2. Plaintiffs also allege that LDEQ "has not met its obligations and has not prevented the STPG from discharging sewage, stormwater, and other pollutants into the water of the United States through [P]laintiffs' private properties." R. Doc. 1 at 3.

## II. PROCEDURAL HISTORY

The procedural history in this case is set forth in an unusually large number of documents. There are thus far 135 documents. Navigating through this procedural history has been made exceedingly difficult by the various pleadings and attachments filed or attempted to be filed by the Plaintiffs, which were often described in nonresponsive terms. The Court will nevertheless endeavor to press on in an attempt to deal with the salient issues in this matter.

Plaintiffs filed their first Complaint in this Court on March 17, 2020, R. Doc. 1. Plaintiffs seek injunctive relief, actual and punitive damages, enforcement measures, and other remedies against STPG and LDEQ. R. Docs. 1 at 2; 87-1 at 19-20. Specifically, Plaintiffs seek (1) an injunction requiring that STPG "cease the flow of any substance from its drainage ditches into and/or through [P]laintiffs' properties"; (2) an order that STPG comply with its obligations under the CWA, the LPDES permit, and Louisiana law; and (3) damages, plus interest and attorney's fees. R. Doc. 1 at 23. Moreover, Plaintiffs seek an order that LDEQ comply with its obligations under the CWA; and an order that LDEQ notify STPG of its alleged violations and require that STPG cease its violations. R. Doc. 1 at 23.

Plaintiffs filed a Motion for Preliminary and Permanent Injunction on March 27, 2020, R. Doc. 15, and then a Motion for Preliminary and Permanent Injunction against LDEQ on April 23, 2020. R. Doc. 36. Oral argument on these motions was heard on July 22, 2020. R. Doc. 180.

Additionally, on April 29, 2020, Plaintiffs filed a motion for partial summary judgment against STPG. R. Doc. 48. The Court denied Plaintiffs' motion for partial summary judgment as premature, since neither Defendant had at the time filed an Answer to the Complaint. R. Doc. 57.

On April 27, 2020, Plaintiffs filed a First Amended Complaint prior to receiving an answer from Defendants. R. Doc. 44 at 1. In the First Amended Complaint, Plaintiffs seek additional remedies specific to LDEQ's alleged noncompliance with the CWA. R. Doc. 44. For example, Plaintiffs seek "actual and punitive damages consequent to harm to their persons and properties caused by LDEQ's violations of its enforcement obligations under the CWA, its failure to enforce LPDES permit obligations, [and] its lengthy and intentional course of misrepresentation to plaintiffs." R. Doc. 44 at 12. Plaintiffs listed specific employees of STPG and LDEQ and alleged that "[t]hey failed to enforce the CWA and STPG's LPDES permit obligations," among other allegations. R. Doc. 44 at 2. Plaintiffs, however, did not name these employees as defendants or file any formal motions to join them in this lawsuit. Finally, Plaintiffs added more claims against LDEQ, which include violations of the Fifth and Fourteenth Amendments under 43 U.S.C. § 1893 and unconstitutional takings of Plaintiffs' properties.

On May 12, 2020, Defendant STPG filed the present Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint and Amended Complaint. R. Doc. 65. Additionally, LDEQ filed a Motion to Dismiss for Lack of Jurisdiction, R. Doc. 66. On June 3, 2020, Plaintiffs filed a Motion for Leave to File Second Amended Complaint, which remains pending. R. Doc. 87. The Court granted leave to Plaintiffs to file excess pages in support of this motion. R. Doc. 95. At the time of filing their Motion for Leave to File Second Amended Complaint, neither STPG nor LDEQ had answered the initial Complaint. On July 9, 2020, Plaintiffs filed a "Reply Memorandum in Support of Motion for Leave to File Second Amended Complaint." R. Doc. 128.

Three days before oral argument was set for the motions to dismiss filed by STPG and LDEQ, LDEQ was dismissed by Plaintiffs without prejudice. R. Doc. 108. This dismissal effectively terminated LDEQ's presence in the case and mooted its Motion to Dismiss for Lack of Jurisdiction, R. Doc. 66. On June 23, 2020, the Court heard oral argument on the remaining STPG Motion to Dismiss. R. Doc. 111. The pending motion, the applicable law, and the Court's decision are summarized below.

**III.    PENDING MOTION**

On May 12, 2020, Defendant STPG filed the present Rule 12(b)(6) Motion to Dismiss. R. Doc. 65. STPG's primary argument is that Plaintiffs' claims are barred by the doctrine of *res judicata*. R. Doc. 65. STPG explains that over five years ago, these same Plaintiffs filed suit in the 22nd Judicial District Court for the state of Louisiana against the same Defendant for damages arising from the same alleged conduct. R. Doc. 65-1 at 2. After five years of protracted litigation, the state court issued a Final Judgment in favor of STPG. R. Doc. 65-1 at 2; *Stevens v. St. Tammany Parish Government*, No. 2015-10649, Division "H" (Hon. Alan A. Zaunbrecher), on the docket of the 22nd Judicial District Court for the Parish of St. Tammany. While this judgment was on appeal to the First Circuit Court of Appeal for Louisiana, Plaintiffs filed the present suit in this Court. R. Doc. 1-8 at 1, 58; R. Doc. 65-1 at 2. The First Circuit denied Plaintiffs' request for relief on June 25, 2020. *Stevens v. St. Tammany Parish Government*, No. 2020-CW-0426 (La. App. 1 Cir. 6/25/20) 2020 WL 3467713. STPG argues that Plaintiffs simply "rebranded their core claim" against STPG in the present federal lawsuit, while adding a new defendant, LDEQ, which defendant has now been dismissed by Plaintiffs and is no longer a party to this litigation. R. Docs. 108; 65-1 at 2. Alternatively, STPG contends that "Plaintiffs have failed to state any claim against St. Tammany upon which relief can be granted." R. Doc. 65-1 at 1.

Plaintiffs did not formally or timely respond to Defendants' motions to dismiss. Rather, on June 15, 2020, Plaintiffs filed a pleading entitled an "Opposition To The Motions To Dismiss [Doc. 65 And Doc. 66] as Moot and Based on the Authority Cited in the Memoranda Filed by Plaintiffs in Support of Their Motion to File Second Amended Complaint, for Expedited Hearing, and Objection to the Magistrate's Ruling." R. Doc. 101. This pleading was rejected by the Clerk's Office and marked as deficient because it appeared to include two different motions in one pleading. R. Doc. 101. In the deficient pleading, Plaintiffs apparently sought to justify or explain the lack of formal opposition to STPG and LDEQ's Motions to Dismiss, asserting that the "grounds for the oppositions are set forth in the many memoranda that have previously been filed in this case and will not be repeated." R. Doc. 101 at 2-3. The Court gave Plaintiffs seven days to cure this deficiency and file a proper intelligible response, but Plaintiffs never did so. Therefore, the Court must consider STPG's Motion to Dismiss to be technically unopposed.

The Court, nevertheless, will address the arguments in Plaintiffs' June 19, 2020 motion entitled "Motion to Dismiss the Pending Motions to Dismiss as Moot and Continue the Hearing of June 23, 2020 as Moot and Unnecessary" to the extent they relate to the pending motion's alleged mootness. R. Doc. 103. Here, Plaintiffs seem to argue that STPG's and LDEQ's motions to dismiss are moot because the proposed second amended complaint alleges "much more specific allegations" and named "the LDEQ defendants in their individual and official capacities." R. Doc. 103-1 at 2. Plaintiffs point out "that prior and pending motions to dismiss are moot when comprehensive amended complaints are filed," and their proposed second amended complaint would cure any previous deficiencies. R. Doc. 103-1 at 2. Further, Plaintiffs cite authority for the propositions "that, when timely filed, an amended complaint becomes the operative pleading so that any pending motion to dismiss becomes moot" and "a pending Rule 12(b)(6) motion

automatically 'transfers' to the amended complaint." R. Doc. 103-1 at 4. As mentioned above, LDEQ was properly dismissed by the Plaintiffs from this lawsuit on June 20, 2020, so its Motion to Dismiss is moot and no longer pending before the Court. R. Doc. 108. On the other hand, STPG responded to Plaintiffs' Motion to Dismiss the Pending Motions and reiterated its opposition to Plaintiff filing a second amended complaint. R. Doc. 116.

In its Opposition to Plaintiffs' Motion to Dismiss as Moot St. Tammany's Rule 12(b)(6) Motion, STPG argues that the proposed second amended complaint is an exception to the "general rule" that motions to dismiss are moot once there is a proposed amended complaint. R. Doc. 116 at 3-4. STPG agrees "the Court has the discretion to apply the original motion to dismiss to the [proposed second] amended complaint," but believes that doing so here would not cause the Court to decide the pending motion differently. R. Doc. 116 at 3-4. STPG contends that the proposed second amended complaint is an exception to the general rule because it fails to cure the defects in Plaintiffs' earlier pleadings. R. Doc. 116 at 3. Specifically, STPG alleges that the proposed complaint adds nothing new and instead confirms its position that "Plaintiffs' claims arise out of the same transaction or occurrence as the state court litigation." R. Doc. 131 at 3. In other words, STPG asserts that *res judicata* bars the claims in Plaintiffs' Complaint, First Amended Complaint, and proposed second amended complaint. R. Doc. 131 at 3. Therefore, STPG argues that Plaintiffs should not be granted leave to file a new second amended complaint.

IV. **LAW AND ANALYSIS**

   a. **Rule 15(a) and Mootness of the Pending Motion to Dismiss**

Before moving to its *res judicata* and Rule 12(b)(6) analyses, the Court must first address Plaintiffs' assertion that the pending Motion to Dismiss is moot. R. Docs. 103; 86-1 at 2. Plaintiffs correctly point out that when a comprehensive amended complaint is timely filed, the new

amended complaint typically becomes the operative complaint. R. Doc. 103-1 at 4. Rule 15(a)(1) of the Federal Rules of Civil Procedure allows a party to amend its pleading once as a matter of course within twenty-one (21) days of serving it or if the pleading is one to which a responsive pleading is required, twenty-one (21) days after service of a responsive pleading or a motion under a Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)-(B). In all other scenarios, a party must secure the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2).

Plaintiffs' First Amended Complaint was filed before Defendants answered the Complaint and was allowed by the Court. R. Doc. 44. Plaintiffs now seek to file a second amended complaint and request leave of the Court to do so. R. Doc. 87. This Motion did not indicate consent on the part of LDEQ and STPG and was in fact opposed by STPG. R. Docs. 87; 117. The Court's decision to allow Plaintiffs to amend their Complaint again is discretionary. In the Fifth Circuit, "[a] district court possesses broad discretion in its decision whether to permit amended complaints." *Crostley v. Lamar Cnty., Texas.,* 717 F.3d 410, 420 (5th Cir. 2013). *See also*, *McLean v. International Harvester Co.*, 817 F.2d 1214, 1224 (5th Cir. 1987) (citing *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982)). Plaintiffs apparently argue that the Court should defer ruling on STPG's Motion to Dismiss until the proposed second amended complaint is allowed to be filed. Nevertheless, in certain instances, a court may rule on a pending motion to dismiss while a motion for leave to amend a complaint is pending.

It is true that comprehensive amended complaints may effectively moot any pending motions that apply to the original filing. R. Doc. 103-1 at 2; § 1476 Effect of an Amended Pleading, 6 FED. PRAC. & PROC. CIV. § 1476 (3d ed.). Courts vary, however, in their treatment of pending Rule 12(b)(6) motions to dismiss when an amended complaint is filed. *Melson v. Vista World Inc.*

7

*& Assocs.*, No. 12-135, 2012 WL 6002680, at *12 (E.D. La. Nov. 30, 2012); 1 STEVEN S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY Rule 15 (2020 ed.). Some courts hold that the pending motion to dismiss automatically becomes moot, while other courts hold that they do not. *Id.* In the Fifth Circuit, courts first consider whether the amended complaint cures defects in the original pleading before deciding whether the pending motion to dismiss is moot. *See, e.g.*, *Shelby v. The City of El Paso*, 2013 WL 12086210, at *3 n. 11 (W.D. Tex. Jun. 5, 2013), *aff'd sub nom. Shelby v. City of El Paso, Tex.*, 577 F. App'x 327 (5th Cir. 2014); *Davis v. Dallas County, Tex.*, 541 F. Supp. 2d 844 (N.D. Tex. 2008); *Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 557 (N.D. Tex. 2007). Because Plaintiffs assert that the second amended complaint is "curative," the Court will assess whether the proposed pleading actually corrects the original defects regarding the claims against STPG. R. Doc. 103-1 at 2.

The proposed second amended complaint is curative only as it relates to claims against defendant LDEQ, which defendant was dismissed by Plaintiffs from this lawsuit on June 20, 2020. R. Doc. 108. Since LDEQ is no longer a defendant, the Court need not engage in such analysis regarding LDEQ. Plaintiffs, however, contend that the proposed second amended complaint is also curative of their claims against STPG because it "is much more specific as to illegal actions of the STPG, the limits of its NPDES permit, and its violation of a permit." R. Doc. 87 at 1. The Court finds this argument unconvincing.

The proposed second amended complaint does not cure the defects related to the claims against STPG and overall adds very little new information to the case. As STPG points out, the current lawsuit revolves around alleged acts committed by STPG in 1993, 2001, 2003, 2011, and 2015, which were also at issue in the State Court Litigation. R. Docs. 117 at 7; 65-3 at 6-7, 10. Instead of adding specific violation dates or new causes of action, Plaintiffs describe the same

"acts of man" occurring during those years. R. Doc. 87-1 at 2-3. Further, the Court finds that the second amended complaint fails to add materially different facts or specificity that would assist the Court in determining whether Plaintiffs state a claim upon which relief may be granted. Thus, the Court concludes that STPG's pending Motion to Dismiss is not moot. At this point, the Court turns to the substance of STPG's motion.

### a. The Standard Governing Rule 12(b)(6) Motions

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court must construe facts in the light most favorable to the nonmoving party, *id.*, and it "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n. 1 (2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Typically, a court considering a motion to dismiss is confined to the four corners of the complaint. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). However, a court may also consider documentary evidence attached to a motion to dismiss "if [it is] referred to in the plaintiff's complaint and [is] central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). As the Fifth Circuit explained, consideration of such documents is appropriate because "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* In the present case the Defendant seeks to dismiss the Plaintiffs' complaint under Rule (12)(b)(6) for two reasons: (1) *res judicata* and (2) failure to state a claim. The Court will discuss them in turn.

### b. *STPG's Res Judicata Defense*

Before moving to a *res judicata* analysis, the Court must first address whether STPG may assert *res judicata* as an affirmative defense under Rule 12(b)(6) before answering the Complaint. As of the date of this motion, STPG has not formally answered the Complaint. *Res judicata* and other affirmative defenses are typically pleaded in an answer to a complaint and not by motion before answer. Fed. R. Civ. P. 8(c). Within the Fifth Circuit, however, "[w]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Progressive Waste Sols. of La, Inc. v. St. Bernard Par. Gov't*, No. CV 16-8669, 2016 WL 4191847, at *13 (E.D. La. Aug. 9, 2016).

Here, the existence of a *res judicata* defense is apparent from the face of Plaintiffs' complaints and the documents attached to them. For example, Plaintiffs reference the State Court

10

Litigation in their original and amended complaints. R. Docs. 1 at 11-12, 21-22; 44 at 4. Additionally, Plaintiffs attached their First Circuit appellate brief relating to the State Court Litigation, as well as other documents from that lawsuit. R Docs. 1-6; 1-7; 1-8. Moreover, Plaintiffs referenced the State Court Litigation proceedings again in their proposed second complaint and Memorandum in Support. R. Doc. 87-1 at 13, 24; 87-2. Because the existence of a *res judicata* defense is apparent from the face of Plaintiffs' pleadings and attachments, it was appropriate for STPG to assert this defense before formally answering Plaintiffs' complaints.

The applicable substantive law regarding *res judicata* is the law of Louisiana. Louisiana's *res judicata* statute provides that if a valid and final judgment is "in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." La. R.S. § 13:4231 (1991). As the Louisiana Supreme Court has explained, "a second action is [thus] precluded when all of the following are satisfied: (1) the judgment [in the prior action] is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Burguieres v. Pollingue* No. 2002-1385, (La. 2/25/03) 843 So.2d 1049, 1053 (La. 2003).

There is little dispute over the first three elements of *res judicata* here: the judgment must be valid and final, and the parties must be the same. In Louisiana, "a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice has been given." *Matherne v. TWH Holdings, LLC.*, 42012-1878 (La.App. 1 Cir. 12/6/13), 136 So. 3d 854, 860 (La. App. 1st Cir. 2013). Moreover, "[a] final judgment is one rendered by a court with

11

jurisdiction over both the subject matter and the parties after proper notice has been given." *Id.* at 361. Here, these elements are satisfied. The 22nd Judicial District Court for the Parish of St. Tammany had jurisdiction over the subject matter and parties involved in this litigation. Second, the judgment rendered in favor of STPG by the trial court was final, as evidenced by the Final Judgment entered on August 17, 2018, for which the First Circuit Court of Appeals for Louisiana denied Plaintiffs' request for relief on application for supervisory writ. *Stevens v. St. Tammany Parish Government*, No. 2015-10649, Division "H" (Hon. Alan A. Zaunbrecher), on the docket of the 22nd Judicial District Court for the Parish of St. Tammany; *Stevens v. St. Tammany Parish Government*, No. 2020-CW-0426 (La. App. 1 Cir. 6/25/20) 2020 WL 3467713. Third, the parties at issue in this motion to dismiss are the same as those involved in the State Court Litigation: Terri Lewis Stevens, Jennifer Fruchtnicht, and Craig Rivera as Plaintiffs and the St. Tammany Parish Government as Defendant. R. Docs. 65-1; 87-1.

With regard to the fourth requirement for *res judicata*, the Court notes that the claims at issue here existed at the time of Final Judgment in the State Court Litigation. In their "Memorandum in Support of Motion to File Second Amended Complaint" Plaintiffs argue that the claims here are part of a "pattern" of repeated behavior on the part of STPG. R. Doc. 86-1 at 24. However, in making this assertion Plaintiffs miss the point of the transactional test prescribed by the Fifth Circuit in *New York Life Insurance Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000). R. Doc. 86-1 at 24. As explained in the following paragraph, it is clear that the claims at issue here completely overlap with or arise out of the original grievances in the State Court Petition. Plaintiffs list the same "acts of man" occurring in 1993, 2001, 2003, 2011, and 2015 in connection with the Dove Park Widening project. R. Docs. 117 at 7; 65-3 at 6-7, 10. The Plaintiffs have not raised

causes of action that occurred after state court's August 17, 2018 Final Judgment. Thus, Plaintiffs' claims against STPG here existed at the time of the Final Judgment. R. Doc. 1-8 at 58-72.

Finally, the causes of action asserted in the present lawsuit are the same as those asserted in the State Court Litigation. Plaintiffs' State Court Petition focuses on allegations that "the storm water, sewage and debris, by being sent to the plaintiffs' properties furthered the illegal and illicit discharge of polluted water onto the Plaintiffs' properties and into the navigable waters of the United States." R. Doc. 65-2 at 11. Plaintiffs sought relief on five different claims: (1) violation of its natural servitude; (2) deprivation of rights guaranteed by the U.S. Constitution and the Louisiana Constitution; (3) intentional damage to property and mental anguish; (4) possessory action; and (5) unfair trade practices under La. R.S. 51:1405. R. Doc. 65-2. Plaintiffs' allegations focused on the "acts of man" committed by STPG in 1993, 2001, 2003, 2011, and 2015 in connection with the Dove Park Widening public works project. R. Doc. 65-2 at 1-2. The Final Judgment in the State Court Litigation made factual findings adverse to Plaintiffs on all these claims. R. Doc. 1-8 at 58-72. The memorandum filed in support of the State Court Petition also contained allegations that STPG had also violated the Clean Water Act. R. Doc. 65-3 at 5, 10-12. However, these claims were not pleaded in the State Court Complaint itself and the Final Judgment did not address them. R. Docs. 65-2; 1-8 at 58-72.

In the proposed second amended complaint, Plaintiffs seek relief on the following claims (1) past and ongoing violations of the CWA and LPDES Permit No. LAR041024; (2) failure of enforcement of that permit; (3) violations of the CWA; (4) violations of the applicable laws of Louisiana. R. Doc. 87-1 at 1-2. The complaint focuses on the same "acts of man" described in the State Court Petition, but no additional details are given about the dates and circumstances surrounding each act. R. Doc. 65-2 at 7. Instead of adding further details or alleging new causes

of action, Plaintiffs have simply realleged their State Court Petition claims in the complaints at issue before the Court.

In determining the preclusive effect of a state court judgment, federal courts are directed to apply the claim preclusion law of the state that rendered the judgment. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985); *Webb v. Town of St. Joseph*, 560 Fed. App'x 362 (5th Cir. 2014); *Weaver v. Tex. Capital Bank N.A.,* 660 F.3d 900, 906 (5th Cir. 2011). Here, the Final Judgment at issue was rendered by a Louisiana state court, so Louisiana's claim preclusion law applies. Louisiana Revised Statute § 13:4231 states that if a valid and final judgment is "in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." La. R.S. § 13:4231 (1991). In conclusion, because the core claims at issue in this lawsuit were already adjudicated in the State Court Litigation, and because this fact is evident from the face of the complaints and the attached pleadings, Plaintiffs are estopped from bringing all but their CWA claim before this Court. Thus, the Court need not engage in any further Rule 12(b)(6) analysis to determine whether Plaintiffs state a cause of action regarding these claims. Nevertheless, whether or not Plaintiffs' CWA claim was properly brought in the State Court Litigation and are thus precluded by *res judicata* warrants further discussion.

It is unclear whether the Louisiana state court could have exercised concurrent jurisdiction over Plaintiffs' CWA Citizen Suit claims. 33 U.S.C. § 1365. The CWA's Citizen Suit provision instructs citizens to file an action "only in the judicial district in which the source is located" and states "[t]he [federal] district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties" to provide remedies under the CWA. *Id.* at § 1365(a),

(c)(1). However, the statute is silent on the issue of whether the jurisdiction of federal district courts is exclusive. Citing the Supreme Court of Kentucky, STPG claims there is "a circuit split on whether CWA citizen-suit claims can only be brought in federal district court." R. Doc. 65-1 at 11 (citing *Com., Energy & Env't Cabinet v. Shepherd*, 366 S.W.3d 1, 4-5 (Ky. 2012)). The Court notes that only two circuit courts have definitively ruled on this issue. *See Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 693 (3d Cir. 2011); *Natural Resource Defense Council v. U.S. E.P.A.*, 542 F.3d 1235, 1241 (9th Cir. 2008). The cases cited by STPG in support of this split mainly relate to federal exclusive jurisdiction over Resource Conservation and Recovery Act citizen suits. *See, e.g.*, *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483 (7th Cir. 2011); *Chico Service Station, Inc. v. Sol Puerto Rico Limited*, 633 F.3d 20 (1st Cir. 2011); *Davis v. Sun Oil Co.*, 148 F.3d 606, 611 (6th Cir. 1998); *Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir. 1989).

The Third and Ninth Circuits have held that federal courts have exclusive jurisdiction over CWA citizen suits. *See Baykeeper*, 660 F.3d at 693; *Natural Resource Defense Council*, 542 F.3d at 1241. In *Baykeeper v. NL Industries, Inc.*, the Third Circuit held that the CWA citizen suit "could not have been brought in state court because federal courts have exclusive jurisdiction over RCRA and CWA citizen suits." *Baykeeper*, 660 F.3d at 693. Likewise, the Ninth Circuit held that the CWA's Citizen Suit provision "is an exclusive grant of original jurisdiction to the district courts." *Natural Resource Defense Council*, 542 F.3d at 1241. STPG takes the position that state courts have inherent authority to adjudicate federal law claims as long as they have not been specifically deprived of jurisdiction. R. Doc. 65-1 at 11. In support of this proposition, STPG points to the statutory language of the CWA and its legislative history. R. Doc. 65-1 at 13-17. The Fifth Circuit, however, has not yet dealt with this issue, and in this case it is not necessary for this Court to focus

on it since the CWA claim did not explicitly appear in the State Court Petition. R. Doc. 65-2. Instead, the Court will consider whether the CWA claim asserted in the present lawsuit in this Court meets the pleading standards under Rule 12(b)(6).

### c. *Rule 12(b)(6) as Applied to Plaintiffs' CWA Claim*

STPG argues that Plaintiffs failed to state a claim under the Rule 12(b)(6) pleading standards because (1) Plaintiffs did not provide the requisite pre-suit notice under the CWA and (2) "there are no specific factual allegations . . . evidencing a Clean Water Act violation." R. Doc. 65-1 at 24. STPG points out that 33 U.S.C. § 1365's pre-suit notice provision requires plaintiffs to provide information that allows defendants to identify alleged violations. R. Doc. 65-1 at 24. STPG argues that Plaintiffs' pre-suit notice lacked this information because it was vaguely written and overly broad. R. Doc. 65-1 at 26. Plaintiffs, on the other hand, argue that "[c]ircuits are divided whether or not to strictly construe the pre-suit notice requirement" and "the guiding principle is that sufficient information be given . . . to permit the defendant to identify the alleged violation." R. Doc. 87-2 at 12. Plaintiffs do not offer authority elucidating the Fifth Circuit's position on this issue. R. Doc. 87-2 at 11-17. Plaintiffs instead argue that their October 7, 2019 letter to STPG in conjunction with the litigation history between the parties provided sufficient notice under 33 U.S.C. § 1365(b). R. Doc. 87-2 at 17.

> The federal regulation governing 33 U.S.C. § 1365(b) states, in relevant part:
>
> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The Court concludes that Plaintiffs failed to plead a facially plausible claim pursuant to 33 U.S.C. § 1365's pre-suit notice requirement. To survive a Rule 12(b)(6) motion to

dismiss, the complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Plaintiffs' October 7, 2019 letter lacks the specific effluent standard or limitation being violated, the person or persons responsible for the alleged violation, and the date(s) of the violation. R. Doc. 1-4. The Court finds that these absences constitute critical information that may have put STPG in a better position to identify and cure the alleged violations. Plaintiffs' contention that the parties' litigation history assists it in overcoming any notice deficiencies is unconvincing because this letter arrived nearly five years after Plaintiffs originally filed suit against STPG and nearly two years after Final Judgment had been entered in STPG's favor. However, even if Plaintiffs had met the CWA pre-suit notice requirement, the Plaintiffs still failed to state a CWA claim in their subsequent pleadings.

It seems that Plaintiffs' core CWA claim against STPG is that STPG violated the CWA by failing to apply for a permit that allows discharge in the vicinity of Plaintiffs' land. R. Doc. 87-1 at 10. The Court finds that the disjointed allegations in the proposed second complaint do not explicitly connect STPG's actions to pollution of the waters of the United States in violation of the CWA. The Court must infer that Plaintiffs believe the runoff from STPG's drainage ditches has flown into various creeks and rivers, and then into Lake Pontchartrain, thereby polluting navigable waters. R. Doc. 87-2 at 3. Plaintiffs also allege that STPG violated the CWA by failing to "detect and eliminate illicit discharges" and argue that "[a]ny permit noncompliance constitutes a violation of the Clean Water Act (CWA) . . . and is grounds for enforcement action." R. Doc. 87-1 at 7, 13-14. Beyond that, there are virtually no other facts or evidence set forth in support of STPG's alleged

CWA violations. The other CWA-related allegations in the second proposed complaint focus on LDEQ's alleged failure to enforce permits and regulations. R. Doc. 87-1.

The Court concludes that the CWA claim alleged against STPG fails to meet the pleading requirements to state a claim upon which relief may be granted. The Court understands that a complaint should not be dismissed on these grounds "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Therefore, when ruling on a motion to dismiss, the Court will construe facts in the light most favorable to the nonmoving party. *Ashcroft*, 556 U.S. at 678. As STPG points out, the complaint is devoid of "any facts, data, or evidence supporting its allegations." R. Doc. 651 at 36. Further, the allegations, as referenced above, are conclusory without offering a sufficient statutory basis for pleading. Thus, the Court finds that Plaintiffs failed to state a CWA claim upon which relief may be granted.

## V.     CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant STPG's Motion to Dismiss, R. Doc. 65 is hereby **GRANTED**, and this lawsuit is dismissed with prejudice.

New Orleans, Louisiana, this 23rd day of July 2020.

_____
ELDON E. FALLON
UNITED STATES DISTRICT JUDGE