UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRI LEWIS STEVENS and JENNIFER AND CRAIG RIVERA<br><br>versus<br><br>THE ST. TAMMANY PARISH GOVERNMENT and THE STATE OF LOUISIANA THROUGH ITS LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY | CIVIL ACTION<br><br>NO.  2:20-cv-00928<br><br>SECTION "L" MAG. DIV. (1)<br><br>JUDGE FALLON<br><br>MAGISTRATE VAN MEERVELD |

**DEFENDANT ST. TAMMANY PARISH GOVERNMENT'S
MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**

Now comes St. Tammany Parish Government ("St. Tammany"), through its undersigned

counsel, and submits this Memorandum in Support of its Motion for Attorney's Fees and Costs

under 33 U.S.C. § 1365(d) and 28 U.S.C. §1927.

**I.      Relevant Factual and Procedural History.**

As this Court is aware, St. Tammany has been engaged with these same Plaintiffs in

contentious and protracted civil state court litigation regarding the natural drainage of allegedly

polluted water through their properties for over five years.[1]  St. Tammany prevailed in the state

court litigation, as the Plaintiffs' claims were dismissed with prejudice through either exception or

summary judgment.  Doc. 1-8.  The appeal of the final judgment issued in the State Court Litigation

is in the Louisiana First Circuit Court of Appeal.[2]

---

[1]      Plaintiffs' state court action was entitled, "*Terri Lewis Stevens and Jennifer Fruchtnicht, wife of/and Craig Rivera v. St. Tammany Parish Government,*" and bore case number 2015-10649, Division "H" (Hon. Alan A. Zaunbrecher), on the docket of the 22nd Judicial District Court for the Parish of St. Tammany ("State Court Litigation").

[2]      The Plaintiffs appealed this final judgment to the Louisiana First Circuit Court of Appeal (Appeal Number 2019-CA-1555).  The Plaintiffs filed their Reply Brief on 27 July 2020, concluding the briefing for the appeal.

Nearly 18 months after the Plaintiffs' State Court Litigation was dismissed, the Plaintiffs filed their original Complaint in this Court against St. Tammany and the State of Louisiana, through its Louisiana Department of Environmental Quality ("LDEQ") alleging, *inter alia*, violations of the Clean Water Act. *See* Doc. 1.  The Plaintiffs sought injunctive relief and monetary damages in their Complaint.  The Plaintiffs amended their Complaint on 27 April 2020, adding claims for injunctive relief against LDEQ.  Doc. 44.

On 12 May 2020, St. Tammany filed its pre-answer Motion to Dismiss arguing the Plaintiffs' claims were barred by *res judicata* due to the prior state-court judgment dismissing Plaintiffs' claims against St. Tammany, and, in the alternative, that they failed to state a claim against St. Tammany pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 65.  This Court heard oral argument on St. Tammany's Motion to Dismiss on 23 June 2020.[3]  At the conclusion of the hearing, the Court took the motion under submission.  Doc. 111.  On 23 July 2020, this Court granted St. Tammany's Motion to Dismiss (Doc. 138) and entered a Judgment dismissing the Plaintiffs' lawsuit with prejudice.  Doc. 140.  In its Order and Reasons, the Court specifically noted, the "procedural history in this case is set forth in an unusually large number of documents" and "[n]avigating through this procedural history has been made exceedingly difficult by the various pleadings and attachments filed or attempted to be filed by the Plaintiffs, which were often described in nonresponsive terms."  Doc. 138, p. 2.  A non-exclusive list of unnecessary or failed pleadings filed by the Plaintiffs – many of which required oppositions by St. Tammany – includes the following:

1. Motion to Expedite Discovery to St. Tammany (Doc. 10);
2. Memorandum in Support of Subject Matter Jurisdiction (Doc. 11);
3. Motion for Preliminary Injunction against St. Tammany (Doc. 15);

---

[3]      The Plaintiffs filed a Notice of Voluntary Dismissal on 20 June 2020 dismissing LDEQ from this proceeding.
Doc. 108.

4.      Memorandum on COVID-19 Transmission (regarding Motion for Injunctive Relief) (Doc. 19);

5.      Supplemental Memorandum and Exhibits in Support of Motion for Injunctive Relief (Doc. 31);

6.      Motion for Partial Summary Judgment against St. Tammany (Doc. 48);

7.      Agenda for Status Conference (Doc. 58);

8.      Motion for Leave to File 2nd Amended Complaint (Doc. 87);

9.      Motion to Enforce Waiver of Attorney-Client Privilege (Doc. 96);

10.     Motion to Disqualify St. Tammany's Counsel (Doc. 97);

11.     Motion to Dismiss as Moot St. Tammany's Motion to Dismiss (Doc. 103); and,

12.     Appeal of Magistrate Judge's Ruling Denying Motion to Expedite (Doc. 104).

Furthermore, the Plaintiffs filed more than 125 separate exhibits in support of their various pleadings, motions, and oppositions.  Many of the Plaintiffs' filings lacked a substantive legal basis, thereby unreasonably and vexatiously multiplying these proceedings, and unnecessarily increasing St. Tammany's litigations costs.

As more fully explained below, St. Tammany, as the prevailing party in this proceeding, is entitled to an award of its litigation costs, including reasonable attorney's fees, pursuant to 33 U.S.C. § 1365(d).  St. Tammany further requests that its litigation costs, including its attorney's fees, be assessed against Plaintiffs' counsel pursuant to 28 U.S.C. § 1927.

II.     Law and Argument.

A.      The Legal Standard for Awarding Attorney's Fees and Costs to the Prevailing Party and Assessment of Fees Against Counsel.

The Plaintiffs' instituted this Clean Water Act citizen's suit under 33 U.S.C. § 1365.[4]  On 23 July 2020, this Court entered a final judgment in St. Tammany's favor dismissing the entirety

---

[4]      "[A]ny citizen may commence a civil action on his own behalf (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter ...." 33 U.S.C. § 1365(a)(1).

of the Plaintiffs' lawsuit with prejudice.  Doc. 138 and Doc. 140.  Therefore, St. Tammany is the prevailing party in this proceeding.  *See Bentley v. Fanguy*, 396 Fed. Appx. 130, 132 (5th Cir. 2010) (dismissal with prejudice gives defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits, and as such defendant has clearly prevailed in the litigation).  Under the Clean Water Act, this Court "may award costs of litigation (including reasonable attorney and expert witness fees)" to St. Tammany, as the prevailing party in this litigation, if the Court deems such an award appropriate.[5]  33 U.S.C. § 1365(d).

The Supreme Court has held that the fee-shifting language of Section 1365(d) is similar to that of many other statutes, and the Court's jurisprudence construing what is a reasonable fee applies uniformly to all such statutes.  *City of Burlington v. Dague*, 505 U.S. 557, 561-62 (1992). Section 1365(d) "makes no distinction between plaintiffs and defendants." *Sierra Club v. Cripple Creek and Victor Gold Mining Co.*, 509 F. Supp. 2d 943, 949 (D. Colo. 2006).  As the Fifth Circuit has noted, however, "the Supreme Court has set a more rigorous standard for awarding attorney's fees to prevailing defendants. A district court may award attorney's fees to a prevailing civil rights defendant only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'"  *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001) (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 421 (1978).  Moreover, "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422 (italics in original).

Federal courts have consistently applied the *Christianburg* standard in Clean Water Act litigation when considering fee applications from prevailing defendants.  *See Dean*, 240 F.3d at

---

[5]     St. Tammany notes its decision to utilize expert witnesses employed by St. Tammany, de'Ette Smythe and Sabrina Schenk, enabled it to minimize its litigation costs by not incurring expert witness fees.

508 (5th Cir. 2001) (citing *Christenburg* standard); *see also Morris-Smith v. Moulton Niguel Water Dist.*, 44 F. Supp. 2d 1084, 1085 (C.D. Cal. 1999) ("The Court holds a prevailing defendant can recover attorney fees under the federal Clean Water Act … if the Court finds the plaintiff's claims were frivolous, unreasonable or without foundation."); *Sierra Club*, 509 F. Supp. 2d at 951 (Plaintiff's "dogged pursuit of factually unsupported claims is exactly the situation that the attorney fee provision in the Clean Water Act is designed to address."); *Simsbury-Avon Preservation Soc'y, LLC v. Metacon Gun Club, Inc.*, 2010 WL 1286812, *1 (D. Conn. 2010) (A "district court may in its discretion award attorney's fees to a prevailing defendant … upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."); *Coon v. Willet Dairy, LP*, 2009 WL 890580, *1 (N.D.N.Y. 2009) (same).

A fee applicant (whether a plaintiff or a defendant) must submit appropriate documentation to meet the burden of establishing entitlement to an award.  The Supreme Court instructs, however, that when calculating a fee award the "trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So, trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011).  Thus, this Court has great discretion in awarding litigation expenses and attorney's fees to St. Tammany as the prevailing party.

The potential fee judgment is not limited to the parties alone.  Federal law further provides that "any attorney … admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct.  28 U.S.C. § 1927.  "Conduct is unreasonable and vexatious if there is evidence of the persistent prosecution of a meritless claim and of a reckless disregard of the duty owed to the court."  *Morrison v. Walker*, 939 F.3d 633, 637-38 (5th Cir. 2019).  When an attorney, without reasonable inquiry, advances a baseless claim despite clear evidence undermining his factual contentions, he acts with "reckless disregard" of his duty to the court.  *Id.* at 638 (citing *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

When imposing such a sanction, the "court must (1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes.  Specific findings permit effective appellate review of the validity and amount of fees."  *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002).  If the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may shift the entire financial burden of an action's defense.  *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996).

As more fully explained below, the Plaintiffs' Clean Water Act complaint in this proceeding was frivolous, unreasonable, and without foundation; moreover, the filing of numerous improper, vexatious, and unwarranted pleadings greatly increased the cost of the defense, warranting an assessment of litigations costs against them.  Furthermore, the actions of Plaintiffs' counsel were so unreasonable and vexatious that sanctions pursuant to 28 U.S.C. § 1927 are justified.

**B.      The Legal Standard for Calculating Attorney's Fees.**

Federal courts awarding attorney's fees in the Fifth Circuit utilize the "lodestar" method by multiplying the hours reasonably spent on the case by an appropriate hourly rate, which may

then be adjusted based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257 (5th Cir. 2018).  The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 n. 18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 717-19).  When considering these factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," but if the creation of the lodestar amount takes a *Johnson* factor into account no further adjustment should be made.  *Id.* at 800.

      **C.**     **St. Tammany Should Be Awarded Its Litigation Costs Because the Plaintiffs' Lawsuit Was Frivolous, Unreasonable, and Without Foundation.**

As explained above, the statute authorizing Clean Water Act citizen suits also allows the prevailing party to recover its litigation costs, including attorney's fees.  33 U.S.C. § 1365(d).  A prevailing defendant may recover its litigation costs if the lawsuit "was frivolous, unreasonable, or without foundation."  *Dean*, 240 F.3d at 508.  A prevailing defendant may also recover its litigation costs if the claim was brought or continued in bad faith.  *Christiansburg*, 434 U.S. at 422 (italics in original).  The Fifth Circuit begins such an analysis "by asking whether the case was so lacking in merit that it was groundless."  *United States v. State of Miss.*, 921 F.2d 604, 609 (5th

7

Cir. 1991); *see also Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (same). The Fifth Circuit further instructs trial courts that when determining whether a claim is frivolous, unreasonable, or without foundation, a district court should consider (1) whether the plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the court held a full trial. *Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir. 2000). Applying these standards to this proceeding, it is readily apparent St. Tammany should be awarded its full litigation costs.

The primary question of whether the case was so lacking in merit that it was groundless must be answered by affirmatively by this Court. Indeed, the Plaintiffs could not survive a Rule 12(b)(6) challenge, despite filing a Complaint, Amended Complaint, and proposing a Second Amended Complaint, and causing the filing of well over 140 documents and exhibits in the record of this proceeding. *See* Doc. 138. Moreover, the Plaintiffs did not "establish a prima facie case" for relief. In fact, this Court determined "the core claims at issue in this lawsuit were already adjudicated in the State Court Litigation … [and] Plaintiffs are estopped from bringing all but their [Clean Water Act] claim before this Court." Doc. 138, p. 14. With respect to the Clean Water Act claims surviving St. Tammany's *res judicata* challenge, this Court specifically found "that the CWA claim alleged against [St. Tammany] fails to meet the pleading requirements to state a claim upon which relief may be granted" and the Plaintiffs' allegations "are conclusory without offering a sufficient statutory basis for pleading." *Id.* at p. 18.

As this Court effectively recognized in dismissing this proceeding with prejudice, the claims asserted by the Plaintiffs are clearly frivolous, unreasonable, or without foundation. At least one, if not all, of these standards is met here  The majority of the Plaintiffs' claims were already barred by *res judicata* because of their unsuccessful state court lawsuit against St.

Tammany and the remaining claims advanced by the Plaintiffs did not even state a "facially plausible claim" under the Clean Water Act. *See* Doc. 138, p. 16. Simply put, the Plaintiffs have no claim or cause of action against St. Tammany that can be asserted in this Court. These proceedings were nothing more than the Plaintiffs attempt to re-litigate – under the imprimatur of the Clean Water Act – claims already disposed of adversely to them in state court.

Moreover, the Plaintiffs unnecessarily exacerbated the expense of this litigation by filing numerous motions and documents that were irrelevant to their claims. Some of these filings were designed not to advance the prosecution of their claims, but to denigrate St. Tammany, its employees, and its counsel. Stated differently, the Plaintiffs chose to levy personal attacks against their opponent rather than stand on the strength of their allegations. This litigation tactic further proves how frivolous, unreasonable, and without foundation their complaint was. In addition, the Plaintiffs' litigation tactics are also evidence of their bad faith in both bringing and maintaining this lawsuit.

In summary, there was no factual basis to bring this lawsuit, other than to vexatiously continue litigating against St. Tammany. The record of this proceeding overwhelmingly proves that St. Tammany is entitled to recover its litigation costs, including attorney's fees, pursuant to 33 U.S.C. § 1365(d).

**D.      Calculation of St. Tammany's Litigation Costs and Attorney's Fees.**

**1.      Legal Fees Incurred by St. Tammany in Defending This Action.**

Lead counsel for St. Tammany and managing partner of Daigle Fisse & Kessenich, PLC ("Daigle Fisse"), James L. Bradford, III, was personally involved with the timekeeping and invoicing relating to this proceeding since Daigle Fisse enrolled as counsel for St. Tammany. *See* Exhibit 1, Declaration of James L. Bradford, III, ¶ 4. The hourly rates charged by Daigle Fisse for

its representation are consistent with the rates established by the Louisiana Attorney General for

legal services provided to the State of Louisiana and its political subdivisions.  Exh. 1-A (2/8/2016

Memorandum from Attorney General Jeff Landry establishing maximum hourly fee schedule).  As

reflected in Mr. Bradford's Affidavit, the hourly billing rates for those Daigle Fisse attorneys

representing St. Tammany in this proceeding are as follows:

| | | |
|---|---|---|
| a. | James L. Bradford, III | $225 |
| b. | Kirk N. Aurandt | $200 |
| c. | D. Stephen Brouillette, Jr. | $200 |

Each of these attorneys has more than 20 years of experience litigating complex legal matters in

all levels of federal and state courts.  These hourly rates authorized by the State of Louisiana are

well below prevailing market rates for lawyers with comparable experience in the New Orleans

are legal market.  *See J&J Sports Prods., Inc. v. Evolution Entertainment Group*, No. 13-5178

(E.D. La. 11/12/14), 2014 WL 6065601, *3 (approving $300/hour rate for attorney with 32 years

of experience in commercial litigation involving theft of satellite communications) (citing to

*Thompson v. Connick*, 553 F.3d 836, 868 (5th Cir. 2008) (approving rates up to $312 for

experienced attorneys in the Eastern District of Louisiana from 2003-2007)); *see also Cacho v.*

*Gusman*, 11-225 (E.D. La. 9/29/14), 2014 WL 4854737, *6 (approving rate of $350/hour in civil

rights litigation) (citing to *Gros v. New Orleans City*, Nos. 12-2322, 12-2334, and 12-2374 (E.D.

La. 6/3/2014), 2014 WL 2506464, *11 & *13 (awarding $350 per hour to civil rights attorneys

with 21 to 42 years of experience)).

Utilizing the lodestar method, the total amount of attorney's fees incurred by St. Tammany

in defending the Plaintiffs' Clean Water Act lawsuit, following adjustments, is $145,892.50 as

evidenced by Mr. Bradford's Affidavit and supporting documentation.  *See* Exh. 1, ¶¶ 7-9 and Exh.

1-B.  The lodestar "is presumptively reasonable and should be modified only in exceptional cases."

*Gilmore v. Audubon Nature Inst., Inc.*, 353 F. Supp. 3d 499, 507 (E.D. La. 2018) (internal citations omitted).  St. Tammany respectfully requests that it be awarded this sum as the prevailing party in this proceeding.

### 2.      Application of the *Johnson* Factors.

#### a.      Time and Labor Required to Represent St. Tammany.

As this Court is well aware, the time and labor required by Daigle Fisse to represent St. Tammany in this proceeding was quite extensive.  In the approximately 18 weeks since Plaintiffs filed their original complaint until the judgment entered by this Court on 23 July 2020, 140 separate documents were filed into the record of this proceeding.  A great number of these 140 filings were made by the Plaintiffs and included multiple attachments or exhibits.  Indeed, the Plaintiffs filed over 125 exhibits for potential use in the preliminary injunction hearing.  Each of the Plaintiffs' filings required review and analysis, and a majority of them required opposition or other response.

The volume of documents filed by Plaintiffs accompanied by quick submission or argument dates required St. Tammany's counsel to devote their time almost exclusively to defending this lawsuit.  Responding and opposing the Plaintiffs filings often required multiple attorneys to work on the same opposition, dividing labor as efficiently as possible.  From the outset of this litigation, Plaintiffs were focused on moving quickly to discovery and injunctive relief, and even summary judgment, before all defendants were served and before responsive pleadings were filed.  As evidenced by the docket of this proceeding, the voluminous filings by Plaintiffs required vast amounts of time and labor (all of which is meticulously documented).

The time and labor required to defend St. Tammany in this proceeding was obviously well spent.  The two (2) substantive motions filed by St. Tammany – the Rule 56(d) motion to deny Plaintiffs' motion for partial summary judgment (Doc. 51) and the Rule 12(b)(6) motion to dismiss

(Doc. 65) – were both successful.  St. Tammany's opposition to Plaintiffs' substantive motions were similarly successful.  *See*, *e.g.*, Doc. 57 (Order denying motion for partial summary judgment); Doc. 130 (Denying Plaintiffs' motion to enforce waiver of attorney-client privilege); and, Doc. 139 (Denying motion for injunctive relief).  A number of Plaintiffs' substantive motions were rendered moot by the dismissal of the lawsuit, but still required extensive opposition briefing by St. Tammany.  *See* Doc. 115 (Opposition to Plaintiffs' appeal of Magistrate Judge's order); Doc. 116 (Opposition to Plaintiffs' motion to dismiss as moot St. Tammany's motion to dismiss); Doc. 117 (Opposition to Plaintiffs' motion for leave to file second amended complaint); and, Doc. 118 (Opposition to Plaintiffs' motion to disqualify).

The record alone, but coupled with the favorable results obtained by St. Tammany, support the time and labor expended in its defense.  St. Tammany submits no further downward adjustment is required.

### b.    Novelty and Difficulty of the Issues in the Case.

This lawsuit involves complicated interplay among the Clean Water Act, the Louisiana Environmental Quality Law, state and federal regulatory schemes, and the permit issued to St. Tammany pursuant to those laws and regulations.  The claims asserted by the Plaintiffs required extensive evaluation of the relevant regulatory schemes and application of those regulations to the claims set forth in the Plaintiffs' pleadings.  To defend this lawsuit, St. Tammany required in-depth analysis and briefing about the permitting process under the Clean Water Act, the relevant regulations relating to permits in general – as well as the specific permit issued in this case, and the actions taken by St. Tammany to fulfill its permit obligations.

In addition to this complex legal issues, the Plaintiffs' procedural machinations in this case – such as seeking injunctive relief, filing a motion for summary judgment before pleadings were

closed, and seeking expedited discovery – complicated the orderly progress of this case. This is

evidenced by the 140 court filings made in just over 4 months. Also complicating this lawsuit is

the Plaintiffs' unsuccessful state court action and their attempt to rebrand claims from that lawsuit

into potentially valid claims under the Clean Water Act. This required extensive briefing from St.

Tammany on *res judicata* issues in addition to the claimed "new" Clean Water Act claims. St.

Tammany's legal expenses should not be adjusted because of this unnecessary, repetitive litigation

strategy employed by the Plaintiffs.

<strong>c.  Skill Required to Perform the Legal Services Properly.</strong>

As this Court is aware, St. Tammany was represented by its counsel with great skill, which

resulted in disposition of this case on a Rule 12(b)(6) motion. In addition to ably defending St.

Tammany against the Plaintiffs' substantive allegations in their pleadings, St. Tammany's counsel

skillfully defended and managed the voluminous filings made by Plaintiffs. The Plaintiffs did not

prevail on any substantive motion or pleading filed in this proceeding. Conversely, the substantive

motions filed by St. Tammany were ultimately successful. It required significant skill for St.

Tammany's counsel to wade through the morass of pleadings and exhibits submitted by the

Plaintiffs, winnow out the pertinent issues to be decided by the Court, and present cogent argument

supporting St. Tammany's positions. Counsel for St. Tammany's skill resulted in a swift

resolution (or at least as swift as Plaintiffs' voluminous filings afforded) and dismissal of

Plaintiffs' claims with prejudice. No downward adjustment is required on this factor. Indeed, as

detailed above, the rates imposed by Louisiana's attorney general are already below what would

be warranted for litigation in this forum. *See* § II(D)(1), *supra*.

### d.     Preclusion of Other Employment by the Attorney.

As previously discussed, the Plaintiffs' barrage of filings in this proceeding required St. Tammany's attorneys to devote a majority of their time reviewing, researching, and responding to Plaintiffs' filings.  This resulted in St. Tammany's counsel working almost exclusively on this lawsuit for extended periods of time.  For example, on 30 June 2020 St. Tammany was required to file five (5) opposition briefs to the Plaintiffs' various motions because Plaintiffs habitually filed multiple motions to be submitted or argued on the same day.  The Plaintiffs' voluminous filings and repeated attempts to fast-track this litigation required St. Tammany's counsel nearly undivided attention to the exclusion of almost all other matters.  The Plaintiffs should not benefit from their litigation tactics of attempting to overwhelm the Court and St. Tammany with its filings.  No further adjustment is required for this factor.

### e.     Customary Fee Charged for Services in the Legal Community and Whether the Fee is Fixed or Contingent.

As noted in Mr. Bradford's Affidavit, Daigle Fisse's contractual rate with St. Tammany is governed by the rates published by the Louisiana Attorney General for professional legal services. *See* Exh. 1, ¶ 5; Exh. 1-A.  Moreover, although Daigle Fisse could charge the full $225/hour rate for all attorneys working on this lawsuit, Messrs. Aurandt and Brouillette are billed at the lesser rate of $200/hour, which is below the rate approved by the Attorney General.  St. Tammany notes that the Attorney General rates are less than the standard rates charged by Daigle Fisse attorneys for similar legal services.  St. Tammany submits the published Attorney General rates are reasonable for the legal services rendered in this case and that no adjustment of the hourly rate is required.

As evidenced by Mr. Bradford's Affidavit, St. Tammany's contract with Daigle Fisse provides for payment of legal fees based on the time spent multiplied by the designated rate (effectively the "lodestar" method). Therefore, the fee arrangement is fixed and contractual.

### f.      Time Limitations Imposed by the Client or Circumstances.

There were time limitations imposed on St. Tammany by circumstances in this proceeding. More specifically, the Federal Rules of Civil Procedure and Local Rules of the Eastern District of Louisiana impose deadlines for filing responsive pleadings to the Plaintiffs' complaint and oppositions to the Plaintiffs' numerous motions. Thus, a large portion of the work performed by Daigle Fisse in St. Tammany's defense was done with impending deadlines and short time-frames. Indeed, this entire litigation, with over 140 separate filings, lasted just over 4 months. The amount of legal work performed in such a short period of time, often under tight deadlines, requires no adjustment of the lodestar.

### g.      The Amount Involved and the Results Obtained.

Although the Plaintiffs have never actually quantified their claimed damages (either in this proceeding or the state court proceeding), they did assert claims for personal injury and property damages, as well as civil penalties potentially recoverable under the Clean Water Act and treble damages. These damage claims, however, never came to fruition, as St. Tammany's Rule 12(b)(6) motion to dismiss was granted by this Court and the Plaintiffs' claims dismissed with prejudice. Doc. 138. Considering the volume of filings made by the Plaintiffs in this proceeding, the result obtained by St. Tammany was as optimal as possible.

### h.      Experience, Reputation, and Ability of Attorneys.

The Daigle Fisse attorneys representing St. Tammany in this proceeding, James L. Bradford, III, Kirk N. Aurandt, and D. Stephen Brouillette, Jr., each have more than 20 years of

litigation experience in state and federal courts in Louisiana, and each has appeared in other state and federal courts *pro hac vice*. The Daigle Fisse attorneys are well known within the legal community for their expertise, professionalism, and quality legal work. As evidenced by their efforts in this proceeding, the Daigle Fisse attorneys analyzed the complex statutory and regulatory issues and presented succinct arguments to the Court about the merits of the Plaintiffs' allegations that were ultimately successful. The Daigle Fisse attorneys' skillful defense of St. Tammany in this proceeding terminated the litigation in its nascent stage and prevented the parties from incurring additional unnecessary litigation expenses. The experience, reputation, and ability of the Daigle Fisse attorneys justifies a full award of attorney's fees and expenses.

### i. Nature and Length of the Professional Relationship With St. Tammany.

St. Tammany has a well-established relationship with its attorneys in this proceeding. As the Court is aware, these same Plaintiffs have engaged in a fight with St. Tammany for well over 5 years regarding drainage and alleged pollutants contained in storm water. This involves two (2) state court lawsuits filed in 2015 (the first relating to drainage and alleged pollutants and the second relating to various public records requests submitted to St. Tammany) and now this federal Clean Water Act lawsuit. In addition to litigation against these Plaintiffs, beginning in 2013 the Daigle Fisse law firm has represented St. Tammany in litigation against the former coroner of St. Tammany Parish, Peter Galvan. Therefore, St. Tammany has been representing St. Tammany in litigation for over 7 years.

### j. Awards in Similar Cases.

Litigation expense and attorney's fees awards to prevailing defendants vary depending on the extent of a plaintiff's frivolous claim and the point in the litigation where continued litigation is unreasonable or the plaintiff knew, or should have known, his claims are without foundation. In

16

*Sierra Club*, the District Court of Colorado found the plaintiffs lacked adequate evidence to present a *prima facie* case and their continued "dogged pursuit" of factually unsupported claims after a date certain was unreasonable. *Sierra Club*, 509 F. Supp. 2d at 951. With this unreasonableness in mind, the *Sierra Club* court awarded $324,644.25 in attorney's fees to the prevailing defendants. *Id.* at 953-54. Similarly, the Northern District Court of New York awarded attorney's fees of $23,799.00 for fees incurred after plaintiffs' counsel "should have realized that … their claims were frivolous, unreasonable, or groundless." *Coon*, 2009 WL 890580 at *2-3. An attorney's fees award of $5,976 was affirmed by the Fifth Circuit for a Clean Water Act lawsuit dismissed pursuant to Rule 12(b)(6). *Bentley*, 396 Fed. Appx. at 132. In a non-Clean Water Act lawsuit, the Fifth Circuit affirmed an attorney's fees award of $25,497 without any adjustments based on the trial court's finding "that Plaintiffs have made scurrilous accusations without a factual basis," and that the "Private Defendants expended considerable sums reasonably defending themselves against frivolous allegations." *Offord v. Parker*, 456 F. Appx. 472, 475-76 (5th Cir. 2012).

As can be seen, the amount of awards runs the gamut from significant in *Sierra Club* to relatively modest in *Bentley*. The determining factor is whether, like here, a plaintiff's lawsuit was frivolous from the outset, or there was some point in the litigation the plaintiff knew or should have known the litigation was without merit. Those factors coupled with the overwhelming number of pleadings and motions filed by the Plaintiffs compels an award here. St. Tammany submits awarding the full amount of the requested attorney's fees is appropriate here because the Plaintiffs' claims were meritless from the outset, which the Plaintiffs knew or should have known because of the adverse judgment in the state court litigation.

17

**E.      Assessment of Attorney's Fees Against Plaintiffs' Counsel is Warranted.**

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Punishment under this section, however, is "sparingly applied, and except when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under 28 U.S.C. § 1927 may not shift the entire financial burden of an action's defense." *Meadowbriar,* 81 F.3d at 535; *F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1297 (5th Cir. 1994).  When making such an award, the Fifth Circuit requires "a detailed finding that the proceedings were both 'unreasonable' *and* 'vexatious'." *Meadowbriar,* 81 F.3d at 535 (quoting *Calhoun,* 34 F.3d at 1297) (emphasis added).

Plaintiffs' counsel, Louis R. Koerner, Jr., has engaged in both unreasonable and vexatious conduct in this proceeding warranting an assessment of fees against him personally.  For example, Mr. Koerner filed numerous meritless documents that were without factual support or were filed with the ulterior motive of harassing St. Tammany and unnecessarily increasing its litigation costs. For instance, the original complaint filed by Mr. Koerner contained factual allegations and legal theories obviously barred by *res judicata. See* Doc. 138.  Mr. Koerner filed hundreds of exhibits in support of the Plaintiffs' baseless legal theories, almost all of which were wholly irrelevant to the claimed basis of the Plaintiffs' lawsuit.  Filings supporting these voluminous exhibits were similarly irrelevant.  *See*, *e.g.*, Doc. 19 (unsolicited memorandum regarding potential for corona virus transmission from human feces).  Other filings were blatant attempts to "fast-track" the litigation in blatant disregard for the orderly disposition of civil claims set forth in the Federal

Rules of Civil Procedure and Local Rules.  *See* Doc. 9 (motion to expedite discovery before defendants properly served with process); Doc. 48 (motion for partial summary judgment filed before any defendant answered).

When St. Tammany exposed the severe deficiencies of the Plaintiffs' legal theories in its Motion to Dismiss (Doc. 65), Mr. Koerner attempted to delay and confuse the issues by seeking leave to file a second amended complaint.  *See* Doc. 87.  Mr. Koerner exacerbated his already unreasonable conduct by filing a plethora of motions that lacked any arguable basis and were apparently made in the hopes of denigrating St. Tammany and its counsel.  *See* Doc. 96 (motion to enforce waiver of privilege and for attorney depositions) and Doc. 97 (motion to disqualify St. Tammany's counsel).  Indeed, the motion to disqualify St. Tammany's counsel, the sole alleged basis of which was that Mr. Bradford would be a witness in this proceeding, was filed before discovery even commenced and before any discovery had been ***directed*** at Mr. Bradford or the Daigle Fisse law firm.  These are just a few examples of the frivolous, baseless motions filed by Mr. Koerner in this proceeding.  A review of the record of this proceeding demonstrates that not a single substantive, contested motion filed in this action by the Plaintiffs was successful.

The Court is well aware the litigation between Plaintiffs and St. Tammany has lasted over five years, in both state and federal courts.[6]  As further evidenced by this case, this contentious litigation has devolved into personal attacks and unnecessary filings with no cognizable purpose other than to continue litigating for litigation's sake.  Mr. Koerner has an obligation to this Court to insure that any pleadings or motions are not presented for improper purpose, that the claims and legal contentions in filings are warranted, and that factual contentions have evidentiary support.

---

[6]     Of note, no Louisiana statute authorized an award of attorney's fees in St. Tammany's favor in the State Court Litigation; accordingly, St. Tammany defended the State Court Litigation through its final judgment on 18 August 2018 without being able to recover its attorney's fees.

*See* Fed. R. Civ. Proc. 11(b).  Mr. Koerner did not fulfill these obligations in many of the filings by advancing baseless claims without any factual support.  For these reasons, assessing some or all of the attorney's fees incurred by St. Tammany against Mr. Koerner is appropriate.

**III.     Conclusion.**

For the reasons set forth hereinabove, St. Tammany respectfully requests that the Plaintiffs be assessed attorney's fees in the amount of $145,892.50.  In addition, St. Tammany requests that Plaintiffs' counsel, Louis R. Koerner, Jr., be assessed some or all of these attorney's fees pursuant to 28 U.S.C. § 1927 on an *in solido* basis with his clients for his unreasonable and vexatious conduct in this proceeding.

Respectfully submitted,

DAIGLE FISSE & KESSENICH, PLC

BY: /s/ *D. Stephen Brouillette, Jr.*
James L. Bradford, III (#23662) (T.A.)
Kirk N. Aurandt (#25336)
D. Stephen Brouillette, Jr. (#29105)
P.O. Box 5350
Covington, LA  70434-5350
Telephone:  985.871.0800
Facsimile:   985.871.0899
Physical Address:
227 Highway 21
Madisonville, LA  70447
**COUNSEL FOR DEFENDANT,**
**ST. TAMMANY PARISH GOVERNMENT**

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 6th day of August 2020, this document was filed using the ECF system and service on all parties was accomplished through the Notice of Electronic Filing for Filing Users.

/s/ *D. Stephen Brouillette, Jr.*