# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 3, 2021
Lyle W. Cayce
Clerk

No. 20-30644

TERRI LEWIS STEVENS; CRAIG RIVERA; JENNIFER RIVERA,

*Plaintiffs—Appellants*,

*versus*

ST. TAMMANY PARISH GOVERNMENT,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-928

Before KING, HIGGINSON, and WILSON, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

    This is the second suit in a multi-year litigation between three property owners and the St. Tammany Parish Government ("St. Tammany"). The dispute involves sewage and stormwater that allegedly flows through plaintiffs-appellants' ("plaintiffs") properties and into various creeks, rivers, and waterways in Louisiana. The first suit was filed in Louisiana state court in 2015. The state trial court entered judgment against plaintiffs in that suit in August 2018. Two years later, plaintiffs filed this suit in federal court, asserting largely the same state law claims plus claims under the federal Clean Water Act ("CWA").

No. 20-30644

The federal district court dismissed the state law claims as precluded by res judicata, dismissed the CWA claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and denied plaintiffs' motions for injunctive relief. It further denied plaintiffs' subsequent Rule 59(e) motion for reconsideration, which included a request for leave to file a third amended complaint. We AFFIRM.

I.

Plaintiffs Terri Lewis Stevens, Craig Rivera, and Jennifer Rivera live on adjoining properties located on Dove Park Road, in Covington, Louisiana. They complain of various "acts of man" related to the development of Dove Park Road, which began in 1993, and continued with additional development of the nearby Dove Park Subdivision in 2000, 2003, 2011, and 2015. The most recent complained-of project is the 2015 Dove Park road widening, "which widened a portion of the Dove Park Road and required the culverting of roadside ditches."

Plaintiffs allege that "sanitary sewer overflows . . . and other pollutants are conveyed by [St. Tammany Parish Government's] drainage ditches to a catch basin" that flows to the Stevens property, then to the Rivera property, and then into various "waters of the United States." They further allege that these discharges increase the storm and sewage burden on plaintiffs' properties and pose health risks to plaintiffs and others.

Plaintiffs filed their first suit in Louisiana state court on February 18, 2015, in the 22nd Judicial District Court for St. Tammany Parish, Louisiana. As the district court explained, they "sought relief on five different claims: (1) violation of [their] natural servitude; (2) deprivation of rights guaranteed by the U.S. Constitution and the Louisiana Constitution; (3) intentional damage to property and mental anguish; (4) possessory action; and (5) unfair

2

No. 20-30644

trade practices under La. R.S. 51:1405." Plaintiffs sought both damages and injunctive relief.

After several years of litigation, the state trial court denied all relief and, on August 17, 2018, entered final judgment in favor of St. Tammany and against plaintiffs. Plaintiffs appealed that state court judgment. On April 8, 2021, the Louisiana First Circuit Court of Appeal affirmed. *Stevens v. St. Tammany Par. Gov't*, 322 So. 3d 1268, 1275 (La. Ct. App. 2021). Plaintiffs then filed an application for a writ of certiorari in the Louisiana Supreme Court, which remains pending.

Before the Louisiana First Circuit Court of Appeal had issued its decision, plaintiffs commenced this suit (the "second suit") in federal court. They again sued St. Tammany, as well as the Louisiana Department of Environmental Quality ("LDEQ"), for claims arising from the same "acts of man" asserted in the state court suit and for the same sewage and storm burden on their properties. Specifically, in federal court, plaintiffs asserted claims against St. Tammany for past and ongoing violations of the CWA, 33 U.S.C. § 1251 *et seq.*;[1] violations of the Louisiana Pollution Discharge Elimination System ("LPDES") Permit No. LAR04000; and failure to enforce the permit, the CWA, and applicable state laws.

In these federal proceedings, plaintiffs filed their initial complaint on March 17, 2020 and then a first amended complaint on April 27, 2020. They also moved for preliminary and permanent injunctions against both St.

---

[1] The CWA claims were not expressly asserted in the various state court petitions. *See Stevens*, 322 So. 3d at 1287 n.7 (noting that while plaintiffs, on appeal in state court, "alleged violations by [St. Tammany] of the Clean Water Act[,] . . . these claims are not contained within plaintiffs' third amended petition and argument on these issues were not raised in the trial court. . . . Accordingly, we find these issues are not properly before the court on appeal.").

3

Tammany and LDEQ. St. Tammany and LDEQ separately moved to dismiss the first amended complaint. St. Tammany argued that the complaint both was barred by res judicata and failed to state a claim under Federal Rule of Civil Procedure 12(b)(6), while LDEQ maintained that it was entitled to sovereign immunity under the Eleventh Amendment and, alternatively, that the complaint failed to state a claim. Plaintiffs did not oppose the motions, but instead moved for leave to file a second amended complaint (which both St. Tammany and LDEQ opposed) and otherwise asserted that the motions to dismiss were moot. They subsequently voluntarily dismissed without prejudice defendant LDEQ pursuant to Federal Rule of Civil Procedure Rule 41(A)(1)(a)(i).

On July 23, 2020, with LDEQ no longer a party to the case, the district court granted St. Tammany's motion to dismiss, concluding that that the non-CWA claims were precluded under res judicata by the state court litigation and that the CWA allegations in the first and second amended complaints failed to state a plausible claim. In a separate order, the district court denied the motion for injunctive relief. That same day, the court entered final judgment against plaintiffs.[2] The court subsequently denied plaintiffs' Rule 59(e) motion for reconsideration, which included a request for leave to file a third amended complaint. This timely appeal followed.

II.

The district court had subject matter jurisdiction over plaintiffs' federal claims and supplemental jurisdiction over their state law claims. *See*

---

[2] Throughout this time, the district court also denied as premature various other motions related to plaintiffs' requests for discovery, partial summary judgment, and to disqualify St. Tammany's counsel.

4

28 U.S.C. §§ 1331, 1367(a). We have jurisdiction to review final judgments of a district court pursuant to 28 U.S.C. § 1291.[3]

### III.

On appeal, plaintiffs challenge (1) the dismissal of their non-CWA claims as barred by res judicata; (2) the dismissal of their CWA allegations for failure to state a claim under Rule 12(b)(6); (3) the denial of leave to file a third amended complaint following dismissal of their claims; and (4) the denial of injunctive relief. We address each issue in turn.

### A.

"A district court's grant of a motion to dismiss is reviewed de novo." *Budhathoki v. Nielsen*, 898 F.3d 504, 507 (5th Cir. 2018). Likewise, "[t]he res judicata effect of a prior judgment is a question of law that this court reviews

---

[3] During the pendency of this appeal, appellants filed various motions challenging our appellate jurisdiction, which this court denied. To the extent we have a further obligation to ensure that we have jurisdiction, *see Hill v. City of Seven Points*, 230 F.3d 167, 169 (5th Cir. 2000), we are satisfied that we do. Following plaintiffs' voluntary dismissal of LDEQ as a defendant in this case, the district court granted St. Tammany's motion to dismiss and entered a final judgment pursuant to Federal Rule of Civil Procedure 58(a), which ordered "that there be judgment in favor of defendant, St. Tammany Parish Government, and against plaintiffs, . . . dismissing said plaintiffs' complaint, with prejudice." No further separate judgment was required following the district court's denial of plaintiffs' Rule 59(e) motion. Fed. R. Civ. P. 58(a)(4).

While a plaintiff's voluntary dismissal of one defendant without prejudice may preclude our appellate jurisdiction in a multiple-defendant suit, *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 343 (5th Cir. 2020) (en banc), it does not defeat jurisdiction where, as here, the voluntary dismissal occurs "before the adverse . . . order." *United States v. Eli Lilly & Co., Inc.*, 4 F.4th 255, 261 (5th Cir. 2021) (concluding "that the prior without-prejudice dismissals did not deprive the district court's subsequent decision of finality"). In this case, as in *Eli Lilly*, "the district court's order on the motion to dismiss was final because it adjudicated all the claims against all the remaining parties in the action at the time it was entered. The prior voluntary dismissal does not alter that conclusion." *Id.* (cleaned up).

de novo." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

On appeal, plaintiffs challenge whether it was error for the district court to consider res judicata arguments asserted in a motion to dismiss. Plaintiffs also argue that the state court judgment is not "final," that the causes of action asserted in the second suit did not "exist[] at the time" of the state court judgment, and that those causes of action did not arise out of the same transaction or occurrence as the state court litigation.

1.

"The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters*, 428 F.3d at 571. This appeal involves only the former. "Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Id.*

Louisiana law applies to determine whether the Louisiana state court judgment in plaintiffs' suit has preclusive effect in federal court. *See Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 808 (5th Cir. 2000) ("To determine the preclusive effect of a prior Louisiana court judgment, if any, this court must apply Louisiana law."); *Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011) (per curiam) ("In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment.").

Louisiana's res judicata statute states that "a valid and final judgment is conclusive between the same parties, except on appeal or other direct review" if "the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the

judgment bars a subsequent action on those causes of action." LA. REV. STAT. § 13:4231(2). As the Louisiana Supreme Court has explained:

> A reading of La. R.S. 13:4231 reveals that a second action is precluded when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation.

*Burguieres v. Pollingue*, 843 So. 2d 1049, 1053 (La. 2003).

2.

First, plaintiffs argue that the district court erred in considering res judicata in St. Tammany's motion to dismiss. The district court explained that it considered St. Tammany's res judicata defense in its motion to dismiss because the "*res judicata* defense is apparent from the face of [p]laintiffs' complaints and the documents attached to them," which specifically "reference the State Court Litigation in their original and amended complaints."

Res judicata is an affirmative defense principally raised in a party's responsive pleading. *See* FED. R. CIV. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata."); *Test Masters*, 428 F.3d at 570 n.2 ("[G]enerally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense."). However, this court has also held that "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds is appropriate when the elements of res judicata are apparent on the face of the pleadings." *Murry v. Gen. Servs. Admin.*, 553 F. App'x 362, 364 (5th Cir. 2014) (per curiam) (unpublished) (citing *Kansa Reinsurance Co. v. Cong.*

Case 2:23-cv-00092-DCJ-KK Document 1-6 Filed 01/28/22 Page 8 of 22
Case: 20-30644 Document: 00516183283 Page: 8 Date Filed: 01/28/2022

No. 20-30644

*Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)); *see also Kansa*, 20 F.3d at 1366 ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate."); 18 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4405 (3d ed.) ("In various circumstances, preclusion defenses have been entertained on motions to dismiss. This procedure is most appropriate if the defense appears on the face of the complaint.").

As the district court concluded, the res judicata defense is abundantly clear on the face of the pleadings, which incorporate and repeatedly refer to the state court litigation. Therefore, it was properly considered here at the motion to dismiss stage.

3.

Next, plaintiffs argue that the state court judgment is not "final" because that decision is still pending review on appeal. The district court concluded that "the judgment rendered in favor of [St. Tammany] by the trial court was final, as evidenced by the Final Judgment entered on August 17, 2018."

Generally, "a judgment is entitled to preclusive effect even though an appeal is pending." 18 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4404 (3d ed.). In Louisiana, "[a] judgment that determines the merits in whole or in part is a final judgment." La. Code Civ. Proc. art. 1841. The comments to the 1990 revisions to Louisiana's res judicata statute, which substantially amended the law, further describe when a judgment is final: "The use of the phrase 'final judgment' also means that the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal." La. Rev.

8

STAT. § 13:4231, cmt. d. Consistently, the Louisiana Supreme Court held in 1995 that

> When a court renders a judgment that decides the merits of the case in whole or in part, the judgment is a final judgment. La.Code Civ.Proc. art. 1841. A final judgment may be rendered by either a trial court or an appellate court, and a judgment by an appellate court that decides the merits of the case is a final judgment . . . . A final judgment is conclusive between the parties except on direct review. La.Rev.Stat. 13:4231.

*Tolis v. Bd. of Supervisors of La. State Univ.*, 660 So. 2d 1206, 1206 (La. 1995).[4] Likewise, in 1996, we noted that Louisiana law applies res judicata to state court judgments in which an appeal was pending. *See Zatarain v. WDSU-Television, Inc.*, 79 F.3d 1143, 1996 WL 97105 at *3 (5th Cir. 1996) (per curiam) (unpublished).

Finally, the leading treatise on Louisiana civil procedure has reached the same conclusion, explaining that when a "trial court renders a judgment that determines the merits of the case, the exception of res judicata . . . would be appropriate in a subsequent suit between the same parties on a cause of action arising out of the same transaction or occurrence, even while the

---

[4] Plaintiffs point to two cases, *Dupre v. Floyd*, 825 So. 2d 1238, 1240 (La. Ct. App. 2002), and *Florida Gas Transmission Co., LLC v. Texas Brine Co., LLC*, No. 2018-CA-1391, 2021 WL 1731775 at *8-9 (La. Ct. App. May 3, 2021), in which the Louisiana First Circuit Court of Appeal declined to apply res judicata because the earlier judgment was still pending on appeal. Meanwhile, St. Tammany raises a third case from the same Louisiana court of appeal that held just the opposite. *See Marchand v. Texas Brine Co., LLC*, 293 So. 3d 1132, 1135 (La. Ct. App. 2019). Notwithstanding *Dupre* and *Florida Gas Transmission Co.*, the weight of the authority—including the text and commentary of Louisiana's res judicata statute and the Louisiana Supreme Court's decision in *Tolis*—better supports the understanding that, under Louisiana law, a judgment may be final for the purpose of res judicata even while an appeal is pending.

judgment is on appeal." 1 Frank L. Maraist, La. Civ. L. Treatise, Civ. Proc. § 6:5 n.16 (2d ed.).

Thus, as the district court held, the August 2018 state court judgment is final for res judicata purposes.

4.

As to the last two elements of res judicata—whether "(4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation," and whether "(5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation," *Burguieres*, 843 So. 2d at 1053—the district court concluded that plaintiffs had "not raised causes of action that occurred after [the] state court's August 17, 2018 Final Judgment" and had "simply realleged their State Court Petition claims in the complaints" before the district court.

On appeal, both parties agree that res judicata would only apply to St. Tammany's alleged violative conduct *prior* to the entry of the state court judgment on August 17, 2018. *See Chauvin v. Exxon Mobil Corp.*, 158 So. 3d 761, 770 (La. 2014) (finding this element satisfied, and applying res judicata to a subsequent claim for punitive damages, where the tortfeasor's asserted wrongful *conduct* had occurred before the state court's first judgment, even though the second suit asserted claims for injuries—in this case, a subsequent cancer diagnosis—that were discovered after). As to the fifth element of res judicata, "the chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." *Burguieres*, 843 So. 2d at 1053.

Plaintiffs' opening appellate brief argues, in conclusory terms, that their federal court complaint is not barred because it asserted "violations . . . complained of after the state court" judgment. More

Case 2:20-cv-00092-EEF-JVM  Document 178  Filed 01/28/22  Page 11 of 17
Case: 20-30644  Document: 00516183283  Page: 11  Date Filed: 01/28/2022

No. 20-30644

specifically, in their reply brief, plaintiffs focus primarily on the "previously unrevealed . . . post-2019 public ditch sewage testing" results, which, they argue, show that St. Tammany "was and is in violation of the STOP ordinances, LDH health requirements, LDEQ regulations, and the federal CWA." Plaintiffs argue that the fifth element is not met because, despite "factual similarities" with the state court litigation, their federal suit shows "a pattern by [St. Tammany] who repeatedly violated their rights."

All of these arguments, however, appear to be merely *evidence* that relates back to the same allegations asserted in the state court litigation, rather than independent violations that occurred after the state court judgment. The district court noted that "[t]he complaint focuses on the same 'acts of man' described in the State Court Petition," which occurred in 1993, 2001, 2003, 2011, and 2015, well before the August 2018 state court judgment.

Moreover, plaintiffs' arguments on appeal implicitly acknowledge that they are collaterally attacking the evidence—and conclusions—reached by the state court. For example, they argue that the new evidence of the 2019-2020 tests "proved that plaintiffs' entirely new claims were justified, and completely disproved all prior [St. Tammany] state court denials." Likewise, all of plaintiffs' arguments appear to implicitly acknowledge that their federal suit "arose out of the transaction or occurrence that was the subject matter of the first litigation," *Burguieres*, 843 So. 2d at 1053—*i.e.* plaintiffs' continued allegations of damage caused by "sewage flow discharged by Dove Park Subdivision residents."

Thus, as the district court concluded, the non-CWA claims "existed at the time" of the state court judgment, and "are the same as those

No. 20-30644

asserted" in the state court litigation. *See Chauvin*, 158 So. 3d at 770.[5] Accordingly, all the elements of res judicata are satisfied, and the district court properly dismissed plaintiffs' non-CWA claims.

B.

As to their CWA claims, plaintiffs argue on appeal that the district court erred in concluding that their allegations failed to state a plausible claim under Rule 12(b)(6). The Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "forbids the 'addition' of any pollutant from a 'point source' to 'navigable waters' without the appropriate permit from the Environmental Protection Agency (EPA)." *County of Maui v. Haw. Wildlife Fund*, 140 S. Ct. 1462, 1468 (2020) (quoting 33 U.S.C. §§ 1311(a), 1362(12)(A)). In other words, the CWA "requires a permit when there is a direct discharge from a point source into navigable waters or when there is the *functional equivalent of a direct discharge*." *Id.* at 1476.

The CWA's "Citizen suit" provision, 33 U.S.C. § 1365, provides, in relevant part:

> [A]ny citizen may commence a civil action on his own behalf—
>
> (1) against any person (including . . . any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

33 U.S.C. § 1365(a). Plaintiffs must also comply with various pre-suit notice requirements described in § 1365(b).

---

[5] Plaintiffs also reference, without analysis, authorities in support of their takings/deprivation of property rights without due process claim. This claim was raised in the state court litigation and is likewise included in the res judicata bar.

No. 20-30644

The district court first concluded that plaintiffs failed to comply with the CWA's pre-suit notice requirements. *See* 33 U.S.C. § 1365(b). Then, even assuming that plaintiffs complied with those requirements, the district court concluded that the allegations in plaintiffs' original, first, and second amended complaints were conclusory, and failed to "explicitly connect [St. Tammany's] actions to pollution of the waters in the United States in violation of the CWA."

On appeal, plaintiffs have forfeited any challenge to the district court's primary holding that the allegations failed to state a plausible claim under Rule 12(b)(6). First, their opening appellate brief argues only that they complied with the pre-suit notice requirements but does not address the sufficiency of their allegations. "An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Moreover, plaintiffs rely exclusively on the allegations in their proposed *third* amended complaint, which was not properly before the district court. At the time of the motion to dismiss, plaintiffs had only filed their first amended complaint and moved to file a second amended complaint, both of which the district court considered in ruling on the motion to dismiss.

Further supporting forfeiture, plaintiffs' reply brief fails to distinguish between the res judicata and insufficient allegations rulings, arguing that dismissal of their CWA claims was error under the district court's "*res judicata* ruling and failure to state a claim." Nor does this seven-page section of the reply brief cite a single authority or case relevant to the CWA.[6] *Sindhi*

---

[6] The only case cited in this section, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589 (2020), relates to claim preclusion.

13

No. 20-30644

*v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018) ("[A] litigant can waive an argument if he fails to cite authority to support his position.").

Plaintiffs also assert that the district court failed to consider the extensive exhibits and documents attached to, and allegedly incorporated by reference in, plaintiffs' various complaints. For example, in their reply brief, plaintiffs point to a "non-exhaustive listing of exhibits, motions and memoranda" in seventeen docket entries replete with exhibits and attachments that they say were improperly "ignored and disregarded" by the district court. Even assuming that such expansive filings comply with Rule 8(a)(2)'s "short and plain" statement requirement, plaintiffs barely articulate *which* documents are significant or *how* they undermine the specific conclusions of the district court. *See Cinel*, 15 F.3d at 1345 ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 n.8 (5th Cir. 2016).

In short, plaintiffs do not point to specific allegations in any of their initial, first amended, or proposed second amended complaints that prove they have sufficiently alleged a CWA claim. By pointing exclusively to the allegations in their proposed third amended complaint, plaintiffs essentially concede that their prior allegations were indeed deficient. They even admit that their third amended complaint was designed to "use[] the district court's opinion as to specificity as guidance to avoid another Rule 12(b)(6) motion to dismiss." Thus, plaintiffs have forfeited any argument that the district court erred in dismissing the CWA allegations in the original, first, and second amended complaints. Additionally, for the reasons that follow, we do not consider the allegations asserted in plaintiffs proposed third amended complaint.

14

No. 20-30644

C.

The denial of a Rule 59(e) motion and a motion for leave to amend a complaint is reviewed for abuse of discretion. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 184 (5th Cir. 2018). "Where, as here, the plaintiff files a motion for reconsideration and requests leave to amend following a dismissal with prejudice, 'the considerations for [the] Rule 59(e) motion are governed by [Federal Rule of Civil Procedure] 15(a).'" *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)). "The district court properly exercises its discretion . . . when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *Id.* Absent such factors, leave to amend should be "freely given." *Rosenzweig*, 332 F.3d at 864 (quoting Fed. R. Civ. P. 15(a)). An "[o]utright refusal . . . without any justifying reason appearing for the denial is not an exercise of discretion." *Allen*, 907 F.3d at 184 (quotation marks omitted).

This court has held that it is not an abuse of discretion to deny such leave where the plaintiff "had the opportunity to cure and failed," *Spicer*, 751 F.3d at 367; where the plaintiffs "did not exercise diligence," including attempting to raise facts which were "available previous to the district court's opinion," *Rosenzweig*, 332 F.3d at 864–65; *id.* at 865 (emphasizing that a "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim" (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)); or where leave to amend would be futile, *Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014).

Here, the district court denied plaintiffs' fourth attempt to plead their claims. The district court extensively analyzed the allegations in plaintiffs' initial, first amended, and proposed second amended complaints in its

15

original dismissal order. In denying plaintiffs' Rule 59(e) motion, it declined to reopen the case, explaining that "the [c]ourt will not entertain plaintiffs' request to amend their complaint a third time, as it is completely inappropriate to do so at this stage of litigation."

The district court's decision was not an "outright refusal," and it included express and implied "justifying reason[s]." *Allen*, 907 F.3d at 184. Plaintiffs had multiple opportunities to re-plead and cure the deficiencies in their complaints prior to the court's dismissal order. *Spicer*, 751 F.3d at 367. Additionally, plaintiffs do not explain why any of the facts in the third amended complaint were not otherwise "available previous to the district court's opinion." *Rosenzweig*, 332 F.3d at 865. Accordingly, the district court did not abuse its discretion in denying plaintiffs' motion.

### D.

Finally, plaintiffs challenge the district court's denial of their motions for preliminary and permanent injunctive relief. We review such denials for abuse of discretion, with factual findings reviewed for clear error and legal conclusions reviewed de novo. *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463 & n.6 (5th Cir. 2021).

The same day that the district court granted St. Tammany's motion to dismiss, it denied plaintiffs' request for injunctive relief. Plaintiffs argue that this was error largely for the same reasons they challenge the dismissal of their case: that their claims are not barred and that "the district court disregarded hundreds of pages of affidavits and other exhibits."

A party seeking a permanent injunction must "establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d

Case 2:20-cv-00923-EEF-JVM Document 178 Filed 01/28/22 Page 17 of 17
Case: 20-30644 Document: 00516183283 Page: 17 Date Filed: 01/27/2022

No. 20-30644

507, 533 (5th Cir. 2016) (quotation marks omitted). Likewise, to obtain a preliminary injunction, the movant must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006) (internal quotation marks omitted).

Since plaintiffs' claims were properly dismissed, they cannot show a likelihood of success on the merits. "If the party requesting a preliminary injunction *cannot* show a substantial likelihood of success on the merits, the injunction should be denied and there is no need for the court to address the other requirements for a preliminary injunction." *Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020). Accordingly, the district court did not abuse its discretion in declining to enjoin St. Tammany after dismissing plaintiffs' claims.

## IV.

For the foregoing reasons, the district court's judgment is AFFIRMED.