UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TERRI LEWIS STEVENS, ET AL. | * | CIVIL ACTION NO. 20-928 |
| | * | |
| VERSUS | * | SECTION: "L"(1) |
| | * | |
| ST. TAMMANY PARISH GOVERNMENT, ET AL. | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

## ORDER AND REASONS

Before the Court are Defendant St. Tammany Parish Government's ("STPG") Motion for Attorney's Fees and Costs, R. Doc. 142, and Supplemental Motion for Attorney's Fees and Costs, R. Doc. 179, which were referred to the Magistrate Judge by the District Court for a Report and Recommendation. The Magistrate Judge issued a Report and Recommendation on September 7, 2022. Respondent Louis R. Koerner Jr. objected to the Report and Recommendation on September 21, 2022, and STPG responded in opposition to those objections on October 4, 2022. Respondent then filed a reply to STPG's memorandum in opposition on October 11, 2022. The Court thanks the Magistrate Judge for her thorough and commendable work in this case. However, after considering *de novo* the parties' memoranda, the exhibits, the applicable law, the Magistrate Judge's Report and Recommendation, Respondent's objections thereto, and Movant's memorandum in opposition, the Court declines to adopt the Report and Recommendation as its own, instead ruling as follows.

### I. BACKGROUND

This case concerns alleged sanitary sewer overflows and other pollutants conveyed by STPG drainage ditches through Plaintiffs' properties that allegedly increase the storm and sewage

burden. In 2015, Plaintiffs filed suit against STPG in the 22nd Judicial District Court for the State of Louisiana seeking damages. On August 17, 2018, the state court issued final judgment, granting STPG's exception of prescription and granting summary judgment on the remaining claims. *Stevens v. St. Tammany Par. Gov't*, 2019-1555 (La. App. 1 Cir. 4/8/21), 322 So. 3d 1268, 1276–77, *reh'g denied* (May 10, 2021), *writ denied*, 2021-00800 (La. 11/3/21), 326 So. 3d 898. The state court denied Plaintiffs' motion for a new trial on October 30, 2018. *Id.* at 1277. Plaintiffs appealed to the Louisiana First Circuit Court of Appeal. Id. The court of appeals affirmed on April 8, 2021. *Id.* at 1288.

While Plaintiffs' appeal to the Louisiana First Circuit was pending, they initiated a new action to nullify the state court judgments on October 31, 2019. *Stevens v. St. Tammany Par. Gov't*, 2021-0686 (La. App. 1 Cir. 2/25/22), 2022 WL 575377, at *1, *reh'g denied* (Mar. 29, 2022). The trial court denied the petition and awarded STPG its reasonable attorneys' fees in a judgment dated March 9, 2020. *Id.* at *2-3. The Plaintiffs appealed and the Louisiana First Circuit affirmed on February 25, 2022. *Id.* at *4.

Less than ten days after the state trial court issued judgment denying Plaintiffs' nullity petition and while Plaintiffs' appeal of the original action remained pending, Plaintiffs initiated the present federal lawsuit on March 17, 2020. They also named Louisiana Department of Environmental Quality ("LDEQ") as a defendant. In this action, Plaintiffs asserted claims for past and ongoing violations of the Clean Water Act, the Louisiana Pollution Discharge Elimination System Permit No. LAR04000, and Louisiana law. A few days after filing their complaint, they sought to expedite discovery. The motion was denied. Then they filed a motion for preliminary and permanent injunction. They filed a supplemental memorandum. Then they filed a motion for leave to file another 20 exhibits and an explanatory memorandum. The next day they sought leave

to file their First Amended Complaint, and, thereafter, filed a new motion for preliminary and permanent injunction against LDEQ. The motion for leave was granted and the First Amended Complaint entered into the record. Plaintiffs then filed a motion for partial summary judgment. The Court denied that motion as premature. Both LDEQ, whom Plaintiffs later voluntarily dismissed, and STPG filed motions to dismiss.

In June 2020, Plaintiffs sought leave to file their Second Amended Complaint. In light of the pending motions to dismiss, the Court continued the submission date on the motion for leave to amend. Plaintiffs appealed this ruling to the District Court. Plaintiffs also filed a motion to enforce waiver of attorney-client privilege and for attorney depositions and a motion to disqualify counsel. After oral argument, the motion to enforce waiver of attorney-client privilege and for attorney depositions was denied as premature.

The District Court held oral argument on the motion for preliminary and permanent injunction on July 22, 2020. The next day, the District Court granted STPG's motion to dismiss and denied Plaintiffs' motion for preliminary and permanent injunction. The District Court found that Plaintiffs' state law claims were barred by res judicata, explaining that "the core claims at issue in this lawsuit were already adjudicated in the State Court Litigation" and that "this fact is evident from the face of the complaints and attached pleadings." R. Doc. 138 at 14. Although the Court found that plaintiffs' Clean Water Act ("CWA") claim was not barred by res judicata, Plaintiffs had failed to state a claim under the CWA. *Id.* at 15-19. The Court held that Plaintiffs had failed to plead a facially plausible claim with regard to CWA's pre-suit notice requirement and further, even had the pre-suit notice requirement been met, their conclusory allegations were insufficient to state a claim for a CWA violation. *Id.* at 15-18. The Court considered Plaintiffs' argument that their proposed second amended complaint mooted the pending motion to dismiss.

But the District Court disagreed, finding that the proposed pleading did "not cure the defects related to the claims against STPG" and that it failed "to add materially different facts or specificity that would assist the Court in determining whether Plaintiffs state a claim upon which relief may be granted." *Id.* at 9. In describing the procedural history, the Court noted: "The procedural history in this case is set forth in an unusually large number of documents. There are thus far 135 documents. Navigating through this procedural history has been made exceedingly difficult by the various pleadings and attachments filed or attempted to be filed by the Plaintiffs, which were often described in nonresponsive terms." *Id.* at 2. Judgment was entered for STPG on August 5, 2020.

Plaintiffs filed a motion to alter judgment and a motion for leave to file a third amended complaint. STPG filed a motion to strike the motion for leave to amend. The Court denied the motion to strike and denied the motion for leave to amend on September 1, 2020, noting that Plaintiffs could not seek to amend their complaint unless the District Court first reopened the case. On October 15, 2020, the District Court denied Plaintiffs' motion to amend the judgment. Plaintiffs appealed to the United States Fifth Circuit Court of Appeals. The Fifth Circuit affirmed and judgment was issued as mandate on January 28, 2022. Meanwhile, after the District Court issued judgment in July 2020, STPG filed a motion for attorney's fees as the prevailing party under the CWA and under 28 U.S.C. § 1927. The motion was fully briefed on September 2, 2020. Following the Fifth Circuit's decision, STPG filed a supplemental motion for attorneys' fees to add a request for fees incurred in defending against the appeal. The total fee award requested by STPG is $158,247.50: $145,829.50 for STPG's pre-judgment costs and fees, and $12,355.00 for its post-judgment costs and fees incurred in opposing Plaintiffs' motions to amend the judgment and to file a third amended complaint. The District Court referred both motions for consideration by the Magistrate Judge on March 24, 2022. The Magistrate Judge issued a Report and Recommendation

on September 7, 2022, recommending that the Court grant both motions and order Plaintiffs' Counsel, Respondent Louis R. Koerner Jr., to pay Defendant's attorney's fees of $142,422.75 personally as sanctions under the CWA, 33 U.S.C. § 1365(d), and 28 U.S.C. §1927.

## II. PRESENT MOTIONS

Respondent objected to the Report and Recommendation of the Magistrate Judge, arguing that the Report failed to apply the correct standard in recommending the award of $142,422.75 in attorneys' fees to Defendant to be paid by Plaintiffs' counsel personally as sanctions. He argues that the Magistrate Judge's finding that Plaintiffs' state law claims in this matter were frivolous, unreasonable, or without foundation as *res judicata* at the time they were filed is in error, pointing to two Louisiana Court of Appeals decisions which held that *res judicata* did not apply to Louisiana state court rulings still pending on appeal. *See Dupre v. Floyd*, 825 So.2d 1238, 1240 (La. App. 1st Cir. 2002); *Florida Gas Transmission Co. v. Texas Brine*, No. 2018-ca-1391 (La. App. 1st Cir. 2021). Accordingly, Respondent argues that *res judicata* did not clearly forbid the filing of Plaintiff's state law claims in this Court, and that that filing was therefore not meritless or made in bad faith. Respondent argues that Plaintiffs' CWA claim was also not frivolous, and that his filings in this matter, which was pending for only four months from inception to dismissal, were not unreasonable, vexatious, or frivolous, as would be required to award attorneys' fees against Plaintiffs' counsel personally under §1927. On the contrary, Respondent claims that he merely engaged in the zealous representation of his clients, and ultimately lost; which conduct is not sanctionable.

Alternatively, Respondent argues that, in the event that the Court agrees that an award of attorneys' fees are warranted, the Magistrate Judge nonetheless erred in failing to segregate fees

which were recoverable under the CWA versus fees expended in defending against Plaintiffs' state law claims.

STPG responded and argues that attorneys' fees indeed are warranted under the CWA because Plaintiffs' action could not survive a motion to dismiss despite Plaintiffs' filing of a complaint and first amended complaint and attempting to file a second amended complaint. It argues that Plaintiffs caused the filing of over 140 documents and exhibits and, exacerbating the burden on Defendant and defense counsel, did so aggressively, in just over four months. STPG argues that Plaintiffs' counsel further increased the expense of this litigation by filing numerous motions and documents irrelevant to their claims, some levying personal attacks on STPG, its employees, and its counsel, including a motion to disqualify STPG's counsel based solely on the possibility that one of STPG's attorneys would be a witness even though discovery had not yet opened and no discovery had been sought from the attorney. STPG provides a list of 15 pleadings it says that Plaintiffs filed unnecessarily. STPG points out that Plaintiffs filed more than 125 separate exhibits, and it argues that many of Plaintiffs' filings lacked a substantive legal basis. Ultimately, STPG argues, Plaintiffs failed to state a claim on the merits—their state law claims were found to be barred by res judicata and their CWA claim failed to meet the pleading requirements. By dismissing Plaintiffs' claims with prejudice, STPG argues that the Court effectively recognized that plaintiffs' claims were frivolous, unreasonable, or without foundation. It argues that this lawsuit was nothing more than Plaintiffs' attempt to relitigate claims already disposed of adversely to them in state court. It submits that these litigation tactics are evidence of bad faith.

STPG further argues that the Magistrate Judge's assessment of attorney's fees against counsel is warranted under §1927 because Plaintiffs' counsel acted unreasonably and vexatiously

by filing meritless documents without factual support or with an ulterior motive to harass. It reiterates its argument that Plaintiffs filed a plethora of meritless motions. In support of an attorneys' fee award of $158,247.50, STPG submits affidavits of its counsel and time sheets detailing the time spent by its attorneys in this matter. The hourly rates for its attorneys—each with at least 20 years of experience—are $200 or $225. These rates are authorized by the State of Louisiana, and, STPG argues, are well below the prevailing market rates.

### III. APPLICABLE LAW

#### 1. *Legal Standard for Attorneys' Fees under 33 U.S.C. § 1365(d)*

Under the CWA, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Although the statute itself does not distinguish between a prevailing defendant and a prevailing plaintiff, in interpreting other similar fee shifting statutes, courts apply "a more rigorous standard" when a prevailing defendant seeks its fees. *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001). In such cases, the court may only award attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id.* (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978*))*; *Sierra Club v. Cripple Creek & Victor Gold Mining Co.*, 509 F. Supp. 2d 943, 950 (D. Colo. 2006) (requiring prevailing defendants in a CWA citizen suit to show that plaintiff's action was "frivolous, unreasonable, or without foundation."). The Fifth Circuit instructs that "[w]hen considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a prima facie case, whether the defendant offered to settle, and whether the court held a full trial*." Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000). Bad faith on the part of the plaintiff is not a prerequisite, but "if a plaintiff is found to have brought

or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 421-22.

### 2. Legal Standard for Attorneys' Fees under 28 U.S.C. §1927

Federal law provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An attorney's "conduct is 'unreasonable and vexatious' if there is evidence of the 'persistent prosecution of a meritless claim' and of a 'reckless disregard of the duty owned to the court.'" *Morrison v. Walker*, 939 F.3d 633, 637–38 (5th Cir. 2019) (quoting *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002)). "An attorney acts with 'reckless disregard' of his duty to the court when he, without reasonable inquiry, advances a baseless claim despite clear evidence undermining his factual contentions." *Id.* For example, "courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions." *Procter*, 280 F.3d at 525. But the statute is penal in nature, and it must be construed in favor of the sanctioned party. *Id.* at 526. The Fifth Circuit requires the district court imposing sanctions under §1927 to: "(1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes." *Id.*

### 3. Calculation of an Attorneys' Fee Award

When attorneys' fees are awarded, the Court engages in a two-step process to determine whether the claimed fees are reasonable. *Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994). First, the Court computes the lodestar "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work*.*" *Id.*; *see also Hensley v. Eckerhart*, 461

U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The party requesting fees bears the burden of proving that the rates charged and hours expended are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). "The court then adjusts the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)." *Fender*, 12 F.3d at 487. The *Johnson* factors are: 1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) award in similar cases. *Id.*

### IV. DISCUSSION

#### 1. *Attorneys' Fees under 33 U.S.C. § 1365(d)*

The CWA permits the Court to "award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). However, when a prevailing defendant seeks its fees, the Court may only award attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Dean*, 240 F.3d at 508. At first blush this differing standard may appear unfair, but the purpose behind this policy is to prevent imposing a chilling effect on Plaintiffs bringing suit under the CWA and similar statutes which

rely on suits brought by private individuals, rather than via the Attorney General, for enforcement and expansion of the law.

Courts awarding fees to a prevailing defendant under the CWA often identify a trigger date or event after which the plaintiffs should have known their claims were unfounded. For example, in *Sierra Club*, the court found that there was no indication that the claims were unfounded when asserted. 509 F. Supp. 2d at 950. Plaintiffs had not yet conducted an examination of Defendants' land or any tests of suspected discharges and there were no enforcement actions pending. *Id.* at 950-51. Plaintiffs were able to investigate their claims through discovery, and the court determined that "the subsequent development of the case brought the claims to a point where they were clearly without foundation." *Id.* at 951. Further, the court found that once it ruled that plaintiffs' proposed expert opinions would be inadmissible, it should have been clear that they had no evidentiary support to establish an ongoing violation of an existing permit or any evidence to establish the source of the water samples. *Id.* Yet the plaintiffs proceeded to trial. *Id.* The court awarded defendants their fees incurred from the date the court ruled on the admissibility of plaintiffs' experts' opinions. *Id.*; see *Colorado Tr. for Prot. & Benefits v. Souder, Miller & Assocs., Inc.*, No. 10-CV-208-RBJ-KLM, 2012 WL 1229906, at *4 (D. Colo. Apr. 12, 2012) (awarding defendant its attorneys' fees incurred in preparing portions of its summary judgment motion and reply that concerned the CWA issue because plaintiff should have known it could not establish a claim without competent expert testimony as argued by the defendant in its motion for summary judgment); *Coon v. Willet Dairy, LP,* No. 5:02-CV-1195 FJS/GJD, 2009 WL 890580, at *2 (N.D.N.Y. Mar. 31, 2009) (awarding defendants their attorneys' fees from the date they filed their reply memorandum from which plaintiffs should have realized that their claims were frivolous, unreasonable, or groundless).

Similarly, in this case, there was no indication, or at least not a strong enough indication, that Plaintiffs' CWA claims were frivolous when they were filed. Those claims had not been substantively advanced in any of the prior state court proceedings related to this matter and were not ruled on by this Court until its Order and Reasons, R. Doc. 138, granted on July 23rd, 2020. In that Order and Reasons, the Court held that Plaintiffs' CWA was not barred by *res judicata* as were their state law claims, but nonetheless dismissed that claim for failure to state a CWA claim upon which relief might be granted. R. Doc. 138 at 16-18. The Court concluded that Plaintiffs had failed to plead a facially plausible claim pursuant to 33 U.S.C. § 1365's pre-suit notice requirement and that even if Plaintiffs had met the CWA pre-suit notice requirement, they still failed to state a CWA claim in their subsequent proceedings. *Id.* at 16-17. In so ruling, the Court explained that "the disjointed allegations in the proposed second complaint d[id] not explicitly connect STPG's actions to pollution of the waters of the United States in violation of the CWA" and that there [we]re virtually no other facts or evidence set forth in support of STPG's alleged CWA violations. *Id.* at 17-18.

At the point that the Court dismissed Plaintiffs' CWA claim under Rule 12(b)(6), Plaintiffs has already filed a complaint and two amended complaints. *See* R. Docs. 1; 44; 128. On this "trigger date[,]" considering the Court's ruling and analysis in its Order and Reasons dismissing the CWA claim with prejudice, Plaintiffs should have known their claims were unfounded, frivolous, unreasonable, or groundless.

For these reasons, the Court holds that Defendants are entitled to an award of attorneys' fees for their costs incurred after July 23, 2020, spent defending against Plaintiffs' attempts to move the Court to amend its judgment and to frivolously file a third amended complaint. Accordingly, Defendant's Supplemental Motion for Attorneys' Fees, R. Doc. 179, is GRANTED.

Defendant's primary Motion for Attorneys' Fees, those that it incurred before the issuance of Court's July 23, 2020 Order and Reasons, is DENIED.

2. *Attorneys' Fees under 28 U.S.C. §1927*

28 U.S.C. §1927 enables the Court to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." But because this statute is penal in nature, and it must be construed in favor of the sanctioned party. *Procter*, 280 F.3d at 526.

Here, although the Court ultimately dismissed all of Plaintiffs' claims as *res judicata* or for failure to state a claim upon which relief could be granted, Plaintiffs' CWA claim was not clearly meritless when it was filed. Accordingly, the Court finds that the conduct of Louis R. Koerner, Jr. in zealously advocating on behalf of his clients does not amount to "persistent prosecution of a meritless claim" or "a reckless disregard of the duty owed to the court." *Procter*, 280 F.3d at 525 (5th Cir. 2002)). Mr. Koerner did not "advance a baseless claim despite clear evidence undermining his factual contentions." *Morrison*, 939 F.3d at 637–38. While Mr. Koerner, like the fictional Don Quixote, may have been "tilting at windmills," the Court sees here no "evidence of bad faith[ or] improper motive[.]" *Gonzalez v. Fresenius Medical Care North America*, 689 F.3d 470, 479 (5th Cir. 2012).

Additionally, "courts often use repeated filings despite warnings from the court . . . to support imposing sanctions." *Procter*, 280 F.3d at 525. Here, Defendants argue that a statement at a July 8, 2020 motion hearing from the Magistrate Judge that the motion at issue was "pretty futile from the get go" and "let's not go through that again unless we really have to[,]" R. Doc. 174 at 9, and the mention in this Court's Order and Reasons dismissing Plaintiffs' claims that navigating through the procedural history was difficult because of the various pleadings and attachments filed or

attempted to be filed by the Plaintiffs, R. Doc. 138 at 2, constitute warnings from the court supporting the imposition of sanctions. The Court declines to find that these two isolated and mild admonitions rise to the level of supporting a sanction under § 1927.

3. *Calculating Attorney's Fees Award*

The Court finds under the two-step process for calculating attorneys' fees, *see Fender*, 12 F.3d at 487, and the *Johnson* factors, 488 F.2d at 717-19, that the attorneys' fees requested by Defendant in its Supplemental Motion for Attorneys' Fees, R. Doc. 179, are reasonable. Because those fees were incurred by Defendants following the "trigger point" at which Plaintiffs should have known their claims were unfounded, frivolous, or unreasonable, the Court holds finds no error in the Magistrate Judge's failure to segregate fees incurred by Defendants in defending against Plaintiffs' state law claims and their claims under the CWA. Accordingly, the Court awards attorneys' fees of $12,355.00 to Defendants.

V. **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that STPG's Motion for Attorney's Fees and Costs is hereby **DENIED. IT IS FURTHER ORDERED** that STPG's Supplemental Motion for Attorney's Fees and Costs is hereby **GRANTED** and that Plaintiffs are ordered to pay St. Tammany Parish Government's reasonable attorneys' fees of $12,355.00.

New Orleans, Louisiana, this 17th day of October, 2022.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE